MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
skim@milberg.com
NICOLE M. DUCKETT (SBN 198168)
nduckett@milberg.com
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

MILBERG LLP
PETER SAFIRSTEIN
psafirstein@milberg.com
JENNIFER S. CZEISLER
jczeisler@milberg.com
ROLAND RIGGS
rriggs@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Interim Lead Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NVIDIA GPU LITIGATION | <u>CLASS ACTION</u> |
| | Case No. C 08-4312 JW |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| ALL ACTIONS. | |
| | DATE:      October 19, 2009 |
| | TIME:      9:00 A.M. |
| | CTRM:     8, 4th Floor |
| | JUDGE:    Hon. James Ware |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTUAL BACKGROUND ...................................................................1

ARGUMENT ..........................................................................................................................3

I.      STANDARD ON A MOTION TO DISMISS .................................................................3

II.      PLAINTIFFS STATE A CLAIM UNDER THE CLRA ..................................................4

     A.      Plaintiffs Allege Exclusive Knowledge Of A Material Fact ...................................4

     B.      Plaintiffs Allege Active Concealment Of A Material Fact......................................5

III.      PLAINTIFFS STATE A CLAIM UNDER THE UCL FOR "UNLAWFUL" AND "UNFAIR" BUSINESS PRACTICES...................................................................................7

     A.      Plaintiffs Allege NVIDIA Engaged in "Unlawful" Business Practices..................8

     B.      Plaintiffs Allege NVIDIA Engaged in "Unfair" Business Practices ......................9

     C.      Plaintiffs' UCL Claims Are Not Subject To A Heightened Pleading Standard ...............................................................................................................10

IV.      PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT .................................10

     A.      California Recognizes Unjust Enrichment As A Separate, Independent Cause of Action........................................................................................................10

     B.      NVIDIA's Claim It "Received Nothing" From Plaintiffs Is Inaccurate Because Plaintiffs Purchased Computers Containing NVIDIA's Parts.................11

     C.      NVIDIA's Own Authority Does Not Support Its Position ...................................12

V.      PLAINTIFFS STATE ACTIONABLE TORT CLAIMS................................................13

     A.      The Economic Loss Rule Permits Tort Recovery For Defective Component Products........................................................................................13

     B.      The Trier Of Fact Must Identify the Defective Product .......................................14

VI.      PLAINTIFFS STATE CLAIMS FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ...............................................................................................14

     A.      Implied Warranties Extend To Brand-Name Component Parts Like The NVIDIA GPUs.......................................................................................................14

     B.      NVIDIA's Attempt To Disclaim Implied Warranties Is Unconscionable And Unenforceable ................................................................................................16

     C.      Plaintiffs State Claims For Implied Warranty Under California Law And The Appropriate State Laws ................................................................................17

VII.   PLAINTIFFS STATE A CLAIM UNDER THE SONG-BEVERLY ACT
       BECAUSE PLAINTIFFS PURCHASED A DEFECTIVE CONSUMER
       PRODUCT AND NVIDIA REFUSED TO HONOR ITS IMPLIED
       WARRANTY .................................................................................................19

VIII.  PLAINTIFFS STATE A CLAIM UNDER MAGNUSON-MOSS BECAUSE
       PLAINTIFFS STATE *PRIMA FACIE* IMPLIED WARRANTY CLAIMS
       UNDER STATE LAW .....................................................................................21

IX.    PLAINTIFFS ADDITIONAL STATE CLAIMS ARE NOT BARRED BY THE
       OEM WARRANTIES .....................................................................................22

X.     PLAINTIFFS STATE A CLAIM UNDER THE NEW JERSEY CONSUMER
       FRAUD ACT ..................................................................................................24

       A.    Plaintiff Nakash Alleges Unlawful Conduct by NVIDIA ....................................24

       B.    Plaintiff Nakash Alleges An Ascertainable Loss....................................................24

CONCLUSION.............................................................................................................25

1

2

### TABLE OF AUTHORITIES

### FEDERAL CASES

*AR International Anti-Fraud System v. Pretoria National Central Bureau of Interpol*, No. CV F 08-1301 LJO SMS,
2009 U.S. Dist. LEXIS 60543 (E.D. Cal. July 15, 2009) ....................................5

*In re Abbott Laboratories Norvir Antitrust Litigation*, No. C 04-1511 CW,
2007 U.S. Dist. LEXIS 44459 (N.D. Cal. June 11, 2007) ...............................10

*Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.*,
677 F.2d 771 (9th Cir. 1982) ...................................................6

*In re Apple & AT&TM Antitrust Litigation*,
596 F. Supp. 2d 1288 (N.D. Cal. 2008) ....................................4, 5, 6, 7

*Brothers v. Hewlett-Packard. Co.*, No. C-06-02254 AMW,
2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ......................5, 16, 17

*Belknap, Inc. v. Hale*,
463 U.S. 491 (1983).............................................................1

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)............................................................3

*Brothers v. Hewlett-Packard. Co.*, No. C-06-02254 AMW,
2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ................................16

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2005) ............................................16

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
479 F.3d 1099 (9th Cir. 2007) ......................................................8

*Cahill v. Liberty Mutual Insurance Co.*,
80 F.3d 336-38 (9th Cir. 1996) .....................................................3

*Carlson v. General Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) .......................................................16

*Carton v. Choice Point*,
450 F. Supp. 2d 489 (D.N.J. 2006) ..................................................7

*Carton v. Choice Point*,
482 F. Supp. 2d 533 (D.N.J. 2007) ..................................................7

*Cartwright v. Viking Industrial, Inc.*,
249 F.R.D. 351 (E.D. Cal. 2008) ..................................................17

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ........................................................5

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ...........................................4, 7

*Chavis v. Fidelity Warranty Services, Inc.*,
    415 F. Supp. 2d 620 (D.S.C. 2006).................................................................4

*In re Connectics Corp. Sec. Litigation*, No. C 07-02940 SI,
    2008 U.S. Dist. LEXIS 62515 (N.D. Cal. Aug. 14, 2008)..............................3

*Dalton v. Lee Publications Inc.*, No. 08cv1072 BTM (NLS),
    2009 U.S. Dist. LEXIS 937 (S.D Cal. Jan. 8, 2009).......................................3

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................8

*Falk v. General Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..........................................................5

*Friedman v. Boucher*,
    568 F.3d 1119 (9th Cir. 2009) ........................................................................6

*Friedman v. Boucher*, No. 05-15675,
    2009 U.S. App. LEXIS 20152 (9th Cir. 2009) ...............................................6

*In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*
    966 F. Supp. 1525 ........................................................................................16

*Gonzalez v. Drew Industrial, No. CV 06-08233 DDP (JWJx)*,
    2007 U.S. Dist. LEXIS 35952 (C.D. Cal. May 10, 2007) ..............................2

*Hininger v. Case Corp.*,
    23 F.3d 124 (5th Cir. 1994) ..........................................................................16

*Hoey v. Sony Electronics Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................................................6, 16

*Industrial Indemnity Insurance Co. v. United States*,
    757 F.2d 982 (9th Cir. 1985) ..........................................................................1

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ..........................................................................5

*Lippitt v. Raymond James Finance Services*,
    340 F.3d 1033 (9th Cir. 2003), ...................................................................7, 9

*Lippitt v. Raymond James Finance Services*, No. 01-17049,
    2003 U.S. App. LEXIS 19524 (9th Cir. 2003) .............................................7, 9

*Lodge 1380, Brotherhood of Railway, Airline & S.S. Clerks v. Dennis*,
    625 F.2d 819 (9th Cir. 1980) ..........................................................................5

*Long v. Hewlett-Packard Co.*, No. C 06-02816 JW,
    2007 U.S. Dist. LEXIS 79262 (9th Cir. 2009)...............................................6

*Long v. Hewlett-Packard Co.*,
    316 Fed. Appx. 585 (9th Cir. 2009).................................................................6

*Mack v. S. Bay Beer Distributors*,
    798 F.2d 1279 (9th Cir. 1986) .......................................................5

*In re Mattel, Inc.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................7

*McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*, No. C-04-708 SC,
    2004 U.S. Dist. LEXIS 15797 (N.D. Cal. Aug. 6, 2004)................14

*Metropolitan National Corp. v. Dunham-Bush, Inc.*,
    984 F. Supp. 538 (S.D. Tex. 1997) ........................................14, 15

*Microsoft Corp. v. A-Tech Corp.*,
    855 F. Supp. 308 (C.D. Cal. 1994) ...............................................8

*North Star International v. Ariz. Corp. Commission*,
    720 F.2d 578 (9th Cir. 1983) .......................................................5

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) .........................................5

*Oestreicher v. Alienware Corp.*,
    322 Fed. Appx. 489 (9th Cir. 2009) .............................................5

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1988) .......................................................5

*Parrino v. FHP, Inc.*,
    98 C.D.O.S. 5819 (9th Cir. 1998) ................................................5

*Powers v. Lycoming Engines*, No. 06-2993,
    2007 WL 2702705 (E.D. Pa. Sept. 12, 2007) .............................12

*Qarbon.com, Inc. v. eHelp Corp.*,
    315 F. Supp. 2d 1046 (N.D. Cal. 2004) ......................................10

*Shin v. BMW of N. America*, No. CV 09-00398 AHM (AJWx),
    2009 U.S. Dist. LEXIS 67994 (C.D. Cal. July 16, 2009) ...............7

