1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NO. C 08-04312 JW

The NVIDIA GPU Litigation

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE**

_____/

**I.  INTRODUCTION**

Plaintiffs[1] bring this putative nationwide class action against NVIDIA Corporation and Hewlett-Packard Company ("Defendants"), alleging, *inter alia*, violations of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and breach of implied warranty of merchantability. Plaintiffs allege that NVIDIA knowingly sold defective graphics processing units and media communications chips to its original equipment manufacturers ("OEM") such as Hewlett-Packard, which were then included in computers purchased by Plaintiffs.  The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

Presently before the Court are (1) Defendant NVIDIA Corporation's Motion to Dismiss Plaintiffs' Amended Consolidated Complaint,[2] and (2) Defendant NVIDIA Corporation's Motion to

_____

[1]  Plaintiffs are Steven Nakash, Katherine E. Decker, Lance Waidzunas, Louis Olivos, Michael Mann, Tyler Burgert, Chi Lok Leung, Brian Robinson, Todd Feinstein, Inicom Networks, Inc., Tracy Leblanc, and National Business Offices Association, Inc.

[2]  (Docket Item No. 124.)  NVIDIA's Memorandum in Support of NVIDIA Corporation's Motion to Dismiss was filed separately.  (hereafter, "Motion," Docket Item No. 125.)

Strike Class Allegations.[3]  The Court conducted a hearing on October 19, 2009.  Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part NVIDIA's Motion to Dismiss and DENIES NVIDIA's Motion to Strike.

## II.  BACKGROUND

In an Amended Consolidated Complaint filed on May 6, 2009,[4] Plaintiffs allege as follows:

Plaintiff Brian Robinson is a citizen of California.  (ACC ¶ 14.)  Plaintiff Todd Feinstein is a citizen of Louisiana.  (Id. ¶ 12.)  Plaintiff Inicom Networks, Inc. is a citizen of New Mexico.  (Id. ¶ 15.)  Plaintiff Steven Nakash is a citizen of New Jersey.  (Id. ¶ 16.)  Plaintiff Lance Waidzunas is a resident of Illinois.  (Id. ¶ 17.)  Defendant NVIDIA is a Delaware corporation with its headquarters and principal place of business in Santa Clara, California.  (Id. ¶ 18.)[5]

Defendant NVIDIA manufactures and sells graphics processing units ("GPU") and media communications chips ("MCC").  (ACC ¶ 19.)  NVIDIA products provide interactive 3D graphics to the mainstream personal computer market.  (Id. ¶ 18.)  NVIDIA's GPUs and MCPs are used in computers manufactured and sold by OEMs such as Hewlett-Packard, Dell and Apple.  (Id. ¶ 19)  NVIDIA is the second leading producer of GPUs worldwide (as of the second quarter of fiscal 2008), controlling 31.4 percent of the market.  (Id.)

Every computer contains a Central Processing Unit ("CPU").  (ACC ¶ 21.)  The CPU is the "brain" of the computer and oversees and controls every programming function.  (Id.)  To operate properly, the CPU must connect with the other internal components of the computer.  (Id.)  The CPU connects to these other internal components through the computer's "motherboard."  (Id.)  The motherboard is the main circuit board and houses the CPU, memory, graphics, sound and other processors and components.  (Id.)

---

[3]  (hereafter, "Motion to Strike," Docket Item No. 122.)

[4]  (hereafter, "ACC," Docket Item No. 105.)

[5]  Neither the location of Hewlett-Packard's headquarters nor its principal place of business are alleged.

United States District Court

For the Northern District of California

1    The GPU is the primary processor responsible for rendering graphics on the

2    computers at issue. (ACC ¶ 23.) A GPU is designed specifically for performing complex

3    mathematical and geometric calculations that are necessary for graphics rendering. (Id.) To

4    protect the GPU from damage, the GPU is placed into a chip package, or chip carrier. (Id.)

5    The chip package is then either mounted or soldered onto the computer's motherboard. (Id.)

6    Typically, microchips are produced in large batches on a single wafer of electronic-grade

7    silicon. (Id. ¶ 25.) The wafer is then cut into many pieces, each containing one copy of the

8    circuit. (Id.) Each of these pieces is called a "die." (Id.) The die component of the NVIDIA

9    GPUs is defective in that it is not robust enough to withstand normal operation. (Id.)

10   Because of the defective GPU, consumers who purchased Class Computers containing these

11   NVIDIA GPUs experienced display problems and system crashes, as evidenced by many

12   consumer complaints on the Internet. (Id. ¶ 28.)

13   When NVIDIA first designs and manufactures a GPU, it tests that GPU for operating

14   reliability. (ACC ¶ 27.) Thus, NVIDIA should have been aware of the defects from the

15   routine tests before the GPUs were shipped to OEMs. (Id.) In fact, Hewlett-Packard

16   conducted an investigation of its laptops containing NVIDIA GPUs and identified 24 models

17   affected by the defect. (Id. at 26.) NVIDIA subsequently admitted to a defect in its GPUs in

18   its July 2, 2008 Form 8-K, filed with the SEC. (Id. ¶ 30.) On the same day, NVIDIA issued

19   a press release and provided a "Second Quarter Fiscal 2009 Business Update" in which the

20   Company again admitted to the defect. (Id. ¶ 31.) NVIDIA issued another press release on

21   August 12, 2008 reporting results for the second quarter of Fiscal 2009, and stating:

22       During the second quarter of fiscal 2009, NVIDIA recorded a $196 million charge
         against cost of revenue to cover anticipated customer warranty, repair, return,
23       replacement and associated costs arising from a weak die/packaging material set in
         certain versions of our previous generation MCP and GPU products used in notebook
24       systems.

