MICHAEL F. RAM (SBN 104805)
mram@ramolson.com
KARL OLSON (SBN 104760)
kolson@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

EDELSON & ASSOCIATES, LLC
Marc H. Edelson
medelson@edelson-law.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN KODROFF &
WILLIS, P.C.
Jeffrey L. Kodroff
jkodroff@srkw-law.com
John A. Macoretta
JMacoretta@srkw-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Attorneys for HP Consumer Objectors

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE NVIDIA GPU LITIGATION | CASE NO.  C 08-04312 JW |
| This Document Relates To: | **CLASS ACTION** |
| ALL ACTIONS | **[REDACTED] OBJECTIONS OF HP CONSUMERS TO PRELIMINARY APPROVAL OF SETTLEMENT** |
| | Date:   August 30, 2010<br>Time:   9:00 a.m.<br>Place:  Courtroom 8, 4th Floor<br>**[Hon. James Ware]** |

1   **I.      INTRODUCTION**

2           HP Consumers Amy Fromkin, Stephen Shifflette, Nathan Nygren, Normand Perron and

3   G. David Hatfield (collectively "HP Consumer Objectors") hereby object to the proposed class

4   action settlement in the *Nvidia GPU Litigation.* The Settlement provides inadequate or no relief

5   for the majority of HP consumers but releases all claims against not only Nvidia, but against

6   original equipment manufacturers ("OEMs") including Hewlett-Packard ("HP"). Since before

7   this Nvidia case was filed, HP Consumer Objectors had been vigorously litigating against HP

8   relating to a known wireless defect in their lap-top computers.[1] The Stipulation Agreement of

9   Settlement with Nvidia (the "Proposed Nvidia Settlement Agreement"), Docket No. 238-1,

10  purports to resolve all of the HP Consumer Objectors' claims against HP, despite the fact that HP

11  is making no contribution whatsoever to the settlement and even though both *Nvidia* plaintiffs'

12  counsel and HP repeatedly told this Court that the litigations against HP and Nvidia were not

13  related. Further, the *Nvidia* settlement proposes misleading and inaccurate notice to a class which

14  may or may not include all HP consumers in the *Perron* and *Nygren* class actions. The timing

15  and structure of the Nvidia Settlement Agreement appears to be the product of collusion between

16  the parties, and not designed to benefit HP consumers who are class members, but simply to

17  protect HP from further litigation.

18          As will be detailed below, the HP Consumer Objectors sued HP several months before

19  any litigation against *Nvidia* was filed. The *Nvidia* plaintiffs and their counsel were well aware of

20  the *HP* Consumer Objectors claims, and used those claims to drive their own litigation. Now

21  they are surrendering the wireless claims of the *Perron* and *Nygren* Plaintiffs against HP for little

22  to no value. This is being done even though the Nvidia plaintiffs never actively litigated their

23  case against HP and conducted no discovery regarding wireless claims.

24  **II.     FACTUAL BACKGROUND**

25          HP Consumer Objector Nygren filed the initial *Nygren v. HP* complaint on November 14,

26  _____

27      [1]  Plaintiffs Nygren, Shifflette and Fromkin brought the case of *Nygren v. HP – Case No. C07-05793.* It was dismissed solely on choice of law grounds. An appeal will be timely filed.

28  Plaintiffs Perron and Hatfield brought the case of *Perron v. Hewlett-Packard* – Case No. 10-CV-00695-LHK, which is presently before Judge Koh of this Court.

_____

1  2007 after HP was unable to repair his defective HP Pavilion DV6110US notebook computer.

2  Nygren alleged that his was one of a line of HP Pavilion and Presario models that experience

3  premature failures of the internal wireless device and heat cycling defects.[2]

8      Subsequently, Objector Normand Perron, a California resident, filed an additional action

9  against HP.  The *Perron* complaint, related to *Nygren*, alleges that HP fraudulently sold the

10  computers with knowledge of the defect so that every class member is entitled to a refund of the

11  purchase price of the computer that reflected the wireless function.