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ..........................................10

*Stella v. LVMH Perfumes and Cosmetics, Inc.*,
    564 F. Supp. 2d 833 (N.D. Ill. 2008) ...........................................4

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................10

*Williams v. Gerber Products Co.*,
    523 F.3d 934 (9th Cir. Cal. 2008) ................................................7

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir 2008) ........................................................3

*Wright Schuchart, Inc. v. Cooper Industrial*, No. CA 93-35778,
    1994 U.S. App. LEXIS 31520 (9th Cir. Nov. 8, 1994) .....................................................14

*Wright Schuchart, Inc. v. Cooper Industrial*, No. CA 93-35778,
    1995 U.S. App. LEXIS 9391 (9th Cir. Apr. 21, 1995) .....................................................14

## STATE CASES

*Aas v. Superior Ct.*,
    24 Cal. 4th 627 (2000) ........................................................................................................13

*Atkinson v. Elk Corp.*,
    109 Cal. App. 4th 739 (2003) ...............................................................................................3

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) .............................................................................................6

*Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHX),
    2008 WL 2676364 (C.D. Cal. July 1, 2008) ........................................................................4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telegraph Co.*,
    20 Cal. 4th 163 (1999) ..........................................................................................................7

*City and County of San Francisco v. State of California*,
    128 Cal. App. 4th 1030 (2005) ...........................................................................................12

*County of Solano v. Vallejo Redevelopment Agency*,
    75 Cal. App. 4th 1262 (1999) .............................................................................................12

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2, 647 A.2d 454 (1994) ..........................................................................................7

*Daugherty v. American Honda Co.*,
    144 Cal. App. 4th 824 (2006) ...............................................................................................6

*Dinosaur Development, Inc. v. White*,
    216 Cal. App. 3d 1310 (1989) ............................................................................................12

*First Nationwide Savings v. Perry*,
    11 Cal. App. 4th 1657 (1992) .............................................................................................11

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39 (1996) ..........................................................................................................10

*Hirsch v. Bank of America*,
    107 Cal. App. 4th 708 (2003) .............................................................................................11

*Jiminez v. Superior Ct.*,
    29 Cal. 4th 473 (2002) ...............................................................................................2, 13, 14

*KB Home v. Superior Ct.*,
    112 Cal. App. 4th 1076 (2003) ...........................................................................................14

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) .............................................................................................................1

*Khoury v. Maly's of California, Inc.*,
   14 Cal. App. 4th 612 (1993) ...................................................................................10

*Klein v. Earth Elements, Inc.*,
   59 Cal. App. 4th 965 (1997) .................................................................................8, 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...........................................................................................8

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) ...................................................................................11

*Melchior v. New Line Productions, Inc.*,
   106 Cal. App. 4th 779 (2003) .................................................................................12

*Moore v. Coachman Industrial, Inc.*,
   499 S.E.2d 772 ....................................................................................................6, 16

*Motors, Inc. v. Times Mirror Co.*,
   102 Cal. App. 3d 735 (1980) ....................................................................................9

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) .....................................................................................1

*People v. Duz-Mor Diagnostic Laboratories, Inc.*,
   68 Cal. App. 4th 654 (1998) .....................................................................................9

*Perth Amboy Iron Works Inc. v. America Home Assurance Co.*,
   226 N.J. Super. 200, 543 A.2d 1020 (1988) .............................................................7

*Perth Amboy Iron Works Inc. v. America Home Assurance Co.*,
   118 N.J. 249, 571 A. 2d 294 (1990).........................................................................7

*Quelimane Co. v. Stewart Title Guaranty Co.*,
   19 Cal. 4th 26 (1998) .............................................................................................10

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234, 872 A.2d 783 (2005).........................................................................7

*Threlkeld v. Worsham*,
   30 Ark. App. 251 (1990)...........................................................................................1

*Union Ink. Co. v. AT&T Corp.*,
   352 N.J. Super. 617, 801 A.2d 361 (2002) ..............................................................8

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) .....................................................................................1

**DOCKETED CASES**

*Nygren v. Hewlett-Packard Co.*,
   No. 07-05793 (N.D. Cal. Oct. 24, 2008).............................................................6, 15

## FEDERAL STATUTES

15 U.S.C. § 2301 ..........................................................................................................8

15 U.S.C. § 2310(d)(1)(B) ...........................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................................6

Fed. R. Civ. P. 15(a) ....................................................................................................8

Fed. R. Evid. 201 .........................................................................................................5

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ..................................................................................7

Cal. Civ. Code § 1559.................................................................................................17

Cal. Civ. Code, § 1750 .................................................................................................8

Cal. Civ. Code § 1791(a) ..........................................................................................3, 4

Cal. Civ. Code § 1792..............................................................................................2, 8

Cal. Civ. Code § 1792.1................................................................................................2

## MISCELLANEOUS

1 Witkin, *Summary of California Law*, *Contracts* § 1017 at 1105 (10th ed. 2005) ....................11

H.R. Rep. No. 1107, 93rd Cong., 2d Sess. (1974).......................................................4

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs' Amended Consolidated Complaint ("ACC") challenges Defendant's manufacture and sale of defective graphics processing chips ("GPUs") installed in millions of personal laptop computers ("Class Computers"), causing injury to Plaintiffs and the Class.  ¶¶1-9, 19.  All paragraph references ("¶__") are to the ACC, filed May 6, 2009.  Defendant, California-based NVIDIA Corporation ("NVIDIA"), is the second largest GPU manufacturer in the world.  ¶18.  NVIDIA's GPUs are critical, premium laptop components needed to display graphic images on the Class Computers.  During the past four years (the "Class Period"), NVIDIA sold and shipped defectively designed and/or manufactured GPUs, which led to material operating problems for consumers, including distorted images, lines, garbled characters and other visual abnormalities, random shut-downs, continuous and abnormal cooling fan operation and, in some instances, complete system failure.  ¶¶3, 12-17, 29, 30-31.  As a result, consumers paid for malfunctioning computers or computers doomed to mechanical failure, by these defective GPUs.  ¶¶28-29, 39, 54.  Plaintiffs allege statutory and common law claims based on this conduct.

NVIDIA's own testing procedures should have revealed the GPUs were defective before NVIDIA shipped them to original equipment manufacturers, or "OEMs," such as Dell, Hewlett Packard, and Apple.  ¶27.  In fact, HP conducted an internal investigation – never sharing the results with consumers – pinpointing many of the operating problems manifested by the defective GPUs.  ¶26.  In a July 2, 2008 SEC filing, NVIDIA disclosed to investors (but not consumers) its GPUs were defective and announced an approximate $200 million charge to cover anticipated expenses arising from its defective GPUs.  Yet NVIDIA failed to disclose to consumers which of its myriad GPU models were defective, which OEMs purchased them, or how the defect manifests itself so consumers could identify the problem.  ¶¶30, 32.

Despite admitting a defect to investors, NVIDIA failed to recall the GPUs and take responsibility for the defect, pointing the finger at everyone but itself.  As reported in the EE|Times, NVIDIA blamed its supplier Taiwan Semiconductor Manufacturing Co. Ltd.

1   ("TSMC"), stating the defects were due to weak "packaging … supplied by TSMC." ¶¶36, 37.

2   NVIDIA also blamed the OEMs, stating "the system thermal management designs" in the

3   computers led to the problems. *Id.* ¶36. NVIDIA even blamed Plaintiffs and the Class, pointing

4   to "customer use patterns." ¶¶30, 36.

5          Over time, many online consumer sites devoted to computer hardware, and NVIDIA

6   products, were inundated with complaints about the defective GPUs. ¶29. With thousands of

7   consumers demanding answers, NVIDIA was forced to respond. Faced with the prospect of

8   recalling its then-current, "top of the line" product and losing hundreds of millions of dollars in

9   revenue, NVIDIA opted for a cosmetic "fix" and assisted the OEMs in offering consumers a

10  software patch. ¶¶45-48. Specifically, NVIDIA provided a Basic Input Output System

11  ("BIOS") software update to the OEMs, which fixed nothing. ¶¶30-35, 45-48.

12         NVIDIA's ***software*** update did not (and could not) magically correct what was

13  admittedly a ***hardware*** defect. ¶¶30-31, 51. If anything, the software update exacerbated

14  existing problems by making the  computers' cooling fans run longer and faster than intended

15  and causing excessive fan noise, shortened battery life, and additional wear and tear on the

16  computers. ¶¶7, 46, 49-51. Worse, NVIDIA's makeshift approach often masked the underlying

17  defect until after warranties expired, potentially depriving consumers of the protection to which

18  they were entitled. ¶¶8, 51.

19         NVIDIA admitted to investors its GPUs were defective, yet refused to warn Class

20  Members about the known defect in violation of the Consumers Legal Remedies Act ("CLRA").

21  NVIDIA's violation of the CLRA is *per se* an unlawful business practice under California's

22  Unfair Competition Law ("UCL"). Defendants are subject to strict liability, because NVIDIA's

23  defective GPUs damaged other components in the Class Computers. *Jiminez v. Superior Ct.*, 29

24  Cal. 4th 473, 483 (2002). Additionally, NVIDIA manufactured and sold the GPUs to consumers

25  when it should have known they were defective and, after belatedly admitting to the defect,

26  refused to recall the products, return consumers' money, replace the GPUs or even repair them.