25   (Id. ¶ 40.) However, NVIDIA's announcements failed to specify which GPU and MCP

26   products or computers were defective. (Id. ¶ 32.) Furthermore, although NVIDIA changed

27   its manufacturing and design techniques to remedy its products on a going-forward basis, it

28                                                   3

1    failed to take proper corrective measures with respect to the NVIDIA GPUs that were

2    previously purchased by consumers.  (Id. ¶ 35.)

3          Instead of recalling the defective GPUs, NVIDIA provided its OEMs inadequate

4    remedies and other purported "fixes," which hide, delay, and in some instances, exacerbate

5    the problems caused by the defect.  (Id. ¶ 45.)  One purported "solution" consisted of a BIOS

6    update, which would force the computer's fan to run more frequently (or continuously) in an

7    effort to control the excessive heat caused by the defect.  (Id. ¶ 46.)  The BIOS updates cause

8    the computer's fan to run continuously.  (Id. ¶ 50.)  Although the BIOS update may lower the

9    thermal stress on the defective NVIDIA components by running the system fan constantly,

10   consumers experience a decrease in notebook battery life, increase in system noise, and

11   decrease in computer life.  (Id.)  NVIDIA offered the BIOS "fix" in an attempt to postpone

12   complete system failure of the Class Computers until after the applicable OEM's warranty

13   expired.  (Id. ¶ 51.)

14         The NVIDIA GPU defect manifests itself in all Class Computers to varying degrees.

15   (ACC ¶ 54.)  For example, under normal use the defect causes the Class Computers to

16   generate excessive heat, which forces the system fan to run more often, increasing ambient

17   noise and reducing battery life.  (Id.)  Excessive heat also affects other internal components

18   like the CPU, which will "throttle down," decreasing overall system performance.  (Id.)  The

19   defect results in the inability of Plaintiffs and Class members to use their Class Computers

20   for their intended purposes.  (Id.)  Had Plaintiffs and Class members known about the defect,

21   they would not have purchased Class Computers with defective NVIDIA GPUs.  (Id. ¶ 44.)

22         Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil

23   Procedure on their own behalf and on behalf of all others who purchased at retail a Class

24   Computer equipped with an NVIDIA GPU within the last four years.  (ACC ¶ 56.)  Excluded

25   from the Class is Defendants, any entity that has a controlling interest in Defendants and

26   Defendants' current or former directors, officers and counsel.  (Id.)  Any claims for personal

27   injury are expressly excluded from this class action.  (Id.)

28                                         4

1    On the basis of the allegations outlined above, Plaintiffs allege eight causes of action: (1)

2  Violations of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*

3  *seq.*; (2) Breach Of Implied Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civ.

4  Code §§ 1792 *et seq.*; (3) Breach of Implied Warranty of Merchantability; (4) Breach of Warranty

5  Under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (5) Unjust Enrichment and

6  Money Had and Received; (6) Violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.

7  Stat. Ann. §§ 56:8-1 *et seq.*; (7) Strict Liability and Negligence; and (8) Violation of California

8  Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

9    Presently before the Court are Defendant NVIDIA's ("Defendant") Motions to Dismiss and

10  to Strike.

### III.  STANDARDS

**A.    Motion to Dismiss**

13    Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against

14  a defendant for failure to state a claim upon which relief may be granted against that defendant.

15  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

16  facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

17  (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984).

18  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

19  complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v.

20  City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved

21  in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

22    However, mere conclusions couched in factual allegations are not sufficient to state a cause

23  of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

24  F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

25  that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

26  plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

27  reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129

28

United States District Court
For the Northern District of California

S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**B.    Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Matter is immaterial if it has no essential or important relationship to the claim for relief pleaded. T.M. v. San Francisco Unified School Dist., No. C 09-01463 CW, 2009 WL 2779341, at *2 (N.D. Cal. Sept. 1, 2009).  Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case.  Id.  The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

## IV.  DISCUSSION

**A.    NVIDIA's Motion to Dismiss**

Defendant moves to dismiss each of Plaintiffs' claims on various grounds.  The Court considers each in turn.

**1.    Second Cause of Action:  Breach Of Implied Warranty Under the Song-Beverly Consumer Warranty Act**

Defendant moves to dismiss Plaintiffs' Song-Beverly claim on the grounds that (1) Plaintiffs cannot show privity with Defendant and (2) the Song-Beverly Act does not apply to component manufacturers who do not sell directly to consumers.  (Motion at 14-15.)  Plaintiffs contend that

privity is not required and that the Song-Beverly Act does not require that Defendant be a direct seller to consumers.[6]

The Song-Beverly Consumer Warranty Act provides: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable. The retail seller shall have a right of indemnity against the manufacturer in the amount of any liability under this section." Cal. Civ. Code § 1792. "Manufacturer" means "any individual, partnership, corporation, association, or other legal relationship that manufactures, assembles, or produces consumer goods." Cal. Civ. Code § 1791(j). "Consumer goods" means "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a).