12      The initial complaints in the *NVIDIA GPU Litigation* were not filed until September 2008.

13  These complaints, naming NVIDIA, HP, and other OEMs, as defendants, allege that that a heat

14  cycling defect causes *video* failures in their notebook computers.

17      On May 5, 2010, the NVIDIA plaintiffs filed a Third Amended Consolidated

18  Complaint naming only NVIDIA as a defendant and asserting claims relating to video defects.

19  Docket No. 195.

20      On June 14, 2010, the Court also heard oral argument on the NVIDIA Plaintiffs' Motion

21  for Class Certification and took that matter under consideration.  On August 16, 2010, the parties

22  in the *NVIDIA GPU Litigation* agreed to resolve their dispute and filed the instant Motion for

23  Preliminary Approval of Settlement.

26     [2] On June 24, 2010, this Court granted summary judgment in *Nygren* on the basis that the

27  out of state plaintiffs had insufficient contacts with California to sustain their California UCL claims. This ruling, which plaintiffs will appeal, does not of course affect their claims under their home state consumer protection laws.  Nor does it affect Normand Perron's California consumer

28  protection claims, as he is a California resident.

**III.   THE LITIGATION AGAINST HP AND NVIDIA IS NOW INTERTWINED BECAUSE THE NVIDIA PLAINTIFFS ARE ATTEMPTING TO RELEASE THE HP WIRELESS CLAIMS**

HP Consumer Objectors all own HP Pavilion and Compaq Presario notebook computers, internally designated by HP as "Atlantis" and "Apollo," alleged to experience wireless failures. The settlement agreement reached in the *NVIDIA GPU Litigation* purports to discharge the HP Consumer Objectors' wireless claims against HP, despite the fact that, as is discussed in greater detail below, the *Nygren* and *Perron* class of plaintiffs will receive inadequate consideration for the release (and nothing from HP). This is not surprising since the Nvidia plaintiffs counsel have no insight into the causes and magnitude of the wireless claims having conducted no litigation on the issue.

In fact, class counsel in the *NVIDIA GPU litigation* have expressly and repeatedly told this Court that their claims do not include wireless failures. *See Proposed Interim Class Counsel's Response To Plaintiff Decker's Motion,* 5:08-cv-04312-JW, Doc. 97. "The consolidated amended complaint will not allege claims arising from HP's laptop computers equipped with defective wireless communication cards."[3] *Id. at* 3. Rather, counsel have represented that the *NVIDIA GPU Litigation* has a "drastically distinct focus. In those cases, the allegations are based on graphics problems and the graphics chip manufacturer." *Id. at* 2. "To the extent *the NVIDIA GPU Litigation* pleadings make passing reference to wireless problems or issues with HP laptops, these allegations serve only to incorporate the entirety of press releases or generally are from media releases or reports that were quoted in their entirety for accuracy and completeness." *Id. at* 2-3. *Indeed, HP was not even included as a defendant in the Third Amended Complaint in the Nvidia GPU Litigation filed just four months ago. See* Docket No. 195.

The Nvidia Settlement Agreement highlights the fact that wireless failures are not related to this litigation:

Every putative Class member purchased a Class Computer equipped with a

---

[3]   In fact, the Third Amended Complaint filed in this action makes no allegation concerning wireless failures. *See* TAC.

defective NVIDIA chip.  Each Class Member experienced video or graphics-related failures due to the defective chips.

Because each Plaintiff purchased a Class Computer containing an NVIDIA chip and <u>experienced video or graphics-related</u> problems similar to those experienced by other Class members, Plaintiffs satisfy the typicality requirement.

*See Nvidia  Settlement Agreement,* at 15 (emphasis added).