27  Thus, NVIDIA was unjustly enriched by its unlawful actions.

28

PLAINTIFFS' MEM. IN OPPOSITION TO MOTION TO
DISMISS, CASE NO. C 08-4312 JW                                    - 2 -

1    NVIDIA's conduct violates the implied warranty laws of many states, which extend to

2    brand-name component parts like NVIDIA's GPUs.  NVIDIA violated California's Song-

3    Beverly Consumer Warranty Act ("Song-Beverly") when it sold defective consumer goods and

4    refused to honor any applicable warranties.  Because Plaintiffs state implied warranty claims

5    under state law and the Court has jurisdiction under the Class Action Fairness Act ("CAFA"),

6    Plaintiffs properly allege a violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss").

7    These alleged violations also constitute independent UCL violations.

8        On behalf of themselves and the Class, Plaintiffs seek, among other things, injunctive

9    relief, equitable relief (including restitution and disgorgement), actual, direct, incidental,

10   consequential, statutory and exemplary damages, pre- and post-judgment interest and attorneys'

11   fees.

12                              **ARGUMENT**

13   **I.      STANDARD ON A MOTION TO DISMISS**

14       When considering a motion to dismiss under Rule 12(b)(6), a court must assume all

15   allegations are true and draw all inferences in plaintiff's favor.  *See Cahill v. Liberty Mut. Ins.*

16   *Co.*, 80 F.3d 336-38 (9th Cir. 1996).  "The question presented by a motion to dismiss is not

17   whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

18   evidence in support of the claim."  *In re Connectics Corp. Sec. Litig.*, No. C 07-02940 SI, 2008

19   U.S. Dist. LEXIS 62515, at *8 (N.D. Cal. Aug. 14, 2008).  So long as the plaintiff alleges facts

20   to support a theory that is facially plausible, the court should deny a motion to dismiss.  *See*

21   *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir 2008) (reversing trial court's grant of

22   motion to dismiss); *Dalton v. Lee Publ'ns, Inc.*, No. 08cv1072 BTM (NLS), 2009 U.S. Dist.

23   LEXIS 937, at *9 (S.D Cal. Jan. 8, 2009).  The Court should only dismiss a complaint where,

24   unlike here, the plaintiff's claims are purely speculative and unsupported by the alleged facts and

25   circumstantial evidence.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 n.5 (2007).  Here, the

26   claims are not speculative, as NVIDIA admitted the defect and its scope when it announced the

27   estimated $200 million charge.  ¶¶31, 40.  "[I]t is only under extraordinary circumstances that

28

1   dismissal is proper under Rule 12(b)(6)." *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS

2   (SHX), 2008 WL 2676364, at *7 (C.D. Cal. July 1, 2008).

3   **II.   PLAINTIFFS STATE A CLAIM UNDER THE CLRA**

4           NVIDIA mistakenly challenges Plaintiffs' CLRA claim - based on NVIDIA's omission

5   of material facts about an inherent product defect in the Company's exclusive possession -  by

6   claiming it "made no statements to plaintiffs, deceptive or otherwise" and its "sale of GPUs does

7   not create a duty to disclose any defect." Mot. at 18-19. As NVIDIA concedes, omissions of

8   material fact are actionable under the CLRA.  *Id.* at 18; *see also Chamberlan v. Ford Motor Co.*,

9   369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005).  As this Court explained, "[l]iability under the

10  CLRA for an omission can result when a defendant has a 'duty to disclose' potential problems

11  with a product."  *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal.

12  2008).  This Court identified four circumstances under which the duty to disclose arises:

13          (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when
            the defendant had exclusive knowledge of material facts not known to the
14          plaintiff; (3) when the defendant actively conceals a material fact from the
            plaintiff; and (4) when the defendant makes partial representations but also
15          suppresses some material fact.

16  *Id.*  Plaintiffs allege two of these four circumstances: (1) NVIDIA's exclusive knowledge of

17  material facts unknown to Plaintiffs, and (2) NVIDIA's active concealment of material facts

18  from Plaintiffs.  ¶¶135-36.

19          **A.      Plaintiffs Allege Exclusive Knowledge Of A Material Fact**

20          In *Apple*, a decision NVIDIA ignores, this Court found that where the defendants failed

21  to disclose secret agreements "to technologically restrict voice and data service in the

22  aftermarket ... after the initial two-year service period expired," the plaintiffs pled a CLRA

23  violation – even in a non-fiduciary relationship.  596 F. Supp. 2d at 1294, 1310-11 (Ware, J.).

24  Here, Plaintiffs similarly allege "NVIDIA had exclusive knowledge of undisclosed material

25  facts," including "that NVIDIA GPUs were defective, which was not known to Plaintiffs or the

26  Class."  ¶135.  Plaintiffs charge NVIDIA was aware of extremely high failure rates in these

27  GPUs based on its internal analyses that were not publicly disclosed until July 2008.  ¶¶2, 4, 30-

28

| PLAINTIFFS' MEM. IN OPPOSITION TO MOTION TO DISMISS, CASE NO. C 08-4312 JW | | | - 4 - |
|---|---|---|---|

31, 34, 42, 45-52.  NVIDIA claimed it "developed and distributed a software driver and product changes to help avoid the failures" in consumers' notebook computers, but this "fix" only aggravated the problem.  ¶¶7-8, 30, 31, 34, 51-52.

Plaintiffs never would have purchased computers with defective NVIDIA GPUs had the defects been timely disclosed, which by itself establishes materiality.  ¶¶44, 138; *Apple*, 596 F. Supp. 2d at 1310-11.  And Plaintiffs allege NVIDIA "was in a superior position to know" its GPUs were causing computer failures and knew "a lot more about the defective" chips, "including information unavailable to the public."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).  These allegations that NVIDIA never disclosed material facts exclusively known to NVIDIA state a CLRA claim.  *Apple*, 596 F. Supp. 2d at 1311 & n.8.

### B.        Plaintiffs Allege Active Concealment Of A Material Fact

Allegations that NVIDIA was aware of material defects independently raise a duty to disclose under an active concealment theory.  *See, e.g., Apple*, 596 F. Supp. 2d at 1310.  NVIDIA was "aware of hundreds (if not thousands) of consumer reports and complaints about the graphics, video, heat and performance problems plaguing" computers with its defective GPUs. ¶¶2, 4.  Instead of recalling or warning consumers about the defective chips, NVIDIA provided its OEMs with band-aid "fixes" that only hid, delayed, and often exacerbated the problem.  In addition, NVIDIA tried to deflect responsibility by suggesting third-parties caused the computer failures.  ¶¶7-8, 36, 45-53.  At a computer convention in August 2008, NVIDIA reportedly stated that while it "would like to be more upfront about" its defective GPUs, "we can't be."  ¶42.  By failing to disclose the nature and extent of the defects and blaming them on third parties, NVIDIA "attempted to actively conceal the alleged defect in" its GPUs.  *See* ¶¶32, 36; *Falk*, 496 F. Supp. 2d at 1097.  These active concealment allegations state a CLRA claim.

NVIDIA cites *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009) for the proposition that "California law does not impose a duty on a manufacturer to disclose a latent non-safety defect."  Mot. at 19, n.10. However, *Oestreicher* rejects the "broader duty to disclose" found in *Falk* – and on which this

1   Court relied in *Apple,* 596 F. Supp. 2d at 1310-11.  Even *Daugherty v. American Honda Co.* and

2   *Bardin v. DaimlerChrysler Corp.*, both cited by NVIDIA, recognize a duty to disclose in the

3   CLRA context under the circumstances described in *Apple.  See Daugherty v. American Honda*

4   *Co.,* 144 Cal. App. 4th 824, 835 (2006); *Bardin v. DaimlerChrysler Corp.,* 136 Cal. App. 4th

5   1255, 1276 (2006).

6          NVIDIA's reliance on *Long v. Hewlett-Packard Co., Hoey v. Sony Electronics Inc.*, and

7   *Nygren v. Hewlett-Packard Co.* is likewise unavailing.   The *Long* case is an unpublished

8   decision, is not precedent, and contains only a cursory CLRA discussion.  *See Long v. Hewlett-*

9   *Packard Co.*, 316 Fed. Appx. 585 (9th Cir. 2009); 9th Cir. R. 36-3(a).   Unlike here, where

10  Plaintiffs allege NVIDIA's awareness of the defect and NVIDIA eventually admitted its GPUs

11  were defective (¶30), the *Long* plaintiff did not allege awareness of the defect at the time of sale

12  and defendant "publically denied" there was any defect.  *Long v. Hewlett-Packard Co.,* No. C

13  06-02816 JW, 2007 U.S. Dist. LEXIS 79262, at *4 (9th Cir. 2009).  Thus, the complaint in *Long*

14  lacked allegations sufficient to plead awareness, knowledge or concealment of a defect.

15  Similarly, in *Hoey v. Sony Electronics Inc.*, 515 F. Supp. 2d 1099, 1101-02 (N.D. Cal. 2007), the

16  defects "manifested after" the warranty expired, whereas here, Plaintiffs allege the defective

17  GPUs caused computer failures within the warranty period.   ¶¶5, 29, 54.   In *Nygren*, the

18  defendant "did not disclose the fact that the wireless capabilities of its notebook computers are

19  ***prone*** to malfunction."  *Nygren v. Hewlett-Packard Co.*, No. 07-05793 JW, slip op. at 9 (N.D.