The plain language of the Song-Beverly Act does not require vertical contractual privity between a manufacturer and a consumer. The few cases that have addressed this issue have done so without consensus.[7] Thus, the Court finds that Plaintiffs' lack of privity with Defendant does not entitle Defendant to dismissal of the Song-Beverly claim.

The plain language of the Song-Beverly Act also does not require that the "product or part thereof" be sold by the defendant-manufacturer directly to the plaintiff-consumer. In the case relied on by both parties, Atkinson v. Elk Corp., the plaintiff contracted with a third party to repair his

---

[6] (Plaintiffs' Opposition to Defendant's Motion to Dismiss, hereafter, "Opposition," Docket Item No. 133.)

[7] Compare Tietsworth Sears, Roebuck and Co., No. C 09-00288 JF (HRL), 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009) (stating that "vertical privity is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability[,]" but also noting an exception "when the plaintiff relies on written labels or advertisements of a manufacturer"), with Gonzalez v. Drew Indus., Case No. CV 06-08233 DDP, 2007 U.S. Dist. LEXIS 35952, at *31-32 (C.D. Cal. May 10, 2007) (stating that although "[v]ertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability[,]" to apply that requirement to a Song-Beverly claim would "ignore[] the plain language of the Song-Beverly Act"), and Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1116 n.9 (C.D. Cal. 2007).

roof.[8]  The third party purchased roof shingles from the defendant, which the third party then used in its work on the plaintiff's roof.  Id. at 745, 750.  The court in Atkinson noted that the defendant was not a "retail seller" under the Song-Beverly Act, and explained that the pertinent question was instead whether the third party (the entity that the plaintiff paid to repair the roof) was a retail seller. See id. at 750.  Thus, in this case, Defendant's contention that it is not a retail seller is inapposite, since the relevant question is *whether*—rather than by whom—the goods were "sold at retail."  Here, there is no dispute that the goods were sold at retail when Plaintiffs purchased their computers.

However, the plain language of the Song-Beverly Act requires that the consumer goods at issue be "sold at retail *in this state*."  Cal. Civ. Code § 1792 (emphasis added).  Here, Plaintiffs allege their Song-Beverly Claim "on Behalf of All Class Members Who Purchased a Class Computer."  (ACC at 20.)  Since Plaintiffs do not restrict their Song-Beverly claim to Class Members who purchased the defective products in the state of California, the claim fails.  However, because Plaintiffs may be able to cure this defect by restricting their claim to Class Members who purchased the defective products in the state of California, leave to amend is appropriate.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Song-Beverly Claim with leave to amend.

**2.      Third Cause of Action:  Breach of Implied Warranty of Merchantability**

Defendant moves to dismiss Plaintiffs' claim for breach of implied warranty of merchantability on the grounds that (1) any such warranty would be governed by California law, and would therefore fail for lack of privity, and (2) no such warranty can be implied between a consumer of a product and the manufacturer of a component part.  (Motion at 8-14.)  Plaintiffs contend that (1) their claims are cognizable under California law because Plaintiffs are third party beneficiaries of contracts between the Defendant and the computer retailers, and (2) implied warranties extend to manufacturers of brand name component parts.  (Opposition at 14-18.)

---

[8]  109 Cal. App. 4th 739, 744-45 (Cal. Ct. App. 2003).

United States District Court

For the Northern District of California

i.      Choice of Law

"Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005). This applies to actions brought under the Class Action Fairness Act as well, since CAFA is based upon diversity jurisdiction.[9] California courts apply "governmental interest" analysis in resolving choice-of-law issues. Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107-08 (Cal. 2006). The governmental interest approach generally involves the following three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

Id. at 107-08 (quotations omitted).

In this case, Plaintiffs bring their Third Cause of Action under the laws of 27 states.[10] Those laws differ from California law because, as the parties concede, the laws of those states do not require privity. (See Motion at 13; Opposition at 17.) Furthermore, only two Plaintiffs are citizens of any of the 27 states—New Jersey and New Mexico.[11] Other than the citizenship of two Plaintiffs, no other connection to the 27 states is alleged. Thus, except for New Jersey and New Mexico, none of the 27 states have an interest in the application of their laws in the Third Cause of Action.

---

[9] See Audler v. CBC Innovis Inc., 519 F.3d 239, 248 (5th Cir. 2008) (applying substantive law of forum state " [b]ecause CAFA is based on diversity jurisdiction"); Kaufman v. Am. Exp. Travel Related Servs. Co., Inc., No. 07 C 1707, 2008 WL 687224, at *4 (N.D. Ill. Mar. 7, 2008) (citing 28 U.S.C. § 1332).

[10] Plaintiffs' Cause of Action for Breach of Implied Warranty of Merchantability is brought "By Plaintiffs Feinstein, Inicom, and Nakash, Individually and on Behalf of All Class Members, In the Following States: Alaska, Arkansas, Colorado, Delaware, Hawaii, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, Virginia, West Virginia or Wyoming." (ACC at 21.)

[11] Plaintiff Inicom Networks, Inc. is a citizen of New Mexico. (ACC ¶ 15.) Plaintiff Steven Nakash is a citizen of New Jersey. (Id. ¶ 16.)