Additionally, none of the parties in the NVIDIA GPU Litigation has identified the plaintiffs in *Nygren* and *Perron* as related parties.  *See* Plaintiff Nathan DeBockler's Certification of Interested Entities or Persons Pursuant To Local Rule 3-16, June 9, 2010, 5:08-cv-04312-JW, Doc. 216 (stating "other than the named parties, there is no such interest to report."); Plaintiffs' Case Management Conference Statement, June 7, 2010, 5:08-cv-04312-JW, Doc. 208, 7; NVIDIA'S Conditional Non-Opposition To Request To Find Decker Action Unrelated To NVIDIA GPU Litigation, March 6, 2009, 5:08-cv-04312-JW, Doc. 73; Hewlett-Packard's Response In Opposition To Plaintiff Decker's Motion To Consider Whether Cases Should Be Related, March 26, 2009, 5:08-cv-04312-JW, Doc. 93; Hewlett-Packard's Motion For Administrative Relief To Consider Whether Cases Should Be Related, February 2, 2009, 5:09-cv-00328-JW, Doc. 8; Hewlett-Packard's Motion For Administrative Relief To Consider Whether Cases Should Be Related, January 9, 2009, 5:08-cv-05081-JW, Doc. 5; Certification Of Interested Entities Or Persons Pursuant To Civ. L.R. 3-16, November 13, 2008, 5:08-cv-04332-JW, Doc. 24.

Clearly, all the parties in the NVIDIA GPU litigation were aware of the claims in *Nygren* and *Perron.* If any of the parties in the *NVIDIA GPU Litigation* were of the opinion, prior to entering into the proposed settlement, that the claims asserted in *Nygren* and *Perron* were related to, incorporated in, or subsumed by, the *NVIDIA GPU Litigation*, then counsel were duty bound, under the Rules, to provide such a notice to the *Nygren* and *Perron* plaintiffs.  They did not.[4]

Despite the recognition that the claims asserted in the *NVIDIA GPU Litigation* are distinct from those in *Nygren* and *Perron,* the proposed settlement and release attempts to shoehorn in a

---

[4] Interim lead Class Counsel for the Plaintiffs in this case, Milberg LLP, was recently sanctioned by another Court for making misleading statements in a Complaint and then failing to correct them.  *In re Sony Corp. SXRD Rear Protection TV Marketing Sales Practice Litigation,* 2010 Westlaw 2889476 (S.D.N.Y. 2010, docket no. 09-MD-2102-RPP.

discharge of any liability HP may have to consumers who purchased the Atlantis and Apollo notebook computers at issue in the *Nygren* and *Perron* litigations.

The improper maneuvering is further demonstrated by the fact that it appears none of the proposed Nvidia class representatives owns one of the Atlantis and Apollo notebook computer models at issue in *Nygren* and *Perron*, nor has any of them alleged to have experienced the WLAN failures.  Such persons lack the standing to discharge claims of HP purchasers for loss of wireless.  *See Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003); *overruled on other grounds by Dukes v. Wal-Mart*, 603 F3d 571 (9th Cir. 2010); *National Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981).

These attempts to swallow up and destroy claims not being litigated in the Nvidia GPU Litigation is reason enough for the Court to reject the proposed settlement.

## IV.    THE PROPOSED SETTLEMENT DOES NOT MEET THE STANDARD FOR PRELIMINARY APPROVAL

It is the Court's obligation to refuse even preliminary approval of a settlement that appears unfair or unreasonable.  In *Kakani v. Oracle Corporation*, No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007), the court denied a joint motion to preliminarily approve a proposed settlement for several reasons that also apply to the proposed Nvidia Settlement.  Specifically, the court described the settlement as "collusive" as it was unfair to absent class members, *see id.* at *1, 4, because "those not receiving notice or opting in will nonetheless have their claims extinguished." *Id.* at *3.  Furthermore, there was a disparity between the settlement allocation among the class members, *see id.* at *6, as in the instant matter where it appears some class members will not be given any recovery through the settlement.

Other Courts have rejected settlements at the preliminary approval stage. *See Jaime v. Standard Parking Corporation*, Nos. CV 08-4407 AHM (RZx), CV 08-7004 AHM (RZx), CV 08-7278 AHM (RZx), 2010 WL 2757165 (C.D. Cal. July 12, 2010) (preliminary approval denied because class definition was "overly broad and imprecise" and the court had concerns about the fairness and clarity of the settlement."); *ARC v. Quasim*, No. C99-5577FDB, 2001 WL 1448523, at *3 (W.D. Wash. Oct. 26, 2001) (preliminary approval denied because parties "failed to carry

1  their burden of showing commonality."). Thus, preliminary approval is not automatic, and

2  requires a review of the proposed settlement.