20  Cal. Oct. 24, 2008) (emphasis added).  Far from prospective, NVIDIA's defect is immediate and

21  "manifests in all Class Computers," generating "excessive heat, which forces the system fan to

22  run more often increasing ambient noise and reducing battery life" and "decreas[ed] overall

23  system performance."   ¶¶5, 29, 54.   In short, *Apple* controls Plaintiffs' CLRA claims, not the

24  inapposite, distinguishable cases NVIDIA cites.

25         Contrary to NVIDIA's contention it had no "independent legal duty to disclose

26  information" to consumers who purchased defective GPUs from third parties, it is well settled

27  that manufacturers who place items into the stream of commerce for sale to consumers are

28

subject to the CLRA.  *See Williams v. Gerber Prods. Co.*, 523 F.3d 934, 936, 938, 940 (9th Cir. Cal. 2008); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008); *Chamberlin*, 369 F. Supp. 2d at 1144.

Lastly, NVIDIA's particularity argument fails because Plaintiffs' allegations do not sound in fraud.  Here, as in *Shin*, allegations a defendant "knew or should have known" about defects, or "performed, or should have performed" testing do not implicate a "unified course of fraudulent conduct" and, thus, do not trigger Rule 9(b)'s pleading requirements.  *Shin v. BMW of N. Am.*, No. CV 09-00398 AHM (AJWx), 2009 U.S. Dist. LEXIS 67994, at *10 (C.D. Cal. July 16, 2009).  But even if the Court were to look for particularity, Plaintiffs allege the nature of NVIDIA's omissions, the parties responsible for the omissions, and the resulting injuries.  ¶¶3, 5, 26-32, 43-52.  If Rule 9(b) applies, Plaintiffs meet the standard.  *Apple*, 596 F. Supp. 2d at 1310.

## III.   PLAINTIFFS STATE A CLAIM UNDER THE UCL FOR "UNLAWFUL" AND "UNFAIR" BUSINESS PRACTICES

NVIDIA challenges Plaintiffs' UCL claim arguing Plaintiffs fail to allege a predicate statutory violation under the "unlawful" prong, and fail to provide sufficient detail to implicate the "unfair" prong.  Mot. at 20.  Defendant is wrong on both counts.  NVIDIA's burden is heavy, because it is "the rare situation in which granting a motion to dismiss [a UCL claim] is appropriate."  *Williams v. Gerber Products Co.*, 523 F.3d at 939.

The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL establishes three independent categories of practices that constitute unfair competition.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Plaintiffs need allege only one "unlawful" or "unfair" act or practice.  *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *amended*, No. 01-17049, 2003 U.S. App. LEXIS 19524 (9th Cir. 2003). Plaintiffs properly allege UCL claims under the "unlawful" and "unfair" prongs.

### A.   Plaintiffs Allege NVIDIA Engaged in "Unlawful" Business Practices

To allege an "unlawful" business practice under the UCL, a plaintiff need only allege the law violated and the facts showing the underlying violation.  *See*, *e.g.*, *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308, 313 (C.D. Cal. 1994).  The Ninth Circuit explains:

> "The UCL covers a wide range of conduct.  It embraces anything that can properly be called a business practice and that at the same time is forbidden by law. . . .  Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices."

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)).  In *Korea Supply*, the California Supreme Court reaffirmed the longstanding principle that "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, **statutory,** regulatory, **common law**, or other determinable legal standard."  29 Cal. 4th at 1159 (emphasis added).

Here, Plaintiffs allege UCL "unlawful" acts based on common law violations such as breach of implied warranty, strict liability or negligence (¶¶78-88, 120-127) and statutory violations of California Civil Code § 1792 *et seq.* (the Song-Beverly Consumer Warranty Act), Civil Code, §§ 1750 *et seq.* (the CLRA); and 15 U.S.C. §§ 2301 *et seq.* (the Magnuson-Moss Warranty Act).  ¶¶68-77, 89-97, 128-140.

Notwithstanding *Korea Supply* and its progeny, NVIDIA contends the alleged common law violations cannot serve as predicate UCL violations.  Mot. at 20-21.  Defendant's authority for this novel proposition, *Klein v. Earth Elements, Inc.,* 59 Cal. App. 4th 965, 969 (1997), is procedurally and factually distinguishable.  Procedurally, *Klein* is inapposite because the opinion affirms **summary judgment**, not dismissal on the pleadings.  59 Cal. App. 4th at 968 (noting defendant "**lost on demurrer** but won on summary judgment") (emphasis added).  Pleading standards are not summary judgment standards.  Further, in *Klein*, there was no evidence of any illegal or undisclosed conduct.  The defendant issued a recall after learning of the defect and the harm it caused, offering full reimbursement to affected owners.  59 Cal. 4th at 969.  By contrast, Plaintiffs plead NVIDIA knew or should have known about its defective chips through its own testing, OEM investigations and thousands of consumer complaints, yet NVIDIA continued to

1   sell the defective chips.  ¶¶2, 4, 27-29.  Instead of initiating a recall, NVIDIA attempted to blame

2   the OEMs, and then consumers, for the defect in a misguided cover-up before finally admitting,

3   but still not fixing, the defect.   ¶¶7-8, 36-38.   Unlike the *Klein* defendants, NVIDIA's

4   distribution of defective products was not "unwitting."  *Klein*, 59 Cal. 4th at 970.  In any event,

5   neither party knows what evidence will turn up in discovery, and dismissal is premature.

6       **B.      Plaintiffs Allege NVIDIA Engaged in "Unfair" Business Practices**

7           A business practice is "unfair" under the UCL if it '"offends an established public policy

8   *or* when the practice is immoral, unethical, oppressive, unscrupulous *or* substantially injurious to

9   consumers."'   *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 662 (1998)

10  (citations omitted) (emphasis added).  Whether a business practice is "unfair" involves weighing

11  the utility of the defendant's conduct against the gravity of the harm ascribed to the alleged

12  victims.  *Lippitt*, 340 F.3d at 1043; *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740

13  (1980).  NVIDIA's evidentiary claim its belated repair efforts (through the OEMs) establishes its

14  conduct is not "unfair" is outside the complaint and thus improper, not to mention refuted by

15  thousands of consumer complaints.  *See Motors, Inc.*, 102 Cal. App. 3d at 740.  Plaintiffs'

16  allegations concerning myriad consumer complaints, and the failure to repair, override

17  NVIDIA's factual assertion.

18          Contrary to NVIDIA's claim the ACC merely labels its conduct "immoral, unethical,

19  oppressive, or unscrupulous," Plaintiffs allege NVIDIA acted unfairly by (1) selling defective

20  and non-merchantable products to consumers, (2) failing to use reasonable care to test its

21  products prior to sale, (3) continuing to voluntarily and expressly warrant its products without

22  the intent to uphold its warranty, and (4) continuing to sell its defective products after learning its

23  chips were defective.  ¶¶2, 4, 9, 27-29, 65, 76, 80-88, 96, 121.  NVIDIA's harm outweighs any

24  purported benefit, and reasonable alternatives were available to placing its defective products in

25  the stream of commerce.  Plaintiffs state a viable claim under the UCL's "unfair" prong.

26

27

28

### C.   Plaintiffs' UCL Claims Are Not Subject To A Heightened Pleading Standard

NVIDIA urges the Court to apply a heightened pleading standard not contemplated by the UCL.  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46-47 (1998) (UCL does not require heightened, fact-specific pleading).  In *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003), the Ninth Circuit held Rule 9(b)'s particularity requirements apply only when a UCL claim is "grounded in fraud."  *Id.*; *Qarbon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1052 (N.D. Cal. 2004).  Plaintiffs assert no claims under the UCL's "fraudulent" prong; nor do Plaintiffs assert claims grounded in fraud.  Rule 9(b) does not govern Plaintiffs' UCL claims.[1]

## IV.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

### A.   California Recognizes Unjust Enrichment As A Separate, Independent Cause of Action.

NVIDIA contends Plaintiffs have no claim for unjust enrichment because these claims are not "independent" causes of action.  Mot. at 24.  To the contrary, California recognizes a cause of action for unjust enrichment.  In, *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996), Justice Mosk held the plaintiff was "entitled to seek relief under traditional equitable principles of unjust enrichment,"  and explained,

> Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another.  A person is enriched if he receives a benefit at another's expense.  The term "benefit" "denotes any form of advantage."

*Id.* at 51 (internal citations omitted).

*Ghirardo*'s reasoning is consistent with other authorities which contradict NVIDIA's contention that Plaintiffs' unjust enrichment claim is improper.  For example, in *In re Abbott*

---

[1] *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997), which quotes from *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993), is inapposite.  In *Khoury*, the plaintiff failed to identify **any** particular section of the UCL defendant allegedly violated, and failed to identify any violation of law.  *Id.*  In contrast, Plaintiffs identify the specific UCL sections and laws NVIDIA allegedly violated.  *See, e.g.*, ¶63 (list of unlawful practices); ¶64 (list of unfair practices).