United States District Court
For the Northern District of California

1    Even if the Court assumes that the allegations provide a basis for finding that New Jersey

2    and New Mexico have an interest in applying their laws in the Third Cause of Action (i.e., there is a

3    true conflict), California's interest would be more impaired if its law is not applied because

4    Plaintiffs allege that the "circumstances giving rise to Plaintiffs' and Class members' allegations . . .

5    occurred in the State of California" and Defendant is located in California.  (See ACC ¶¶ 18, 61, 78-

6    88, 100, 130.)  Thus, California law governs Plaintiffs' claim for breach of implied warranty of

7    merchantability.

8         **ii.    Application of California Law**

9         "Vertical privity is a prerequisite in California for recovery on a theory of breach of implied

10   warranties of fitness and merchantability."  All West Elecs., Inc. v. M-B-W, Inc., 64 Cal. App. 4th

11   717, 724 (Cal. Ct. App. 1998).  California courts have expressed a policy against holding

12   manufacturers liable to end-consumers under a theory of implied warranty where the parties are not

13   in privity.[12]  However, courts have recognized an exception to the privity requirement for a breach of

14   implied warranty of merchantability claim if a plaintiff can show that he was a third party

15   beneficiary of a contract between the defendant and a third party.  See Cartwright v. Viking Indus.,

16   Inc., 249 F.R.D. 351, 356 (E.D. Cal. 2008); Gilbert Fin. Corp. v. Steelform Contracting Co., 82 Cal.

17   App. 3d 65, 69-70 (Cal. Ct. App. 1978).

18        California has codified third party beneficiary liability as follows:  "A contract, made

19   expressly for the benefit of a third person, may be enforced by him at any time before the parties

20   thereto rescind it."  Cal. Civ. Code § 1559.  "Expressly, as used in the statute and case law, means

21   'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.'"  Schauer v.

22

23        [12]  See Cardinal Health 301, Inc. v. Tyco Elecs. Corp., 169 Cal. App. 4th 116, 144 (Cal. Ct.
24   App. 2008) ("Privity is generally not required for liability on an express warranty because it is
     deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the
25   product, upon which the remote consumer presumably relies.  However, where the subject of the
     action is an implied warranty—i.e., one that is implied in law and did not originate from the
26   manufacturer's own statements or conduct—there is no similar justification for imposing liability on
     a defendant in favor of every remote purchaser.  Absent an affirmative warranty by the
     manufacturer, the potential liability based on an obligation imposed by law would be so far reaching
27   that it could not be justified.") (citations omitted).

28                                            10

United States District Court

For the Northern District of California

1    Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949, 957 (Cal. Ct. App. 2005).  But, "[a] contract

2    made expressly for a third party's benefit does not need to specifically name the party as the

3    beneficiary; the only requirement is that 'the party is more than incidentally benefitted by the

4    contract.'"  Shell v. Schmidt, 126 Cal. App. 2d 279, 290 (Cal. Ct. App. 1954).  "Because third party

5    beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a

6    third party beneficiary 'must plead a contract which was made expressly for his or her benefit and

7    one in which it clearly appears that he or she was a beneficiary.'"  Schauer, 125 Cal. App. 4th at

8    957.

9          Here, the Court finds that Plaintiffs' claim for breach of implied warranty of merchantability

10   fails for several reasons.  First, to the extent that Plaintiffs' claim is based on the laws of the 27

11   states, it fails because California law controls.  Second, even if Plaintiffs had brought their claim

12   solely under California law, the claim would also fail because Plaintiffs do not allege that they were

13   in privity with Defendant.  More importantly, Plaintiffs have failed to alleged the existence of a

14   contract involving Defendant for which Plaintiffs are third party beneficiaries.

15         Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' claim for

16   Breach of Implied Warranty of Merchantability.  Since the Court finds that the defects in the claim

17   as identified above cannot be cured by amendment, Plaintiffs' Third Cause of Action is dismissed

18   with prejudice.

19         **3.      Fourth Cause of Action:  Breach of Warranty Under the Magnuson-Moss
              Warranty Act**

20

21         Defendant moves to dismiss Plaitniffs' Magnuson-Moss Claim on the grounds that Plaintiffs'

22   state law warranty claims fail and that Plaintiffs' allegations do not meet the jurisdictional

23   requirements under the Magnuson-Moss Act.  (Motion at 16 & n.8.)  Plaintiffs contend that their

24   state law claims adequately support their Magnuson-Moss Claim and that CAFA satisfies the

25   jurisdictional requirement under Magnuson-Moss.  (Opposition at 21.)

26         The Magnuson-Moss Warranty Act provides a federal cause of action for state law implied

27   warranty claims.  See 15 U.S.C. § 2301(7); Stearns v. Select Comfort Retail Corp., No. 08-2746 JF,

28                                                        11

United States District Court

For the Northern District of California

2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009).  "However, [the Act] does not expand the rights under those claims, and dismissal of the state law claims requires the same disposition with respect to an associated [Magnuson-Moss Warranty Act] claim."  Stearns, 2009 WL 1635931, at *9 (citing Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008)).