3  **V.     THE PROPOSED CLASS NOTICE IS CONFUSING AND DEFECTIVE IT FAILS**
   **TO DISCLOSE THAT THE SETTLEMENT IS RELEASING NYGREN AND**
4  **PERRON WIRELESS CLAIMS FOR LITTLE OR NO VALUE**

5         The proposed class notice and settlement agreement are confusing and fail to establish the

6  commonality, typicality and adequacy requirements under Rule 23(a). The proposed class notice

7  specifically states that HP notebook computers which fail to detect the wireless adaptor are

8  covered by the settlement agreement.[5] However, this notice fails to properly inform consumers of

9  precisely which HP notebook computers are included within the proposed settlement and which

10 HP models, if any, are actually eligible for the replacement remedy. In addition, it fails to

11 disclose the conflict that Class Counsel have in attempting to release HP wireless claims, and fails

12 to disclose that those valuable claims are being litigated in *Perron* and *Nygren*.

13        According to the proposed release and class notice, all HP Pavilion models within the

14 dv6000 and dv9000 series, along with all Compaq Presario v6000 models, sold between May

15 2006 and October 31, 2008 are included in the definition of "Class Computers." NV Settlement

16 Agt., Docket No. 238-1, p. 4-6. This definition purports to incorporate all the Atlantis and Apollo

17 models that plaintiffs in the *Nygren* and *Perron* litigations own. However, since replacement

18 parts for HP models within the definition of "Class Computers" are no longer available, Nvidia is

19 required to offer replacement computers. *See* Proposed Nvidia Settlement, ¶*2.6.* Consumers are

20 then required to sort through Amendment No. 1 to the Settlement Agreement to determine

21 whether their notebook is eligible for replacement. The Amendment lists some, but not all of the

22 Pavilion dv6000, dv9000 and Compaq Presario v6000 models that the Settlement Agreement

23 identifies as "Class Computers." Significantly, none of the computer models that the plaintiffs in

24 *Nygren* and *Perron* own appear eligible for replacement, since their models are not identified in

25        [5] Significantly, the only "Class Computers" for which the "failure to detect the wireless
   adaptor" is an "Identified Symptom" for inclusion in the settlement are the HP models. This is a
26 red flag that the "failure to detect the wireless adaptor" has nothing in common with the failures
   occurring in the rest of the "Class Computers." None of the Apple or Dell models are reported as
27 having experienced the "failure to detect wireless" defect that is of "epidemic" proportions in the
   Atlantis and Apollo models.
28

1   the amendment.[6] *See Amendment No. 1, 2-3.*

2   **VI.   ALTHOUGH THE PLAINTIFFS IN *NYGREN* AND *PERRON*, ALONG WITH
        THE NEARLY TWO MILLION OTHER SIMILARLY SITUATED CONSUMERS,**
3       **ARE, ACCORDING TO THE SETTLEMENT AGREEMENT'S TERMS,
        REQUIRED TO RELEASE THEIR WIRELESS CLAIMS, IT APPEARS THAT**
4       **THEY WILL RECEIVE LITTLE OR NOTHING IN RETURN.**

5           The relief offered to HP Consumers in the NIVIDIA Settlement Agreement is worth far

6   less then Plaintiffs and Nvidia suggest.  Relief is proposed in the form of replacement computer

7   chips for some consumers and a "Reimbursement Fund" of $2 Million.  As to the replacement

8   chips, the Nvidia plaintiffs and the settling defendants offer no documentation to predict how

9   many class members will actually be able to take advantage of the settlement and receive

10  replacement chips.  For replacement chips to be valuable the consumer would have to (1) still

11  have their computer and receipts for a three or four-year-old purchase; and (2) have already

12  suffered one of a specified list of symptoms, *see* Proposed *Nvidia* Settlement Agreement ¶¶ 2.1,

13  2.6, 2.8(2) and Exhibit 3 at Docket 238-1).  In contrast, for example, the *Perron* case alleges that

14  HP fraudulently sold the computers with knowledge of the defect so that every class member is

15  entitled to a refund of the purchase price of the computer that reflected the wireless function.