*Laboratories Norvir Antitrust Litig.*, No. C 04-1511 CW, 2007 U.S. Dist. LEXIS 44459, at *25 (N.D. Cal. June 11, 2007), Judge Wilken certified a nationwide unjust enrichment claim, explaining "[m]any [s]tates, including California, follow the Restatement's definition of unjust enrichment." *See also First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662, 1670 (1992) (holding plaintiff may amend complaint to add a separate, distinct claim for unjust enrichment); *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 721-22 (2003) (upholding stand-alone cause of action for unjust enrichment); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726-29 (2000) (affirming judgment against defendant on stand-alone unjust enrichment claim); 1 Witkin, *Summary of California Law, Contracts* § 1017 at 1105 (10th ed. 2005).

**B.    NVIDIA's Claim It "Received Nothing" From Plaintiffs Is Inaccurate Because Plaintiffs Purchased Computers Containing NVIDIA's Parts**

NVIDIA contends Plaintiffs fail to state an unjust enrichment claim because it "received nothing" from the Class and did not "deal" with them.  Mot. at 23.  To the contrary, consumers purchased expensive notebook computers containing NVIDIA's graphics chips.  NVIDIA itself markets and advertises its graphics chips as a premium component in notebook computers – often with an advertisement "sticker" on the computer itself to inform consumers an NVIDIA GPU is inside.  Thus, NVIDIA "deals" with the consuming public each time a notebook computer containing NVIDIA graphics chip is sold to consumers.

Even if the Court were persuaded NVIDIA did not "deal" with Plaintiffs at the point of sale, this does not prevent an unjust enrichment or restitution claim.  In *Hirsch v. Bank of America*, plaintiffs deposited money with escrow and title companies, who then deposited plaintiffs' funds in demand deposit accounts with defendant banks.  The bank defendants charged escrow companies "fees" for demand deposit accounts, and these fees were "passed on to consumers as higher fees for separate services or higher fees for escrow services generally." *Hirsch*, 107 Cal. App. 4th at 721.  The court held plaintiffs "stated a valid cause of action for unjust enrichment based on [the] Banks' unjustified charging and retention of excessive fees which the title companies passed through to them." *Id.* at 722.  Notably, to "confer a benefit, it is *not* essential that money be paid directly to the recipient by the party seeking restitution." *Id.*

1   (emphasis added).   Accordingly, the *Hirsch* plaintiffs were entitled to proceed on their unjust

2   enrichment claim.   *See also Powers v. Lycoming Engines*, No. 06-2993, 2007 WL 2702705, at *3

3   (E.D. Pa. Sept. 12, 2007) ("The plaintiffs need not have purchased the product at issue directly

4   from [defendant] Lycoming to have 'conferred benefits on the defendant.'") (citations omitted).

5       Similarly, *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262,

6   1278 (1999), held a party who "set in motion" events leading to their unjust enrichment could

7   properly be held accountable in an action for unjust enrichment.   *Id.* at 1279-80 ("By having

8   knowledge of the circumstances surrounding its enrichment, [defendant] was unjustly

9   enriched.").   When compared with NVIDIA, the defendant banks in *Hirsch* were even more

10  removed from the affected plaintiffs, yet the *Hirsch* court permitted an unjust

11  enrichment/restitution claim to proceed.   As in *County of Solano*, Plaintiffs here plead myriad

12  facts demonstrating circumstances resulting in NVIDIA's unjust enrichment at the expense of

13  innocent consumers.

14      **C.     NVIDIA's Own Authority Does Not Support Its Position**

15      NVIDIA's reliance on *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779

16  (2003), demonstrates the infirmity of its position.   *Melchior* only held that conversion and unjust

17  enrichment claims were preempted by the Copyright Act.   *Id.* at 793.   *Melchior*'s passing

18  reference that there is "no cause of action in California for unjust enrichment" is pure dicta, and

19  should not be following in the face of binding contra authority.   *Id.* at 794; *see City and County

20  of San Francisco v. State of California*, 128 Cal. App. 4th 1030, 1042 (2005).

21      Further, *Melchior* notes unjust enrichment "is synonymous with restitution."   *Melchior*,

22  106 Cal. App. 4th at 794.   At most, *Melchior* suggests this cause of action is more appropriately

23  labeled as a claim for restitution, also recognized under California law.   *See* Witkin §§ 1013 at

24  1102.   A claim for restitution is defined as one "based neither on contract nor on tort, to recover

25  for unjust enrichment."   Witkin § 100 at 143.   Since "'there is no particular form of pleading

26  necessary to invoke the doctrine' of restitution," Plaintiffs' Count V may be treated as a

27  restitution claim.   *See Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1314 (1989).

28

1   Whether termed a claim for "unjust enrichment" or "restitution" or both, Plaintiffs adequately

2   plead NVIDIA improperly received benefits at the expense of the Class.

3   **V.      PLAINTIFFS STATE ACTIONABLE TORT CLAIMS**

4          **A.      The Economic Loss Rule Permits Tort Recovery For Defective**
5                 **Component Products**

6          NVIDIA contends certain "OEM warranties eliminate tort claims, including for strict

7   liability and negligence."  Mot. at 24.  The California Supreme Court disagrees and recognizes

8   the economic loss rule permits recovery in tort for damage a defective component product – here

9   NVIDIA's defective GPUs – "causes to other portions of a larger product," such as a notebook

10  computer.  *Jimenez*, 29 Cal. 4th at 483-84; *accord Aas v. Superior Ct.*, 24 Cal. 4th 627, 641

11  (2000) ("concept of recoverable physical injury or property damage . . . expanded to include

12  damage to one part of a product caused by another, defective part").

13         In *Jiminez*, 29 Cal. 4th at 484, the California Supreme Court held a manufacturer of a

14  defective window, installed in a mass-produced home, could be strictly liable for damage the

15  defective window caused to other parts of the home.  The "economic loss rule," explained the

16  Court, "allows a plaintiff to recover in strict products liability in tort when a product defect

17  causes damage to 'other property,' that is, property ***other than the product itself***.  The law of

18  contractual warranty governs damage to the product itself."  *Id.* at 483 (emphasis added).  This

19  rule applies to "manufacturers of component parts" of a finished product such as NVIDIA.  *Id.* at

20  481.

21         NVIDIA's defective GPUs cause consumers' computers to underperform, display

22  corrupted images and artifacts, overheat, and even experience complete display and system

23  failure.  ¶3.  The NVIDIA GPU defect reduces battery life, and generally degrades internal

24  components like the CPU, which will "throttle down," decreasing overall system performance

25  and ultimately resulting in markedly degraded computers.  ¶¶5, 49-51, 54-55, 65-66.  Because the

26  defective GPUs cause damage to other property - the Class Computers and the components

27  within - just like the homeowners with defective windows in *Jiminez*, Plaintiffs may recover tort

28

1   damages from NVIDIA under strict liability and negligence claims.  *See Jiminez*, 29 Cal. 4th at

2   476, 483-84.

3   **B.     The Trier Of Fact Must Identify the Defective Product**

4   Plaintiffs allege the NVIDIA GPUs are defective and caused damage to the notebook

5   computers – of which they are a component part.  *See, e.g.*, ¶126.  NVIDIA, however, concludes

6   the notebook computers are the defective "product" at issue, rather than the NVIDIA GPUs.  *See*

7   Mot. at 24-25.  This usurps the trier of fact of its assigned function.  NVIDIA's simplistic

8   conclusion ignores the multi-factored inquiry the trier of fact undertakes to identify the defective

9   product for purposes of tort claims.  *See McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*,

10  No. C-04-708 SC, 2004 U.S. Dist. LEXIS 15797, at *11-12 (N.D. Cal. Aug. 6, 2004); *KB Home

11  v. Superior Ct.*, 112 Cal. App. 4th 1076, 1086-87 (2003).  "Resolution" of this issue, *i.e.*

12  identifying the defective product, "'should be left to the trier of fact' so as not to deprive the

13  plaintiff of its right to have material issues of fact submitted to a jury."  *See McDowell Valley

14  Vineyards*, 2004 U.S. Dist. LEXIS 15797, at *12 (quoting *KB Home*, 112 Cal. App. 4th at 1087).

15  **VI.   PLAINTIFFS STATE CLAIMS FOR BREACH OF IMPLIED
16         WARRANTY OF MERCHANTABILITY**

17  **A.     Implied Warranties Extend To Brand-Name Component Parts Like
           The NVIDIA GPUs**

18  NVIDIA ignores the fact courts across the country recognize implied warranty claims

19  against component parts manufacturers.  *See, e.g.*, *Metro Nat'l Corp. v. Dunham-Bush, Inc.*, 984

20  F. Supp. 538, 558 (S.D. Tex. 1997); *Wright Schuchart, Inc. v. Cooper Indus.*, No. CA 93-35778,

21  1994 U.S. App. LEXIS 31520, at *13 (9th Cir. Nov. 8, 1994), *amended*, 1995 U.S. App. LEXIS

22  9391 (9th Cir. Apr. 21, 1995) ("direct damages may be recovered from a remote manufacturer on

23  a breach of implied warranty theory, even if only purely economic damages are sought").  Courts

24  are inclined to extend implied warranties where, like here, the defective parts are recognizable

25  and connected with the end product, as opposed to "merely anonymous, unbranded components"

26  of the finished product.  *Metro Nat'l*, 984 F. Supp. at 558.