Here, as discussed above, Plaintiffs' Song-Beverly and state law implied warranty claims are inadequately pleaded.  Thus, Plaintiffs fail to state a claim under the Magnuson-Moss Warranty Act.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Magnuson-Moss Claim with leave to amend.[13]

### 4.    Effect of OEM Warranty Limitations On All Non-Warranty Claims

Defendant moves to dismiss Plaintiffs' non-warranty claims on the ground that limitations and disclaimers in the warranties provided to Plaintiffs from the OEMs (i.e., the computer retailers—Dell, Hewlett-Packard, and Apple) preclude such claims.  (Motion at 16-17.)  Plaintiffs contend that the warranties relied on by Defendant are not properly before the Court on the Motion to Dismiss.  (Opposition at 22-23.)

"[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a ruling on a Rule 12(b)(6) motion to dismiss."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  Under Federal Rule of Evidence 201(b), a court may also consider (by taking judicial notice) documents "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

---

[13]  The Court notes that Plaintiffs satisfy the Magnuson-Moss Act's jurisdictional requirement because they allege jurisdiction based on the Class Action Fairness Act.  (ACC ¶ 10; Opposition at 21-22); see 15 U.S.C. § 2310(d); Wolph v. Acer Am. Corp., No. C 09-01314 JSW, 2009 WL 2969467, at *3 (N.D. Cal. Sept. 14, 2009) (Magnuson-Moss Act claims may be heard in federal court without meeting the Act's jurisdictional requirement of at least 100 named plaintiffs where federal jurisdiction over the action is based on CAFA).

In this case, Defendant requests that the Court take judicial notice[14] of the following documents:

     (1)     NVIDIA's Form 8-K for the period ending July 2, 2008 (RJN, Ex. A);

     (2)     Community website postings located at http://forum.notebookreview.com/showthread.php?t=274653 and printed on August 3, 2009 and containing a discussion initiated by user "snipertaz" regarding "Defective Graphics Card on Vostro 1400" on July 19, 2008 (RJN, Ex. B);

     (3)     Hewlett-Packard Co.'s ("HP") web page located at http://h10025.www1.hp.com/ewfrf/wc/document?docname=c01087277&lc=en&cc=us&dlc=en&product=1842189&lang=en#, printed on July 28, 2009, and titled "HP Limited Warranty Service Enhancement" (RJN, Ex. C);

     (4)     Dell Inc.'s ("Dell") web page located at http://en.community.dell.com/blogs/direct2dell/archive/2008/08/18/nvidia-gpu-update-dell-tooffer-warranty-enhancement-to-all-affected-customers-worldwide.aspx, printed on August 3, 2009, and titled "NVIDIA GPU Update: Dell to Offer Limited Warranty Enhancement to All Affected Customers Worldwide" (RJN, Ex. D);

     (5)     HP's Form 10-K for the period ending October 31, 2008 (RJN, Ex. E);

     (6)     Dell's Form 10-K for the period ending January 30, 2009 (RJN, Ex. F);

     (7)     Apple Inc.'s ("Apple") Form 10-K for the period ending September 27, 2008 (RJN, Ex. G);

     (8)     NVIDIA's Form 8-K for the period ending August 6, 2009 (RJN, Ex. H);

     (9)     Slip Opinion in Nygren v. Hewlett-Packard Co., No. 07-05793 JW (N.D. Cal.) (Ware, J.) dated October 24, 2008 (RJN, Ex. I);

     (10)    Slip Opinion in Decker v. Hewlett-Packard Co., No. 09-00295 JW (N.D. Cal.) (Ware, J.) dated June 19, 2009 (RJN, Ex. J);

     (11)    A document from the contents of the Court's files in Decker v. Hewlett-Packard Co., titled "HP's Worldwide Limited Warranty and Technical Support" (RJN, Ex. K),

     (12)    Apple's web page located at http://support.apple.com/kb/TS2377, printed on July 24, 2009, and titled "MacBook Pro: Distorted video or no video issues" (RJN, Ex. L);

     (13)    Dell's web page located at http://www.dell.com/content/topics/global.aspx/policy/en/policy?c=us&cs=0401&l=en&s=bsd&~section=010#hardware, printed on August 18, 2009, and titled "Dell's Online Policies – Limited Hardware Warranties."  (RJN, Ex. M).

---

[14]  (See Motion at 17; Request for Judicial Notice in Support of Defendant NVIDIA Corporation's Motion to Dismiss Plaintiffs' Amended Consolidated Complaint and Motion to Strike Class Allegations, hereafter, "RJN," Docket Item No. 126.)

United States District Court

For the Northern District of California

Defendant contends that "HP's Worldwide Limited Warranty and Technical Support"[15] shows that the OEM warranty provisions would exclude non-warranty claims,[16] and that the Court should take judicial notice of this document and other warranty related documents, including from Apple and Dell[17] because they are referenced in the Amended Consolidated Complaint or publicly available on the Internet.  (See Motion at 17; RJN at 4.)[18]  Although the Court finds good cause to take judicial notice of these documents,[19] Defendant has failed to demonstrate whether these documents are in fact the warranties that apply to all of the Class Computers purchased during the entire Class Period or even whether these purported warranties comprise the full extent of the applicable OEMs warranties.  Thus, at the pleading stage, an unconnected and random showing of these purported warranty provisions alone is insufficient to preclude all non-warranty claims.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' non-warranty claims based on the OEMs warranties.