16  Perron would protect HP consumers who, like Plaintiff Fromkin, sent her computer to HP three

17  times unsuccessfully for repair, then went out and purchased a replacement computer.  Plaintiffs

18  Shifflette and Nygren also purchased replacement computers after tiring of transporting external

19  wireless devices which they were forced to purchase and which are not being reimbursed in this

20  settlement.

21          To make a claim from the Reimbursement Fund a consumer must be able to show a

22  specified problem with his computer and prove that he had already paid for a repair from an

23  OEM.  The Reimbursement Fund does not provide money for those consumers who solved the

24  wireless problems with their computers by buying external wireless devices or other replacement

25  ─────────────────────

26          [6] For instance, Plaintiff Nygren owns an HP Pavilion DV6110US, model
    RG254UA#ABA.  This model appears on the chart at page 3, but his model number is not
    followed by the "R" suffix and, thus, is apparently not eligible for the replacement remedy.  The
27  notice is, at best, unclear.  Plaintiff Shifflette owns an HP Pavilion DV6140US, model
    RG274UA#ABA, which is apparently not on the list at all, and is apparently not eligible for the
28  replacement remedy.

1   parts, as did HP Consumer Objectors Nygren and Shifflette and thousands of other class

2   members. These consumers are not entitled to make claims from the Reimbursement Fund. <u>And

3   to make matters worse,</u> Nvidia will get a refund of the unused portion of the fund (Settlement ¶

4   2.9), so the "Reimbursement Remedy" may well be illusory if class members don't wade through

5   a lengthy notice and complete an onerous claim form requiring documentation of years-old

6   receipts.

7        Other relief is in the form of replacement computer chips, which will only be provided to

8   those class members who meet limited criteria and apply for them, or claims-made

9   reimbursement, so the settlement is a claims-made settlement. There are several reasons a

10  significant number of claims for replacement computer chips will likely not be made.

11       First, HP Consumer Objectors note that not every class member who purchased a laptop

12  computer with a defective Nvidia chip can make a claim. Instead, only those persons whose

13  computers have manifested a specific symptom are entitled to a replacement chip. Thus,

14  consumers who do not yet have one of the listed problems or can't figure out whether they do yet

15  are left with no relief, but the potential that their computers will cease functioning in the near

16  future.

17       Discovery in *Nygren* has shown that reasonable consumers and HP's own engineers

18  expect the wireless function to last 4-5 years. Class members will have only a sixty day period

19  after the entry of final approval to make a claim. Thus any class member whose computer

20  evidences a loss of wireless after that date will be left without any remedy at all. Additionally,

21  there is a substantial question as to how many class members are still using computers containing

22  defective chips. In addition to HP's having undertaken to replace defective chips in many

23  computers as a result of the *Nygren* lawsuit (over 100,000 by HP's own estimate) many of these

24  computers are several years old.

25       In the *Nygren* litigation plaintiffs submitted a damage calculation assuming a useful life of

26  a laptop computer of four to five years. HP objected to this calculation and provided an expert

27  report suggesting that the actual useful life of its laptop computers is no more than two years.

28  While the HP Consumer Objectors did not agree with HP's two years lifespan, the fact is that

1   every day class members are ceasing to use their defective computers. Under the proposed

2   settlement any class member who suffered a loss of wireless, but has abandoned his computer

3   because it was no longer functional, will be entitled to no relief, as a replacement chip for a

4   computer they have already abandoned is of no value. This raises the likelihood that there are a

5   substantial number of class members who purchased computers with defective Nvidia chips who

6   will be unable to participate in the settlement. Even though they cannot now participate these

7   class members will have their claims released by the settlement.