27

28

1    Thus in *Metro National*, the court upheld plaintiff's breach of implied warranty claim

2  against a component part manufacturer because the defective product's name was "prominently

3  connected" with the end product.  *Metro Nat'l*, 984 F. Supp. at 558.  Like the product in *Metro*

4  *National*, here the defective NVIDIA GPUs are recognizable and prominently connected with

5  the Class Computers.  OEMs promoted and advertised the NVIDIA-brand GPUs as a key

6  component within the Class Computers, and even placed stickers on the Class Computers boldly

7  proclaiming they contained NVIDIA GPUs.  Consumers identify the defective NVIDIA GPUs

8  by name and report them as the defective component in their Class Computers.  ¶29.  Further,

9  NVIDIA holds annual "NVISION Conventions" to promote its products as brand name products.

10  ¶42.  Angry consumers staged a public protest outside of the San Jose Centre for Performing

11  Arts on August 25, 2008, during NVIDIA's 2008 annual NVISION Convention, to heighten

12  awareness about NVIDIA's failure to take responsibility for its defective GPUs.  ¶42.  As in

13  *Metro National*, the Court should extend Plaintiffs' breach of implied warranty claims to

14  NVIDIA's defective GPUs.

15    Incredibly, NVIDIA contends Plaintiffs are unaware their computers contained an

16  NVIDIA GPU and cites *Nygren v. Hewlett-Packard Co.*, No. 07-05793 JW, slip op., at 7 (N.D.

17  Cal. Oct. 24 2008) for the proposition that from a consumer perspective, no difference exists

18  between a defect in a particular computer component or any other computer defect.  Mot. at 11.

19  *Nygren* is inapposite.  In *Nygren*, the court considered whether the defendant's limited warranty

20  covered the allegedly defective component, a wireless local area network ("LAN") card, not

21  whether plaintiffs were aware their computers contained a wireless LAN card.  *Nygren*, No. 07-

22  05793 JW, slip op. at 7.  Nor did *Nygren* address whether a defective component manufacturer is

23  subject to an implied warranty claim.  *Id*.  The pertinent question is whether NVIDIA's GPU is

24  recognizable to Plaintiffs.  *Metro Nat'l*, 984 F. Supp. at 558.  NVIDIA is a household name,

25  OEMs place stickers on their products to showcase NVIDIA GPUs, and consumers are aware

26  NVIDIA's GPU chips are defective, as evidenced in their complaints, media articles and press

27

28

releases.[2]  ¶¶29, 30, 31, 38-40, 42, 52-53.  In contrast to NVIDIA's branded and well-promoted GPUs, NVIDIA's cited cases, *Hininger v. Case Corp.*, 23 F.3d 124 (5th Cir. 1994), *Moore v. Coachman Indus., Inc.*, 499 S.E. 2d 772, and *In re General Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, address **unbranded** component parts and thus have no relevance here.

### B.   NVIDIA's Attempt To Disclaim Implied Warranties Is Unconscionable And Unenforceable

Where, as here, a defendant knew their product was defective at the time of sale, any attempt to disclaim implied warranties is unconscionable and thus unenforceable.  *See*, *e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989); *see also* ¶2.  In *Carlson*, the plaintiffs sued under the implied warranty of merchantability, and asserted defendants knew of the product's design defect at the time of sale.  *Id.* at 295.  In light of these allegations, *Carlson* held "proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'"  *Accord Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622-23 (M.D.N.C. 2005) (plaintiffs sufficiently alleged disclaimers were unconscionable because defendants were aware of the defect at the time of the sale).

Neither *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d at 1104-05, nor *Brothers v. Hewlett-Packard. Co.*, No. C-06-02254 AMW, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007), support NVIDIA's proposition that Plaintiffs cannot imply a warranty to NVIDIA because of the OEMs' express warranties.  *Hoey* found the plaintiffs tried to "bootstrap Sony's express warranty into a representation that the [computers] are defect-free."  *Hoey*, 515 F. Supp.

---

[2] *Nygren* involved the generic statement "HP Pavilion notebooks come with wireless LAN for complete mobility."  Defs.' Request for Judicial Notice ("RJN"), Ex. I at 71.  Here, however, the OEMs identified – and consumers were aware – the Class Computers contained **brand-name NVIDIA** GPUs.  *See* ¶¶28-29, 39, 42.  Plaintiffs maintain it is significant the Class Computers contained brand-name, rather than generic, GPUs.

2d at 1104,  Unlike in *Hoey*, Plaintiffs plead NVIDIA should have known of the defect in its GPUs when the chips were placed into the stream of commerce and, as a result, Defendant cannot limit the implied warranty of merchantability.  ¶¶2, 29.  *Brothers* also misses the mark, because it too involved an express warranty, not whether defendant can disclaim an implied warranty, as in this case.  *Brothers*, 2007 U.S. Dist. LEXIS 13155, at *12.

### C. Plaintiffs State Claims For Implied Warranty Under California Law And The Appropriate State Laws

Plaintiffs implied warranty claims survive because Plaintiffs are the intended beneficiaries of the implied warranties.  California law has long recognized "third-party beneficiaries" may sue on contracts intended to benefit them, even if privity does not exist.  Cal. Civ. Code § 1559; s*ee also* 1 Witkin, Summary of California Law, Contracts §§ 695 *et seq*. (10th ed. 2005).   Under California's third-party beneficiary doctrine, end consumers may sue consumer product manufacturers under implied warranty theories, even absent privity. *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008).  This is because the ultimate consumer, not the product's distributor, is the intended beneficiary of any implied warranty.  *Id.*

In addition, Plaintiffs' claims for breach of implied warranties survive because the laws of the 27 states under which they plead claims do not require privity of contract, as NVIDIA concedes.  ¶¶78-88; *see also* Mot. at 12 & n.3.  The 27 state laws each require the same elements to state a claim.  Plaintiffs sufficiently allege each element: (1) NVIDIA is a merchant, (2) the GPUs are goods, (3) NVIDIA impliedly warranted the GPUs were of merchantable quality, (4) Plaintiffs relied on NVIDIA's skill and judgment, and (5) NVIDIA knew of the defect, and Plaintiffs sustained damages as a proximate result.  ¶¶80-88.

Under California choice-of-law principles, the Court should apply the laws of these states to their affected citizens.  NVIDIA's argument that California law must apply to all of its dealings, nationwide, is inconsistent with the principle "a company that conducts business in numerous states ordinarily is required to make itself aware of and comply with the law of a state

1   in which it chooses to do business." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 105

2   (2006).

3          California's three-step choice-of-law test – (1) whether the laws differ materially; (2) if

4   so, whether each state has an interest in applying its law; and (3) if so, which state's interest will

5   be more impaired if its law is not applied – requires application of these states' law. *Kearney*, 39

6   Cal. 4th at 107-08; *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 241 (2001).

7   NVIDIA admits the first prong is met because unless the third party beneficiary claim is

8   recognized, as Plaintiffs assert here, California law – unlike the other 27 states – otherwise

9   requires privity of contract for traditional implied warranty claims.  Mot. at 13.   NVIDIA

10  conveniently ignores, however, the other states' paramount interests in (1) enforcing contracts

11  entered into within their borders and (2) protecting their consumers.  Plaintiffs' implied warranty

12  claims sound in contract.  States have a substantial interest in protecting contracts made within

13  their borders. *See*, *e.g.*, *Indus. Indem. Ins. Co. v. United States*, 757 F.2d 982, 985 (9th Cir.

14  1985) ("[T]he state has a substantial interest in having contracts construed according to

15  established law, as the original private parties would intend."); *Belknap, Inc. v. Hale*, 463 U.S.

16  491, 512 (1983).  The 27 states also have an overriding interest in protecting consumers in their

17  states and, by not requiring privity, but for third party beneficiary rights, provide greater implied

18  warranty protection than California. *See, e.g.*, *Threlkeld v. Worsham*, 30 Ark. App. 251, 259

19  (1990) (Arkansas warranty law applied to transaction between Arkansas purchaser and Missouri

20  seller, where Missouri law required warranties be written).

21         California law recognizes its own consumer protection laws apply to injured California

22  residents, regardless of where the defendant's conduct occurs. *See Norwest Mortgage, Inc. v.

23  Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (California residents may assert UCL claims

24  regardless of where the offending conduct occurred).  Just as California law protects its citizens

25  regardless of where injurious conduct occurs, California courts should allow non-residents to

26  seek remedies under their states' laws when a California corporation is the offending party.  Any

27  other result would fail to protect non-Californians against injury by California corporations.

28

When other states' laws provide greater protection for their citizens than California, California should respect the superior protections.

**VII.   PLAINTIFFS STATE A CLAIM UNDER THE SONG-BEVERLY ACT BECAUSE PLAINTIFFS PURCHASED A DEFECTIVE CONSUMER PRODUCT AND NVIDIA REFUSED TO HONOR ITS IMPLIED WARRANTY**

Properly stating a claim under Song-Beverly, Plaintiff Robinson alleges he purchased a laptop at retail in California, the laptop contained one of the defective GPUs at issue, and NVIDIA refused to honor its implied warranty relating to the GPU.  ¶¶13-14.  No more is required to state a claim for breach of implied warranty of merchantability under Song-Beverly. Cal. Civ. Code § 1792.  Plaintiffs allege (1) NVIDIA knew of the purpose to which the GPUs were to be used, (2) Plaintiffs relied on NVIDIA's skill or judgment in furnishing goods suitable for that purpose, and (3) the GPUs were unsuitable for that purpose.  ¶¶25, 28-29, 33, 54, 74-76. Plaintiffs thus state a claim for breach of the implied warranty of fitness for a particular purpose under Song-Beverly.  Cal. Civ. Code § 1792.1.