### 5.    Sixth Cause of Action:  New Jersey Consumer Fraud Act

Defendant moves to dismiss Plaintiffs' claim under the New Jersey Consumer Fraud Act on the grounds that (1) California law controls, (2) Plaintiffs have not alleged any affirmative misrepresentation or actionable omission, (3) Plaintiffs' claim does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), and (4) Plaintiffs have not pleaded an "ascertainable loss."  (Motion at 22.)

---

[15]  (RJN, Ex. K.)

[16]  (Motion at 17.)

[17]  (RJN, Exs. C, D, L.)

[18]  Although Defendant claims that it "seeks judicial notice of these materials and information for the fact of their existence and for the fact of their content, *and not for their truth*," (RJN at 3 (emphasis added)), Defendant also urges the Court to *accept as true* that the proffered warranty provisions from Hewlett-Packard do in fact provide certain limitations and disclaimers according to their terms.  (See Motion at 17.)

[19]  The Court also GRANTS Defendant's RJN as to all other documents (RJN, Exs. A, B, E-J, M) because they are either referenced in the Amended Consolidated Complaint or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

14

To state a claim under the NJCFA, a plaintiff must allege unlawful conduct by the defendant, an ascertainable loss, and a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  See Dabush v. Mercedes-Benz USA LLC, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005).  An "ascertainable loss" is defined as "a cognizable and calculable claim of loss due to the alleged [NJ]CFA violation."  Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 794 (N.J. 2005).  Under the NJCFA, "[u]nlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  "[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, . . . ."  Cox, 647 A.2d at 462.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Here, Plaintiffs allege as follows:

> Plaintiff Nakash purchased his Class Computer in New Jersey.  (ACC ¶ 110.) Defendant knew or should have known about the defect due to reliability tests that Defendant routinely performs on its GPUs and numerous consumer complaints.  (Id. ¶¶ 4, 27-29.) Defendant's SEC filings and press releases show that Defendant knew about the defect as of at least July 2008.  (See id. ¶¶ 30, 31, 40.)  Despite knowing of the defect, Defendant failed to disclose it to Plaintiffs.  (Id. ¶ 117.)  "Because of the defective GPU, consumers who purchased Class Computers containing these NVIDIA GPUs experienced display problems and system crashes . . . ."  (Id. ¶ 28.)  The defect results in the inability of Plaintiffs and Class members to use their Class Computers for their intended purposes.  (Id. ¶ 54.)  Had Plaintiffs and Class members known about the defect, they would not have purchased Class Computers with defective NVIDIA GPUs.  (Id. ¶ 44.)

The Court finds that as alleged, Plaintiffs have sufficiently stated a claim for fraud under the NJCFA.  First, Plaintiffs' allegations meet the particularity requirement of Rule 9(b) because they provide sufficient details about the circumstances surrounding the alleged fraud.  Second, Plaintiffs have alleged an actionable omission in that despite knowing about the defects, Defendant failed to disclose it to the consumers.  Finally, Plaintiffs have alleged a cognizable and calculable loss to the

United States District Court

For the Northern District of California

15

1  extent they allege the inability to use their computers for their intended purposes and purchasing

2  computers with defective GPUs that they would not have otherwise purchased.[20]

3      With respect Defendant's contention that this claim fails because California law controls, the

4  Court finds that it is unsupported by choice of law analysis.  For example, Defendant does not

5  contend or demonstrate that the NJCFA conflicts with any specific California law.  Furthermore,

6  there is a basis for applying New Jersey's consumer protection law because one of the named

7  Plaintiffs purchased his computer in New Jersey.

8      Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claim under the

9  New Jersey Consumer Fraud Act.

10      **6.      Eighth Cause of Action:  California Consumers Legal Remedies Act**

11      Defendant moves to dismiss Plaintiffs' claim under the CLRA on the ground that Defendant

12  did not make any deceptive representation to Plaintiffs and did not have a duty to disclose to

13  Plaintiffs information about the alleged defect.  (Motion at 18-19.)  Plaintiffs contend that

14  Defendant's active concealment of material information properly supports a CLRA claim.

15  (Opposition at 4-6.)

16      The Consumers Legal Remedies Act prohibits "'unfair methods of competition and unfair or

17  deceptive acts or practices' in transactions for the sale or lease of goods to consumers."  Daugherty

18  v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 833 (Cal. Ct. App. 2006) (citing Cal.

19  Civ. Code § 1770(a).  A claim under the CLRA may be based on a fraudulent omission if (1) the

20  omission was contrary to a representation actually made by the defendant, or (2) the omission was of

21  a fact the defendant was obliged to disclose.  Daugherty, 144 Cal. App. 4th at 835.

22  The obligation to disclose can arise in four circumstances:

23          (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the
            defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the
24          defendant actively conceals a material fact from the plaintiff; and (4) when the defendant
            makes partial representations but also suppresses some material fact.

25

26      [20]  To the extent that Defendant contends that Plaintiffs' loss is not cognizable in light of
    warranty remedies provided by the OEMs, the Court rejected that argument above in Section
27  IV.A.4.

28                                                16

Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (Cal. Ct. App. 1997)).