8          This Court must analyze the potential value of the settlement as part of its preliminary

9   approval decision. In *In re Zoran Corporation Derivative Litigation*, No. C 06-05503, 2008 WL

10  941897, at *10-11 (N.D. Cal. Apr. 7, 2008) the court denied preliminary approval because the

11  settlement was "far too modest" and "illusory" and "would confer so little value on the [plaintiff]

12  that it could only be approved upon by showing that the suit is virtually worthless."

13         Similarly, in *Acosta v. Trans Union*, 243 F.R.D. 377, 386, 388-391 (C.D. Cal. 2007) the

14  court denied preliminary approval of the proposed settlement because "over two-thirds of the

15  Settlement Class…will be completely ineligible for any economic relief under the Settlement"

16  and because the settlement "makes economic relief available to only a select group of class

17  members" *Id.* at 388. The court then observed that "the bulk of the economic relief

18  hypothetically available under the Settlement is merely illusory due to the strict eligibility

19  conditions." *Id.* at 391. The same analysis applies here, and the Court should not approve a

20  settlement which releases many valuable claims for very little, if any, real relief.

21         *Acosta* demonstrates one of the primary flaws of this Settlement, its claims-made aspect.

22  *Acosta* rejected preliminary approval because the claims-made procedure could "'allow

23  [Defendants] to resolve this matter for a small fraction of [their] total exposure.' Whether this

24  was the deliberate rationale of adopting the claims-made procedure or not it will undoubtedly be

25  its effect, serving to further dramatically limit the Settlement Class' potential cash recovery."

26  (243 F.R.D. at 391.) The court cited an earlier case which had noted that claims-made

27  settlements regularly yield response rates of 10 percent or less.

28

## VII. THE *NVIDIA* PLAINTIFFS BENEFITED FROM WORK OF THE HP CONSUMER OBJECTORS AND NOW ARE RELEASING THEIR CLAIMS WITHOUT FAIR COMPENSATION

As noted above, Nygren filed his initial complaint on November 14, 2007. After the Nygren suit was initially filed, HP determined to offer a "Limited Warranty Service Enhancement" program for certain, but not all, of the affected models. The warranty program offered repairs for notebook computers with wireless network and video failures and provided much of the relief sought in the Nygren complaint.



The initial complaints in the NVIDIA GPU Litigation were not filed until September 2008. These initial complaints include references to HP's "Limited Warranty Service Enhancement" and BIOS update programs that are the factual basis of the Nygren complaint. In fact, the *Inicom* complaint incorporates HP's statements despite the fact that the plaintiff there owned a Dell and not an HP notebook.



In their brief filed in support of preliminary approval, Class Counsel tout the fact that

1  NVIDIA was required to set aside over $300 million in reserves for repair of damages that the

2  defective GPU caused.  Counsel attempts to justify their fee on that basis as well.  *See* Doc. 238 at

3  7.  However, ███████████████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████████

5  ███████  More significantly, the reserve doesn't translate into consumer benefits anywhere near

6  that amount, as seen by a "Reimbursement Remedy" of only $2 million which will return to

7  Nvidia if less than $2 million in claims are made.  (Document 238-1 ¶ 2.9, pages 12-13 of

8  Settlement.)

9  **VIII.   THE SETTLEMENT IS UNFAIRLY COLLUSIVE.**

10        The release of HP wireless claims in the *NVIDIA GPU Litigation* does not appear to be

11  the product of an arm's length negotiation on behalf of HP Consumers.  Rather, the Proposed

12  Settlement sacrifices the *Nygren* and *Perron* plaintiffs' claims, claims that none of the settling

13  plaintiffs possess, in exchange for a wholly inadequate settlement.   Given the substantial

14  concerns raised herein, the Court should not presume the settlement negotiations have produced  a

15  fair settlement.

16        Although Class Counsel have repeatedly made on-the-record representations that the

17  *NVIDIA GPU Litigation* does not include claims for wireless failures, the parties have tacked on a

18  release of those claims exclusively for HP's benefit.  There is simply no reason to include

19  reference to wireless failures as an "Identified Symptom" in a case that does not involve wireless

20  failures.  Clearly, this provision is an attempt by HP to avoid its liability to consumers such as the

21  plaintiffs in *Nygren* and *Perron*.