NVIDIA's contention that Song-Beverly requires "vertical privity" between Plaintiffs and Defendant has been rejected by other California courts, and should be rejected here as well. *See, e.g., Gonzalez v. Drew Indus.*, No. CV 06-08233 DDP (JWJx), 2007 U.S. Dist. LEXIS 35952, at *31-32 (C.D. Cal. May 10, 2007) ("[A]lthough defendants argue that the implied warranty claims should be dismissed because they have no vertical privity with *Gonzalez*, this argument ignores the plain language of the Song-Beverly Act, which has been interpreted by a sister-district court in this district as explicitly imposing an implied warranty on manufacturers as well as retail sellers.") (*citing Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110 (C.D. Cal. 2007)).

NVIDIA's contention conflicts with the plain meaning and the goals of Song-Beverly, which extend implied warranties to all consumer goods sold at retail.  Song-Beverly provides, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code § 1792.  The statute's language is clear:  both the manufacturer and the retail seller are presumed to have impliedly warranted the goods.

1    NVIDIA claims its GPUs are not sold "at retail" within the meaning of Song-Beverly,

2  because they are included in laptops Plaintiffs purchased from OEMs.  However, laptops with

3  the defective GPUs were sold at retail.  Nothing in the statute mandates that NVIDIA be the

4  direct seller.  NVIDIA's position on this point is a repeat of its privity argument, and should be

5  rejected for the same reasons discussed above.  Further, the only authority NVIDIA cites,

6  *Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 750 (2003), supports Plaintiffs' claim.   In

7  *Atkinson*, the plaintiff purchased roofing shingles from a contractor, who purchased them from

8  the manufacturer.  The court explicitly stated that while the manufacturer did not sell its products

9  directly to the public, the products were sold at retail within the meaning of the statute.  *Atkinson*,

10  109 Cal. App. 4th at 750.  Indeed, the Court implicitly rejected the very defense that NVIDIA

11  now puts forth, stating:

12          Assuming, without deciding at this point that roof shingles are consumer goods,
        we can envision two different scenarios. One, … the roofer buys the tiles from the
13        manufacturer and installs the tiles as part of a reroofing contract. Two, the
        homeowner buys the roof shingles from a local home improvement store and then
14        pays the roofer to install the shingles. Were we to hold that the roofer is not a
        retail seller we would have an absurd result. Under scenario one, the homeowner
15        has no recourse against the manufacturer under Song-Beverly. Under scenario
        two, he does.
16

17  *Id*. at 760 n.12.  Here, NVIDIA argues for a similarly absurd result by drawing an irrelevant

18  distinction between whether the GPUs at issue are sold by it or by an OEM.  Atkinson makes

19  clear that the question is whether the good is sold at retail, not by whom the good is sold.

20    Finally, NVIDIA contends, again relying on *Atkinson*, its GPUs are not "consumer

21  goods,"  ignoring the plain language of the statute, which expressly defines "[C]onsumer goods"

22  as "any new product *or part thereof*." Cal. Civ. Code § 1791(a) (emphasis added).  NVIDIA

23  does not deny the laptops themselves are consumer goods, and concedes the GPUs are "part" of

24  the laptops.  Mot. at 15.  Further, the result here must differ from the result in *Atkinson* because,

25  unlike roofing shingles, NVIDIA's GPUs are not permanently attached, they can be returned to

26  the manufacturer for repair, and Plaintiffs can replace them without replacing their entire

27  computer.

28

**VIII.   PLAINTIFFS STATE A CLAIM UNDER MAGNUSON-MOSS BECAUSE PLAINTIFFS STATE *PRIMA FACIE* IMPLIED WARRANTY CLAIMS UNDER STATE LAW**

NVIDIA contends Plaintiffs' Magnuson-Moss claim fails for two reasons.   First, NVIDIA maintains Plaintiffs ostensibly have no viable "predicate" state law claim for breach of implied warranty, and thus the Magnuson-Moss claim necessarily fails because it "merely co-opts implied warranty claims under state law."   Mot. at 16 (citations omitted).   But as demonstrated above, Plaintiffs allege *prima facie* implied warranty claims under state law, and, accordingly, they adequately allege predicate violations of state law.

Second, NVIDIA argues this claim does not satisfy the Magnuson-Moss's jurisdictional threshold of "at least 100 [named] plaintiffs."   *Id*. at 16 n.8 (citing 15 U.S.C. § 2310 (d)(3)(C)). In so doing, NVIDIA elevates form over substance.   The jurisdictional provision's purpose is to discourage trivial or minor disputes from being brought as class actions in the district courts.   *See* H.R. Rep. No. 1107, 93rd Cong., 2d Sess. (1974).   NVIDIA's widespread misconduct, which plagued its core product offering and ultimately injured millions of consumers, causing the Company to take an almost $200 million charge, is precisely the type Congress intended to subject to judicial scrutiny.

Additionally, Section 1332(d)(2) of CAFA creates an "alternative basis for federal jurisdiction" over Magnuson-Moss claims.   *Stella v. LVMH Perfumes and Cosmetics, Inc.*, 564 F. Supp. 2d 833, 837-38 (N.D. Ill. 2008); *Chavis v. Fidelity Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006).   In reconciling Magnuson-Moss with CAFA, *Chavis* explained:

> Under the established framework for statutory interpretation, it is to be assumed that Congress was aware of [CAFA]'s strict provisions for maintaining a class-action in federal court.   Congress was also presumed to be aware of section 2310(d)(1)(A) of [Magnuson-Moss] and its recognition that jurisdiction is appropriate under [it] "in any court of competent jurisdiction in any State or the District of Columbia."   Accordingly, CAFA's grant of federal jurisdiction over any class-action in which the matter in controversy exceeds the sum or value of $5,000,000 and where any member of a class of plaintiffs is a citizen of a state different from any defendant necessarily includes qualifying class-actions filed pursuant to [Magnuson-Moss] that fail to meet the strict provisions of 15 U.S.C. § 2310(d)(1)(B).   CAFA provides an alternate basis by which federal courts may become courts of "competent jurisdiction" under 15 U.S.C. § 2310(d)(1)(A).

*Chavis*, 415 F. Supp. 2d at 626 (internal citations omitted).

1    Here, the total amount in controversy easily exceeds $5,000,000, and minimal diversity

2 exists because at least one of the named Plaintiffs is a citizen of a state other than California,

3 where NVIDIA is based.  Thus, even assuming Plaintiffs "cannot satisfy the Magnuson-Moss

4 jurisdictional requirements because they do not have 100 named plaintiffs," the Court has

5 jurisdiction under CAFA.  *Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155, at

6 *28.

7    **IX.   PLAINTIFFS ADDITIONAL STATE CLAIMS ARE NOT BARRED BY
         THE OEM WARRANTIES**

8    NVIDIA's argument limitations within the OEM warranties preclude Plaintiffs' non-

9 warranty claims against NVIDIA implicates evidence outside the ACC, which cannot be

10 considered on a motion to dismiss.  *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th

11 Cir. 1993); *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (citing

12 *Lodge 1380, Bhd. of Ry., Airline & S.S. Clerks v. Dennis*, 625 F.2d 819, 824 (9th Cir. 1980)).  On

13 a motion to dismiss, in only two limited circumstances may courts consider documents not

14 attached to, or specifically incorporated by reference in the complaint.  The first is when the

15 authenticity of the extrinsic document is in question and the complaint "necessarily relies" on the

16 document.  *Parrino v. FHP, Inc.,* 146 F.3d 699, 706-07 (9th Cir. 1988), *amended*, 98 C.D.O.S.

17 5819 (9th Cir. 1998); *AR Int'l Anti-Fraud Sys. v. Pretoria Nat'l Cent. Bureau of Interpol*, No.

18 CV F 08-1301 LJO SMS, 2009 U.S. Dist. LEXIS 60543, at *26 (E.D. Cal. July 15, 2009).  The

19 second exception is when the document is a "matter of public record" which the court may take

20 judicial notice of under Fed. R. Evid. 201.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th

21 Cir. 2001); *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Here, neither

22 exception applies, and Plaintiffs object to their consideration.

23    With respect to the "necessarily relied" exception, the OEM warranties are not attached

24 to, or referenced in, the ACC.  Nor does any claim in the ACC rely on the OEM warranties in

25 any way.  Plaintiffs' claims against NVIDIA do not depend on the OEM warranties.  Rather,

26 Plaintiffs' claims rely on the state and federal laws NVIDIA violated by placing defective

27 consumer goods into the stream of commerce and refusing to take any responsibility for them.

28

¶¶59-140.   NVIDIA is directly liable to Plaintiffs.   The OEM warranties are independent of Plaintiffs' claims against NVIDIA.

Further, the OEM warranties themselves do not support NVIDIA's argument.   Nothing in the OEM warranties suggest they apply to NVIDIA or any entity other than the OEM itself. NVIDIA's RJN, Ex. K.   At minimum, NVIDIA would have to provide additional evidence outside the ACC to extend the OEM's warranties to NVIDIA.   In this regard, the cases cited by NVIDIA – *Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.*, 677 F.2d 771 (9th Cir. 1982), and *Moore*, 499 S.E.2d at 772 – establish OEM warranties alone provide no protection for NVIDIA, and establish NVIDIA must produce additional extrinsic evidence to support its argument.[3]   Of course, this type of information cannot be considered on a motion addressing the pleadings' adequacy.