Here, Plaintiffs allege as follows:

> Defendant actively concealed a material fact from Plaintiffs—the product defect. (ACC ¶¶ 2, 32, 42, 117, 135-36.)  Plaintiffs would not have purchased the defective products had they known about the defect.  (Id. ¶ 44.)  The defect caused computer failures throughout the life of the computers, which would include use within the warranty period.  (See id. ¶¶ 5, 29, 51, 54.)

The Court finds that Plaintiffs have adequately alleged concealment of a material fact—the product defect.  Thus, Defendant had a duty to disclose such information.  The cases cited by Defendant to show the absence of a duty are inapposite because those cases all dealt with product failures that manifested after the warranty period expired.[21]

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claim under the California Consumers Legal Remedies Act.

### 7.    First Cause of Action:  Unfair Competition Law

Defendant moves to dismiss Plaintiffs' UCL claim on the grounds that Plaintiffs have not alleged a valid predicate violation that would support a claim under the "unlawful" prong of the UCL, and that the allegations are too sparse to state a claim under the "unfair" prong.  (Motion at 20-21.)

The UCL is a broad statute that defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Given the sweep of the statute, a "practice may be deemed unfair even if not specifically proscribed by some other law."  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  There can thus be a violation of the UCL if a business practice was (1) unlawful, (2) unfair, or (3) fraudulent.

---

[21]  See Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964 (N.D. Cal. 2008); Daugherty, 144 Cal. App. 4th at 831-32; Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255 (Cal. Ct. App. 2006).

17

United States District Court

For the Northern District of California

With respect to the unlawfulness prong of the UCL, "section 17200 borrows violations of other laws and treats them as unlawful practices independently actionable." Saunders v. Super. Ct., 27 Cal. App. 4th 832, 839 (Cal. Ct. App. 1994). These include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Id. at 838-39.

A business practice is unfair if "it offends established public policy . . . or is substantially injurious to consumers." People v. Duz-Mor Diagnostic Lab., 68 Cal. App. 4th 654, 658 (1998). In order to find a business practice "unfair" under the UCL, a court must conduct an "examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1990).

As discussed above, Plaintiffs have stated a claim under the CLRA. Thus, Plaintiffs have stated a claim under the "unlawful" prong of the UCL. With respect to the "unfair" prong of the UCL, Plaintiffs allege as follows:

> Because of the defective GPU, consumers who purchased Class Computers containing these NVIDIA GPUs experienced display problems and system crashes . . . ." (ACC ¶ 28.) The defect results in the inability of Plaintiffs and Class members to use their Class Computers for their intended purposes. (Id. ¶ 54.) Had Plaintiffs and Class members known about the defect, they would not have purchased Class Computers with defective NVIDIA GPUs. (Id. ¶ 44.)

The Court finds that Plaintiffs have adequately alleged that Defendant's practice was substantially injurious to consumers. Thus, Plaintiffs have stated a claim under the "unfair" prong of the UCL.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' UCL claim.

**8.     Fifth Cause of Action:  Unjust Enrichment and Money Had and Received**

Defendant moves to dismiss Plaintiffs' Unjust Enrichment and Money Had and Received claim on the grounds that (1) Defendant was not unjustly enriched because Plaintiffs never directly paid any money to Defendant, and (2) California law does not allow a stand-alone cause of action for unjust enrichment or money had and received. (Motion at 23-24.) Plaintiffs contend that California law allows such claims even where the money did not directly pass from one party to the other. (Opposition at 10-12.)

18

1    Under California law, "[u]njust enrichment is not a cause of action . . . or even a remedy, but

2  rather a general principle, underlying various legal doctrines and remedies.  It is synonymous with

3  restitution."  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (Cal. Ct. App. 2004); see also

4  McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (Cal. Ct. App. 2006).  Thus, unjust

5  enrichment is a theory of recovery, not an independent legal claim.  IB Melchoir v. New Line

6  Productions, Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003).  California also does not

7  recognize an independent cause of action for money had and received.  See McBride v. Boughton,

8  123 Cal. App. 4th 379, 394 (Cal. Ct. App. 2004).

9    The Court finds that as a matter of law, Plaintiffs' claims for unjust enrichment and money

10 had and received are not cognizable.

11   Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' claims for

12 Unjust Enrichment and Money Had and Received with prejudice.

13        **9.    Seventh Cause of Action:  Strict Liability and Negligence**

14   Defendant moves to dismiss Plaintiffs' claims for Strict Liability and Negligence on the

15 ground that the economic loss rule precludes tort claims where Plaintiffs allege no harm beyond the

16 damage to their computers.  (Motion at 13.)  Plaintiffs contend that they may recover in tort for

17 damage to the computers because that is damage beyond the defective product itself—the GPU.

18 (Opposition at 13-14.)

19   The economic loss rule provides:  "Where a purchaser's expectations in a sale are frustrated

20 because the product he bought is not working properly, his remedy is said to be in contract alone, for

21 he has suffered only 'economic' losses.  This doctrine hinges on a distinction drawn between

22 transactions involving the sale of goods for commercial purposes where economic expectations are

23 protected by commercial and contract law, and those involving the sale of defective products to

24 individual consumers who are injured in a manner which has traditionally been remedied by resort to

25 the law of torts."  Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988 (Cal. 2004).