22        The defects in the settlement are heightened by the fact that class counsel is representing

23  both people who experienced wireless problems and people who did not, and has released the

24  wireless claims for little or no consideration.   The United States Supreme Court has warned

25  against the problems inherent when, as here, counsel has conflicts.  *Ortiz v. Fibreboard*, 527 U.S.

26  815, 856 (1999) [class settlements must provide "structural assurance of fair and adequate

27  representation for the diverse groups and individuals affected"; an attorney who represents

28  another class against the same defendant may not serve as class counsel].  "Here, the proponents

1   of the settlement are trying to rewrite Rule 23; each ignores the fact that Rule 23 requires

2   protections under subdivisions (a) and (b) against inequity and potential inequity at the pre-

3   certification stage, quite independently of the required determination at post-certification fairness

4   review under subdivision (e) that any settlement is fair in the overriding sense." *Ortiz*, *supra*, 527

5   U.S. at 858. Here, as in Ortiz, "the class conflicts...tainted the negotiation of the global

6   settlement." (*Id.* at 859.)

7          HP is contributing nothing to the settlement. Nevertheless, the parties here have

8   permitted a definition of "Class Computer" that incorporates all of the models that the HP

9   Consumer Objectors own, thereby extinguishing their claims, and yet allowed so many conditions

10  and qualifiers that it appears that very few of them will actually receive anything.

11          There were approximately two million Atlantis and Apollo notebooks sold in the United

12  States. The *Nygren* and *Perron* claims relate solely to wireless failures occurring in these models.

13  ██████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ██████████████████████████████████████████ Class Counsel

16  here have offered the Court no information with regard to class size, or the number of computers

17  expected to be eligible for chip replacement. However, it appears that the number of HP

18  computers suffering from the wireless defects is far more significant than the number of HP

19  computers suffering from video-only failures. Therefore, it appears that the only motivation for

20  fashioning this provision is to permit HP to avoid liability to the HP Consumer Objectors, and

21  nearly two million other similarly situated consumers. The Settlement Agreement is unfairly

22  prejudicial to the HP Consumer Objectors and the Court should not approve it.

23          / / /

24          / / /

25          / / /

26          / / /

27          / / /

28          / / /

1   IX.    **CONCLUSION**

2           For all the reasons set forth above, this Court should refuse to accept the Settlement

3   Agreement entered into by the plaintiffs and *Nvidia* in this litigation, and should deny preliminary

4   approval of the proposed settlement.

5   Dated:  August 27, 2010                                    *Michael F. Ram*
                                                        MICHAEL F. RAM (SBN 104805)
6                                                       mram@ramolson.com
                                                        KARL OLSON (SBN 104760)
7                                                       kolson@ramolson.com
                                                        RAM & OLSON LLP
8                                                       555 Montgomery Street, Suite 820
                                                        San Francisco, California  94111
9                                                       Telephone:  (415) 433-4949
                                                        Facsimile:  (415) 433-7311
10
                                                        EDELSON & ASSOCIATES, LLC
11                                                      Marc H. Edelson
                                                        medelson@edelson-law.com
12                                                      45 W. Court Street
                                                        Doylestown, PA 18901
13                                                      Telephone: (215) 230-8043
                                                        Facsimile: (215) 230-8735
14
                                                        SPECTOR, ROSEMAN KODROFF &
15                                                         WILLIS, P.C.
                                                        Jeffrey L. Kodroff
16                                                      jkodroff@srkw-law.com
                                                        John A. Macoretta
17                                                      JMacoretta@srkw-law.com
                                                        1818 Market Street, Suite 2500
18                                                      Philadelphia, PA 19103
                                                        Telephone: (215) 496-0300
19                                                      Facsimile: (215) 496-6611

20                                                      Attorneys for HP Consumer Objectors

21
    N:\docs\1113-01\nvidia Objections e-filing\Objections to Preliminary approval of settlement REDACTED.DOC
22

23

24

25

26

27

28