As for the public records exception, even if NVIDIA can establish the OEM warranties are "matters of public record," which it has yet to do, the warranties alone do not prove NVIDIA's argument.   If NVIDIA wishes the Court to consider evidence the OEM warranties should extend to NVIDIA, the instant motion must be converted to a motion for summary judgment and Plaintiffs should be allowed to conduct discovery on the issue.   Fed. R. Civ. P. 12(b)(6); *Friedman v. Boucher,* 568 F.3d 1119, 1123 (9th Cir. 2009), *amended*, No. 05-15675, 2009 U.S. App. LEXIS 20152 (9th Cir. 2009).

---

[3] In *Aeronaves*, the Ninth Circuit affirmed summary judgment in favor of the defendant aircraft manufacturer, MDC-MDFC, based on warranty provisions in a purchase agreement negotiated by plaintiff airline, Aeromexico, from which Aeromexico benefited and to which Aeromexico agreed to be bound.  *Aeronaves*, 677 F.2d at 773.  By reviewing multiple agreements among the parties, the court was able to conclude that the plaintiff agreed to be bound by the warranty provisions. *Id.*  In *Moore*, the defendant recreational vehicle manufacturer argued that ***its*** Limited Warranty, not a third party's, barred the plaintiffs' claims for breach of implied and express warranty and negligence.  *Moore*, 499 S.E.2d at 776.  The court did not, however, base its determination on the language of the warranty alone but, rather, concluded that the limitations applied only after considering evidence showing that the Limited Warranty was indeed delivered to and signed by the plaintiffs.  *Id.*  Like the defendants in *Aeronaves* and *Moore*, NVIDIA must ultimately adduce additional evidence to support its theory that the OEM warranties extend to it.

## X.   PLAINTIFFS STATE A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA") a plaintiff must allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  *See Carton v. Choice Point*, 450 F. Supp. 2d 489, 498 (D.N.J. 2006), *vacated, in part*, 482 F. Supp. 2d 533 (D.N.J. 2007).   Notably, the NJCFA specifically "encompass[es] the acts of remote suppliers, including suppliers of component parts, whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer."  *Perth Amboy Iron Works Inc. v. Am. Home Assurance Co.*, 226 N.J. Super. 200, 211, 543 A.2d. 1020 (1988), *aff'd*, 118 N.J. 249, 571 A. 2d 294 (1990).   Here, Plaintiff Nakash states a claim under the NJCFA because he alleges an ascertainable loss caused by NVIDIA's unlawful conduct.

### A.   Plaintiff Nakash Alleges Unlawful Conduct by NVIDIA

Under the NJCFA, "[u]nlawful practices fall into three general categories: affirmative acts, *knowing omissions*, and regulation violations."  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 647 A.2d 454, 462 (1994) (emphasis added).  Nakash alleges NVIDIA knew or should have known of the defect before selling or placing the NVIDIA GPUs into the stream of commerce. ¶¶2, 114.  Nakash further alleges: (1) NVIDIA knew of hundreds, if not thousands, of consumer complaints about its GPUs, (2) NVIDIA would have discovered the defect from routine testing, (3) NVIDIA eventually admitted their GPUs were defective, and (4) despite knowing the GPUs were defective, NVIDIA failed to disclose the defect or recall the GPUs.  ¶¶2, 4, 27-29, 30-31, 33, 86, 96, 102, 114.   Thus, Nakash properly pleaded an unlawful practice through knowing omissions.   Nakash's allegations also satisfy any heightened pleading requirements, by specifying what NVIDIA knew, how it knew, and when it knew about its defective GPUs.  ¶¶2, 4, 26-31, 33, 46-47, 50, 86, 96, 102, 114.

### B.   Plaintiff Nakash Alleges An Ascertainable Loss

Under the NJCFA, an "ascertainable loss" is defined as "a cognizable and calculable claim of loss due to the alleged [NJ]CFA violation."  *Thiedemann v. Mercedes-Benz USA, LLC*,

1   183 N.J. 234, 249, 872 A.2d 783, 794 (2005).  Ascertainable loss includes more than monetary

2   loss and may occur "when a consumer receives less than what was promised."  *Union Ink. Co. v.*

3   *AT&T Corp.*, 352 N.J. Super. 617, 646, 801 A.2d 361, 379 (2002).  As discussed above, Nakash

4   alleges NVIDIA's defective GPUs caused consumers' computers to underperform, display

5   corrupted images, overheat, and experience complete display and system failure.  ¶3.  Plaintiff

6   Nakash alleges the defect manifests in all affected GPUs, and alleges NVIDIA's remedy was

7   deficient, leaving consumers without recourse.  ¶¶5-8.  Nakash properly alleges an "ascertainable

8   loss" under the NJCFA.

9                                   **<u>CONCLUSION</u>**

10           NVIDIA's Motion should be denied.   To the extent the Court finds the allegations

11   supporting any claim insufficient, Plaintiffs respectfully request leave to amend pursuant to

12   Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when

13   justice so requires."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

14   2003) ("This policy is to be applied with extreme liberality.").

15   DATED:  September 18, 2009            MILBERG LLP
                                          JEFF S. WESTERMAN
16                                        SABRINA S. KIM
                                          NICOLE M. DUCKETT
17

18
                                                  */s/ Nicole M. Duckett*
19                                          NICOLE M. DUCKETT

20                                        One California Plaza
                                          300 S. Grand Avenue, Suite 3900
21                                        Los Angeles, CA  90071
                                          Telephone: (213) 617-1200
22                                        Facsimile:  (213) 617-1975
                                          E-mail:  jwesterman@milberg.com
23                                             skim@milberg.com
                                               nduckett@milberg.com
24

25

26

27

28
     PLAINTIFFS' MEM. IN OPPOSITION TO MOTION TO                              - 25 -
     DISMISS, CASE NO. C 08-4312 JW
     DOCS\486954v2

MILBERG LLP
PETER SAFIRSTEIN
JENNIFER S. CZEISLER
ROLAND RIGGS
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  psafirstein@milberg.com
  jczeisler@milberg.com
  rriggs@milberg.com

*Interim Lead Class Counsel*

SHALOV STONE BONNER & ROCCO LLP
RALPH M. STONE
THOMAS G. CIARLONE, JR.
485 Seventh Avenue
Suite 1000
New York, New York 10018
Telephone: (212) 239-4340
Facsimile:  (212) 239-4310
E-mail:  rstone@lawssb.com
  tciarlone@lawssb.com

*Counsel for Plaintiffs Brian Robinson and Lance
Waidzunas and Plaintiffs' Co-Counsel*

HORWITZ HORWITZ & PARADIS
PAUL O. PARADIS
MICHAEL A. SCHWARTZ
GINA M. TUFARO
28 West 44th Street, 16th Floor
New York, NY 10036
Telephone: (212) 404-2200
Facsimile:  (212 404-2226
E-mail:  pparadis@hhplawny.com
  mschwartz@hhplawny.com
  gtufaro@hhplawny.com

*Counsel for Plaintiff Steven Nakash and Plaintiffs'
Co-Counsel*

DOYLE LOWTHER LLP
WILLIAM J. DOYLE, II
JOHN A. LOWTHER, IV
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Telephone: (619) 573-1700
Facsimile:  (619) 573-1701
E-mail:  bill@doylelowther.com
  john@doylelowther.com

*Counsel for Plaintiff Inicom Networks, Inc. and
Plaintiffs' Co-Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on 18th day of September.

_____
Cecille Chaffins

| PLAINTIFFS' MEM. IN OPPOSITION TO MOTION TO DISMISS, CASE NO. C 08-4312 JW | | | - 27 - |
|---|---|---|---|

DOCS\486954v2

**Mailing Information for a Case 5:08-cv-04312-JW**

**Manual Notice List**
The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**James V. Bashian**
The Law Offices of James V. Bashian, P.C.
500 Fifth Avenue, Suite 2700
New York, NY 10110

**Richard J. Burke**
Richard J. Burke LLC
1010 Market Street, Suite 650
St. Louis, MO 63101

**John Crongeyer**
Crongeyer Law Firm, P.C.
270 15th St NE
Suite 303
Atlanta, GA 30309

**Kristofor T. Henning**
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-6996

**Edward Y. Kroub**
Horwitz Horwitz & Paradis
28 West 44th Street
16th Floor
New York, NY 10036

**Brant C. Martin**
Wick Phillips, LLP
2100 Ross Avenue
Suite 950
Dallas, TX 75201

**Roland Riggs**
Millberg, LLP
One Pennsylvania Avenue
New York, NY 10119

**Robert B. Weiser**
The Weiser Law Firm, P.C.

| PLAINTIFFS' MEM. IN OPPOSITION TO MOTION TO DISMISS, CASE NO. C 08-4312 JW | | | - 28 - |

DOCS\486954v2

121 N. Wayne Avenue, Suite 100
Wayne, PA 19087

**Paul M. Weiss**
Freed  & Weiss LLC
111 W. Washington Street, Suite 1331
Chicago, IL 60602