26 "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a

27

28                                                                19

product defect causes damage to 'other property,' that is, property *other than the product itself*."

<u>Jimenez v. Super. Ct.</u>, 29 Cal. 4th 473, 483 (Cal. 2002) (emphasis in original).

Here, Plaintiffs allege as follows:

> NVIDIA's defective GPUs caused consumers' computers to underperform, display corrupted images and artifacts, overheat, and experience complete display and system failure. (ACC ¶ 3.) The NVIDIA GPU defect reduces battery life, and generally degrades internal components like the CPU, which will "throttle down," decreasing overall system performance and ultimately resulting in markedly degraded computers. (<u>Id.</u> ¶¶ 5, 49-51, 54-55, 65-66.)

The Court finds that Plaintiffs have adequately alleged that Defendant's defective product (the GPU) caused damage to property such as the CPU's battery. Thus, Plaintiffs have alleged that the defective GPU has caused damage to property other than itself.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' Strict Liability and Negligence claims.

**B.      NVIDIA's Motion to Strike**

Defendant moves to strike (1) Plaintiffs' class allegations in paragraphs 56-58 of the Amended Consolidated Complaint, and (2) Plaintiffs' class allegations to the extent they apply to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 *et seq.* (Motion to Strike at 2-3.)

**1.      Ascertainability and Manageability of Plaintiffs' Class Allegations**

Defendant moves to strike Plaintiffs' class allegations in paragraphs 56-58 of the Amended Consolidated Complaint because the putative class is unascertainable and unmanageable. (Motion to Strike at 2-3.)

A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage of the litigation. <u>See Shein v. Canon U.S.A., Inc.</u>, No. CV 08-07323 CAS, 2009 WL 3109721, at *10 (C.D. Cal. 2009).

Accordingly, the Court DENIES Defendant's Motion to Strike the class allegations on the ground that the putative class is unascertainable and unmanageable.

United States District Court

For the Northern District of California

**2.      Song-Beverly Consumer Warranty Act**

Defendant moves to strike Plaintiffs' Song-Beverly claim because Plaintiffs allege their Song-Beverly claim to include Class Members who purchased their computers in states other than California.  (Motion to Strike at 3.)  Since the Court has dismissed Plaintiffs' Song-Beverly claim with leave to amend (see Section IV.A.1), the issue of whether to strike the claim is moot.

In sum, the Court DENIES Defendant's Motion to Strike.

## V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss as follows:

(1)      Defendant's Motion to Dismiss Plaintiffs' Song-Beverly Claim is GRANTED with leave to amend.

(2)      Defendant's Motion to Dismiss Plaintiffs' claim for Breach of Implied Warranty of Merchantability is GRANTED with prejudice.

(3)      Defendant's Motion to Dismiss Plaintiffs' Magnuson-Moss Claim is GRANTED with leave to amend.

(4)      Defendant's Motion to Dismiss Plaintiffs claims for Unjust Enrichment and Money Had and Received is GRANTED with prejudice.

(5)      The Court DENIES Defendant's Motion as to all other grounds.

The Court DENIES Defendant's Motion to Strike.

On or before **December 14, 2009**, Plaintiffs shall file their Second Amended Consolidated Complaint, if any, consistent with the terms of this Order.

Dated: November 19, 2009

JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   Alan M. Mansfield alan@clgca.com
    Alreen Haeggquist alreenh@zhlaw.com

3   Daniel Emmett McGuire dmcguire@morganlewis.com
    Eric David Freed eric@freedweiss.com

4   George Kevin Lang george@freedweiss.com
    Gina M. Tufaro gtufaro@hhplawny.com

5   Helen I. Zeldes helenz@zhlaw.com
    Howard Holderness hholderness@morganlewis.com

6   Ira P. Rothken ndca@techfirm.com
    James C. Sturdevant jsturdevant@sturdevantlaw.com

7   James E. Cecchi jcecchi@carellabyrne.com
    Jeff S. Westerman jwesterman@milberg.com

8   Joe R. Whatley jwhatley@wdklaw.com
    John Allen Lowther john@doylelowther.com

9   Jonathan Shub jshub@seegerweiss.com
    Joshua Daniel Watts jwatts@orrick.com

10  Justin Myer Lichterman jlichterman@orrick.com
    Lindsey H. Taylor ltaylor@carellabyrne.com

11  Meredith Ann Galto mgalto@morganlewis.com
    Michael A. Schwartz mschwartz@hhplawny.com

12  Monique Olivier molivier@sturdevantlaw.com
    Nicholas Koluncich nkoluncich@newmexicoclassactions.com

13  Paul O. Paradis pparadis@hhplawny.com
    Paul R. Kiesel Kiesel@kbla.com

14  Ralph M. Stone rstone@lawssb.com
    Robert A. Particelli rparticelli@morganlewis.com

15  Robert P. Varian rvarian@orrick.com
    Thomas G Ciarlone tciarlone@lawssb.com

16  Whitney Huston whuston@sturdevantlaw.com

17

18  **Dated: November 19, 2009**                **Richard W. Wieking, Clerk**

19

20                                              **By:____/s/ JW Chambers_____**
                                                   **Elizabeth Garcia**

21                                                 **Courtroom Deputy**

22

23

24

25

26

27

28