MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
skim@milberg.com
NICOLE M. DUCKETT (SBN 198168)
nduckett@milberg.com
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

MILBERG LLP
PETER SAFIRSTEIN
psafirstein@milberg.com
JENNIFER S. CZEISLER
jczeisler@milberg.com
ROLAND RIGGS
rriggs@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Counsel for Plaintiff Todd Feinstein and Interim Lead Plaintiffs' Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE NVIDIA GPU LITIGATION | Case No. C 08-04312 JW |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES AND TIME AND EXPENSE REIMBURSEMENTS FOR PLAINTIFFS |
| ALL ACTIONS. | |
| | DATE: December 20, 2010 |
| | TIME: 9:00 a.m. |
| | CTRM: 8, 4th Floor |
| | JUDGE: Hon. James Ware |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.      INTRODUCTION .............................................................................................................1

II.     PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE FULLY APPROVED BY THE COURT.....................................................................................3

     A.     Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Reimbursement of Their Expenses ..........................................................3

     B.     The Requested Attorneys' Fees are Reasonable and Appropriate..........................5

          1.     The Fees Should Be Presumed Reasonable Under the Circumstances .................................................................................5

          2.     The Lodestar Approach...................................................................7

               a.     Plaintiffs' Counsel are Highly Qualified and Have Invested a Great Deal of Time and Effort Litigating This Case...................10

               b.     The Contingent Nature of the Representation ...............................11

               c.     The Results Achieved on Behalf of the Class Members Are Outstanding ................................................................................12

          3.     The Percentage-of-the-Benefit Method Also Confirms the Requested Award is Reasonable and Appropriate.....................13

     C.     Plaintiffs' Counsel's Request for Reimbursement of Their Expenses is Reasonable and Proper..........................................................................15

     D.     Awarding Attorneys' Fees and Expenses in Class Actions is an Important Means of Protecting the Rights of Consumers ......................................16

     E.     Plaintiffs' Counsel Requests Time and Expense Reimbursements for Certain Named Plaintiffs.........................................................................17

III.    CONCLUSION................................................................................................................19

PLTFS' MEMO OF P's & A's ISO MOT FOR ATTORNEYS' FEES AND EXPENSES AND TIME AND EXPENSE REIMBURSEMENTS TO PLAINTIFFS – Case No. C 08-04312 JW

DOCS\532861v6

- i -

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)........................................................................................................16

*Barel v. Bank of Am.*,
 255 F.R.D. 393 (E.D. Pa. 2009) .......................................................................................18

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)...........................................................................................................3

*Brotherton v. Cleveland, M.D.*,
 141 F. Supp. 2d 907 (S.D. Ohio 2001) ............................................................................18

*Cazares v. Saenz*,
 208 Cal. App. 3d 279 (1975) ..........................................................................................4, 9

*Cicero v. DirecTV, Inc.*,
 No. 07-1182, 2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010).............................18

*City of Detroit v. Grinnell Corp.*
 495 F.2d 448 (2d Cir. 1974)............................................................................................11

*Cook v. Niedert*,
 142 F.3d 1004 (7th Cir. 1998) ........................................................................................17

*Deposit Guar. Nat'l Bank v. Roper*,
 445 U.S. 326 (1980)........................................................................................................11

*Fears v. Wilhelmina Model Agency, Inc.*,
 2005 U.S. Dist. LEXIS 7961 (S.D.N.Y. 2005).................................................................18

*Fischel v. Equitable Life Assurance Soc'y*,
 307 F.3d 997 (9th Cir. 2002) ............................................................................................9

*Glendora Comty. Redevelopment Agency v. Demeter*,
 155 Cal. App. 3d 465 (1984) ..........................................................................................12

*Graciano v. Robinson Ford Sales, Inc.*,
 144 Cal. App. 4th 140 (2006) ............................................................................................9

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................................................................13

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)...........................................................................................................3

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...............................................................13

*In re Businessland Sec. Litig.*,
   No. 90-20476, 1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 14, 1991)................................15

*In re Cendant Corp.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) ...................................................................17

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..........................................................................5

*In re GNC S'holder Litig.*,
   668 F. Supp. 450 (W.D. Pa. 1987).....................................................................15

*In re LDK Solar Sec. Litig.*,
   No. 07-5182, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. July 29, 2010)..............................17

*In re M.D.C. Holdings Sec. Litig.*
   No. 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ..............................4

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 844 (N.D. Cal. 2005) ...............................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..........................................................................18

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..............................15

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..........................................................................4

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ..................................................................................9

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000) .......................................................................5, 6, 7, 13

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) .......................................................................11

*Linder v. Thrifty Oil Co.*,
   23 Cal. 4th 429 (2000) ...................................................................................16

*McKittrick v. Gardner*,
   378 F.2d 872 (4th Cir. 1967) .........................................................................11

*Melendres v. L.A.*,
   45 Cal. App. 3d 267 (1975) .............................................................................4

PLTFS' MEMO OF P's & A's ISO MOT FOR ATTORNEYS' FEES AND EXPENSES AND
TIME AND EXPENSE REIMBURSEMENTS TO PLAINTIFFS – Case No. C 08-04312 JW

- iii -

DOCS\532861v6

*Meshel v. Nutri/System, Inc.*,
  102 F.R.D. 135 (E.D. Pa. 1984)............................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .........................................................13, 14

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ......................................................................3, 7

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..............................................................14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..............................................................13

*Sternwest Corp. v. Ash*,
  183 Cal. App. 3d 74 (1986) ...............................................................13

*Van Vraken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................17

*Vasquez v. Super. Ct.*,
  4 Cal. 3d 800 (1971) .....................................................................16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................9

*Wershba v. Apple Computers, Inc.*,
  91 Cal. App. 4th 224 (2001) ........................................................ *passim*

**STATUTES**

California Civ. Proc. § 1021 ...............................................................4

**OTHER AUTHORITIES**

Alba Conte, *Attorney Fee Awards* § 2.08 (3d ed. 2004)......................................15

*4 Newberg on Class Actions*, § 11:29 (4th ed. 2010)........................................6

USA Today ..............................................................................6

PLTFS' MEMO OF P's & A's ISO MOT FOR ATTORNEYS' FEES AND EXPENSES AND
TIME AND EXPENSE REIMBURSEMENTS TO PLAINTIFFS – Case No. C 08-04312 JW
DOCS\532861v6

- iv -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs submit this Memorandum in Support of Their Motion for Attorneys' Fees and Expenses and Time and Expense Reimbursements to Plaintiffs. This application is filed in conjunction with Plaintiffs' Memorandum in Support of Their Motion for Final Approval of Settlement ("Final Approval Brief"). By this Motion, Plaintiffs' Counsel, apply to this Court for:

1. An award of attorneys' fees and expenses in the total amount of $13,000,000.

2. Approval of time and expense reimbursements to be deducted from the fee and expense award, for certain of the named Plaintiffs in the aggregate amount of $32,947.50, which is within the amount of "not to exceed" / "up to" $50,000 stated in the Notice to the Class.

As more fully discussed in the Final Approval Brief and the Declaration of Jeff S. Westerman in Support of (1) Motion for Final Approval of Settlement and (2) Motion for Attorneys' Fees and Expenses and Time and Expense Reimbursement for Plaintiffs ("Westerman Decl."), many months of hard-fought, arm's-length negotiations between the Parties, with substantial assistance of Honorable Layn R. Phillips (Ret.), a former federal judge and respected mediator with significant experience in mediating large, complex class actions like this, resulted in the Stipulation and Agreement of Settlement and Release dated August 12, 2010 ("Settlement Agreement") (Docket No. 238, Ex. A). On September 15, 2010, the Court granted Preliminary Approval of the Settlement, and approved the proposed notice program. *See* Court's Order dated September 15, 2010 (Docket No. 250).

With oversight from Judge Phillips and after the parties reached agreement on the non-fee aspects of the Settlement, the Parties began negotiations over the fee-related aspects of the Settlement. Consistent with the terms of the parties' Settlement Agreement, Plaintiffs' Counsel are requesting the Court approve payment in the amount of $13 million for both fees and reimbursement of expenses incurred during the course of this litigation. In addition to the settlement consideration ***plus*** the costs of class notice and cost of settlement administration, NVIDIA agreed to separately pay the requested attorneys' fees and expenses. The Settlement

also provides that Plaintiffs' Counsel may apply to the Court for time and expense reimbursements for certain of the named Plaintiffs, not to exceed $50,000 in the aggregate, in connection with their roles in overseeing the litigation, responding to discovery requests, and traveling to depositions, among other things. The requested fee amount would result in a 1.24 multiplier based on the approximately $10.1 million in lodestar time over the past two years. Based on the significant complexity, hard-fought nature of the litigation, and the scope of the defect at issue, such a low multiplier is more than reasonable to compensate Plaintiffs' Counsel for such an exceptional result for the Settlement Class. Further, the requested fee is far less than 25% of the repair and replacement value achieved for the Settlement Class. This is well within the standard range of percentage fees approved by federal courts in this Circuit and nationwide.

All of Plaintiffs' Counsel's time and expense was contingent and has not been reimbursed, even though this case has been pending for over two years and counsel expended over $400,000 in litigation expenses for the benefit of the class. As detailed below, the fee and expense amount requested is reasonable, whether based on a percentage of recovery or lodestar multiplier approach. NVIDIA agreed to pay this amount. This is an important factor for the Court to consider, as it shows the market forces at work in terms of setting a reasonable fee that NVIDIA agreed to pay upon Court approval.

The parties negotiated the payment of attorneys' fees and costs, and time and expense reimbursements to certain named Plaintiffs, only after reaching agreement on all other material terms of the Settlement Agreement.

NVIDIA's agreement to pay attorneys' fees and costs in no way reduces any of the many benefits secured for the proposed Settlement Class.

Further, notice of this motion for fees and reimbursement for costs has been provided to proposed Settlement Class members. To date, only one objection to the fee and expense application has been received, and that objection does not indicate anything other than a generic aversion to attorneys getting paid in all cases generally.

1    By this motion, Plaintiffs' Counsel respectfully request that the Court award attorneys'

2    fees and reimbursement of costs and payment of time and expense reimbursements to certain

3    named Plaintiffs pursuant to the terms of the Settlement.  The requested fees and expenses are

4    fair and reasonable, and this motion merits the Court's approval.

5

6    **II.    PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE FULLY
        APPROVED BY THE COURT**

7        **A.    Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and
             Reimbursement of Their Expenses**

8

9        The Settlement Agreement provides for the payment of attorneys' fees and expenses by

10   NVIDIA in the amount of $13,000,000.  Having reached a Class Settlement with NVIDIA, it is

11   well established that Plaintiffs' Counsel are entitled to seek fees and expenses from NVIDIA.

12   Courts have long recognized the "common fund" or "common benefit" doctrine, under which

13   attorneys who create a common fund or benefit for a group of persons may be awarded their fees

14   and costs based on the common benefit achieved.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472,

15   478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other

16   than himself or his client is entitled to reasonable attorney's fees from the fund as a whole."); *see*

17   *also Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (holding that the common fund doctrine permits

18   a litigant who maintains a suit that results in the creation of a fund in which others share a

19   common interest to be reimbursed for their attorneys' fees and expenses from that fund).

20       In this case, the fees and costs requested by Plaintiffs' Counsel will not take away from

21   any relief to the Class.  Instead, the parties negotiated and agreed to a reasonable fee award

22   separate and apart from the benefits conferred upon the Class Members.

23       In fact, the parties' agreement on fees in this action is what the United States Supreme

24   Court has described as the ideal towards which litigants should strive.  In *Hensley v. Eckerhart*,

25   461 U.S. 424, 437 (1983), the Supreme Court stated that, "[a] request for attorney's fees should

26   not result in a second major litigation.  Ideally, of course, litigants will settle the amount of [the]

27   fee[s]."  *Id.*  Fee arrangements between plaintiffs and defendants in class actions are to be

28

1   encouraged, particularly where, as here, the attorneys' fees to be requested are negotiated

2   separately after the settlement terms of the class claims has been agreed to by the parties and are

3   to be paid on top of the class consideration. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714,

4   720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their

5   best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to

6   attorneys' fees.").   California courts likewise defer to fee agreements between parties if the

7   agreement is otherwise valid.  *See, e.g., Cazares v. Saenz*, 208 Cal. App. 3d 279, 287 (1975);

8   *Melendres v. L.A.*, 45 Cal. App. 3d 267, 282-83 (1975).  California Code of Civil Procedure

9   § 1021 essentially codifies the principle that courts should generally respect attorneys' fee

10  agreements made by and between the parties.   "Except as attorneys' fees are specifically

11  provided for by statute, the measure and mode of compensation of attorneys and counselors at

12  law is left to the agreement, express or implied, of the parties . . . ."  *Id.*

13      Where the dollar value of the benefits can be difficult to quantify, an agreement on fees

14  and expenses is particularly appropriate and helpful to the Court.   In *In re M.D.C. Holdings*

15  *Securities Litigation*, the court approved an attorneys' fee award in derivative shareholder suit in

16  amount agreed upon by the parties:

> Plaintiffs' counsel are not, on the derivative settlement here, seeking an award of fees out of the recovery -- what is commonly called a "common fund" situation. Also, they are not seeking an award of fees against a defendant or the corporate beneficiary over its opposition.  Derivative counsel have sought approval of an overall derivative settlement *which includes* as a part of the negotiated settlement an agreed-upon fee payable by MDC from funds obtained by it from the insurance carrier for its officers and directors in recognition of the cash recovery and other substantial benefits which have been conferred upon MDC by reason of that settlement.  MDC was separately represented by independent and very competent counsel throughout this case, including the negotiations which culminated in the settlement.   This Court has already indicated settlement of the derivative settlement.
>
> *   *   *
>
> The Supreme Court has stated that consensual resolution of attorneys' fee issues is the ideal toward which litigants should strive.

26  *In re M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 U.S. Dist. LEXIS 15488, at *11-12 (S.D.

27  Cal. Aug. 30, 1990) (emphasis in original).

28

Here, the parties followed these principles by agreeing on an amount of fees and expenses that NVIDIA would pay, subject to Court approval. Moreover, the payment of attorneys' fees and expenses will not reduce or compromise the benefits to the proposed Settlement Class in any way. In fact, should this court not award the full fee request to Plaintiffs' Counsel, no benefit would flow to the Settlement Class; NVIDIA would simply keep the money.

**B.    The Requested Attorneys' Fees are Reasonable and Appropriate**

**1.    The Fees Should Be Presumed Reasonable Under the Circumstances**

The fact that NVIDIA, after extensive arm's-length negotiation with the assistance of highly-competent counsel and a mediator, agreed to this fee and expense amount is an important factor for the Court to consider in reviewing the fee and expense request. Because the substantive terms of the Settlement had been reached before these amounts were agreed to, the fee provision was negotiated in such a manner as to avoid any potential conflict with the Settlement Class, or any argument that such amounts were "traded off" for lesser class consideration. Westerman Decl., ¶ 38.

As Judge Posner observed in *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), the virtue in the negotiation of the amount of fees by the adversarial parties to a settlement (the defendants who want to minimize the payment to be made versus the lawyers who wish to receive it) is that the "markets know market value better than judges do." *Id.* at 570. Here, the agreement as to the amount of the fees to be requested was negotiated under market conditions: Plaintiffs' Counsel wished to maximize fees to compensate them, as the law encourages, for risk, innovation, and preclusion of other work, while NVIDIA wished to pay the minimum amount it could, as any monies not approved would be retained by the company. The result is an arm's-length negotiated amount set by market forces, and resolved only after the other settlement terms had been agreed to in principle.

A presumption of reasonableness applies where the agreement is reached through arm's-length bargaining, counsel is experienced in similar litigation, and the percentage of objectors is

small.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 47 (2000).  A leading treatise on class actions expounds upon this precept:

> [W]hen the defendants agree to settle with the class for a certain sum and, in addition, to pay class counsel's attorneys' fees in a sum to be determined by the court up to a specified limit to which the defendants will not object, the court may conditionally approve that arrangement subject to any objections raised by class members at the settlement hearing.  Generally, an evidentiary hearing for fee determination is obviated in a common fund case if no class members object to the level of fees requested and class counsel furnishes sufficient underlying factual data to permit the court to make a reasonable fee award.

4 *Newberg on Class Actions* § 11:29 (4th ed. 2010).

Plaintiffs' Counsel negotiated an award of attorneys' fees and expenses to be paid by NVIDIA in addition to the Class benefits.  Opposing counsel bargained at arm's-length before arriving at a mutually acceptable fee.  As recognized in *Lealao*, defendants are good indicators of the value of plaintiffs' counsel's services.  *Lealao*, 82 Cal. App. 4th at 37 ("[T]he defendant usually has a fairly good idea of the range of fees that will be sought and the approximate amount likely to be awarded.").

Further, when approving a class action settlement and awarding attorneys' fees and reimbursing expenses, courts consider the number of objectors in relationship to the notice that was provided.  *Wershba*, 91 Cal. App. 4th at 245.  Here, not only have approximately 5,123,594 potential Settlement Class members been sent individual notice in the U.S. mail and via e-mail, notice also was published in USA Today and on the Internet.  Web notices were posted on the websites PCWorld.com, MacWorld.com, and PCMag.com.  *See* Declaration of Katie Horton Re: Notice Procedures, ¶¶ 8, 16-18.  To date, only one objection to Plaintiffs' Counsel's motion for attorneys' fees and expenses has been filed.[1]  Westerman Decl., ¶ 74.  Accordingly, the attorneys' fees and costs requested by Plaintiffs' Counsel should be presumed reasonable.

---

[1] That objection, is predicated on the faulty premise that NVIDIA's payment of attorneys' fees will ultimately drive up the cost of its products.  The fee was negotiated with NVIDIA, the party actually responsible for paying it.  It is unlikely that NVIDIA would have consented to a number so damaging to it that will materially impact the cost of NVIDIA's goods.  Indeed, as discussed,

1

2.      **The Lodestar Approach**

2      Analyzing Plaintiffs' requested fee award under the "lodestar" method confirms that the

3  request is reasonable and appropriate.  The fee and expense payment to be approved by the Court

4  is reasonable when cross-checked using a lodestar/multiplier calculation, which results in a

5  multiplier of less than two of the total lodestar incurred by Plaintiffs' Counsel.  *Lealao*, 82 Cal.

6  App. 4th at 51 (fees are appropriate if they are reasonable as cross-checked under both

7  percentage of recovery and lodestar methods).  As this payment is requested under California

8  consumer protection statutes, such as the CLRA, the Song Beverly Act and the UCL, as well as

9  under the Magnuson-Moss Warranty Act, it is appropriate to consider California state law fee

10  jurisprudence in determining the reasonableness of the requested fee award.  Declarations to

11  support a fee application detailing the work performed and the reasonable hourly rate for such

12  services provide ample evidentiary support for the requested amount.  *Wershba*, 91 Cal. App. 4th

13  at 255.

14      Using the lodestar method, attorneys' fees are calculated by multiplying the number of

15  hours worked on the case by the hourly rate of each timekeeper.  This provides the base

16  "lodestar" amount, which is then enhanced by a multiplier to account for a variety of factors

17  including, but not limited to: (1) the quality of the representation; (2) the contingent nature of the

18  matter, both from the point of view of eventual success on the merits and from the point of view

19  of securing a fee award; (3) the extent to which the litigation precluded other employment by the

20  attorneys; (4) the amount involved and the results obtained on behalf of the class by plaintiffs'

21  counsel; and (5) the continuing obligation of plaintiffs' counsel to devote time and effort to the

22  litigation.  *Serrano*, 20 Cal. 3d at 49.

23      Plaintiffs' Counsel incurred $10,140,559.25 in hourly fees (and expect additional time

24  and expense through the final approval process and continued monitoring of the settlement

25  administration) and $405,248.71 in unreimbursed costs.  The chart set forth below shows: (1)

26

27  the fee is miniscule in comparison to the reserves NVIDIA actually took.  This objection reflects
nothing more than a generic dislike for lawyers, and should be disregarded.

28

1  each firm's base lodestar fee; (2) the number of hours expended by each firm; and (3) the costs

2  incurred by each firm throughout the course of this litigation.

3

|  | | HOURS | COSTS |
|---|---|---|---|
| Milberg LLP | $2,911,423.25 | 6,270.75 | $134,252.16 |
| Seeger Weiss | $7,096.00 | 12.80 | $4,624.55 |
| Doyle Lowther LLP | $2,249,287.50 | 4,049.75 | $11,364.45 |
| Zeldes & Haeggquist, LLP | $78,336.25 | 147.75 | $1,602.27 |
| Whatley Drake & Kallas, LLC | $128,957.50 | 265.90 | $5,125.66 |
| Gergosian & Gralewski LLP | $56,230.00 | 135.75 | $20.36 |
| The Baskin Law Firm | $13,500.00 | 22.50 | $491.00 |
| Horwitz Horwitz & Paradis | $3,797,046.25 | 7,478.50 | $222,589.01 |
| Kiesel Boucher & Larson | $68,827.50 | 86.70 | $6,547.16 |
| Consumer Law Group of California | $143,936.00 | 278.00 | $339.00 |
| Law Offices of Nicholas Koluncich III, LLC | $78,525.00 | 209.40 | $1,921.34 |
| Law Offices of James V. Bashian, P.C. | $14,101.50 | 23.70 | $0.00 |
| Wick Phillips, LLP | $4,080.00 | 9.60 | $0.00 |
| Shalov Stone Bonner & Rocco LLP | $558,762.50 | 1,310.00 | $15,106.25 |
| Sarraf Gentile LLP | $11,287.50 | 22.50 | $0.00 |
| Rothken Law Firm | $19,162.50 | 36.50 | $1,265.50 |
| **Total** | **$10,140,559.25** | **20,360.10** | **$405,248.71** |

19      The fees and costs set forth in the chart above are supported by the declarations of

20  Plaintiffs' Counsel submitted in support of this Motion.  *See* Compendium of Declarations in

21  Support of Motion for Attorneys' Fees and Expenses and Time and Expense Reimbursement for

22  Plaintiffs ("Compendium of Declarations"), Exs. A; C-I; K-N; Q-T.  The declarations identify

23  the attorneys who worked on the case and their hourly rates.  The declarations also itemize the

24  costs each firm incurred.  In determining the lodestar, courts can rely upon declarations

25  submitted by plaintiffs' attorneys "evidencing the reasonable hourly rate for their services and

26  establishing the number of hours spent working on the case."  *Wershba, supra,* 91 Cal. App. 4th

27

28

at 254-55. Here, Plaintiffs' Counsel has submitted such declarations, stating the number of hours spent working on this case and setting forth their standard hourly rates.

This lodestar is reasonable considering the substantial work performed during the course of litigation, using counsel's standard hourly rates that have been approved by courts over the last several years. *See* Westerman Decl. ¶ 71; *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155-56 (2006) (abuse of discretion not to use firm's standard full hourly rates in calculating lodestar, as rates were comparable to those charged by other counsel litigating consumer fraud issues); *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) (appropriate for court to consider litigation risk of non-payment in setting multiplier where counsel expected to receive additional compensation for such risk).

Plaintiffs' Counsel request a combined award of $13,000,000 in attorneys' fees and costs. Of that amount, $405,248.71 represents Plaintiffs' Counsel's unreimbursed costs.  Deducting these costs from the total requested award reveals that Plaintiffs' Counsel seeks $12,594,751.29 in attorneys' fees.  Based upon the attorneys' fees requested ($12,594,751.29), the multiplier Plaintiffs' Counsel is seeking using the lodestar method is approximately 1.24 (*i.e.*, requested attorneys' fees $12,594,751.29 divided by Plaintiffs' Counsel's aggregate lodestar amount $10,140,559.25 equals approximately 1.24).  Consideration of the recognized factors used to formulate a multiplier warrants a 1.24 multiplier in this case.

The low multiplier requested by Plaintiffs' Counsel shows this fee request is reasonable. In fact, considering the size of this Settlement, based on factors such as delay, result, and risk of non-payment, this request is presumptively reasonable.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (identifying federal survey of multipliers that show multipliers used by courts range between 1.0 and 4.0, and most range between 1.5 and 3.0); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1128 (2001) (referencing survey of multipliers recognizing range of between 2.0 and 4.0 are average under California law); *Wershba*, 91 Cal. App. 4th at 255 (approving separately negotiated fee provision and noting that multipliers in range of 2 to 4, and even higher, are typical in class litigation); *Cazares*, 208 Cal. App. 3d at 288 (finding under California

law trial court can appropriately approve a multiplier of 2.0 or more based on consideration of risk and delay factors alone).

a.   **Plaintiffs' Counsel are Highly Qualified and Have Invested a Great Deal of Time and Effort Litigating This Case**

The abilities of Plaintiffs' Counsel were essential to the success of this litigation.  As evidenced in the accompanying declarations, Plaintiffs' Counsel have substantial experience in consumer class action litigation.  Counsel's skills in developing evidence, technical expertise, working with experts, and understanding the strengths and weaknesses of their respective cases were critical to the results achieved for the Settlement Class.  Plaintiffs' Counsel developed a significant level of familiarity with the legal and factual issues sufficient to make a thorough appraisal of the adequacy of the settlement and provide meaningful relief to the Settlement Class.

Further, Plaintiffs' Counsel invested substantial time and resources in the case. Plaintiffs' Counsel spent more than 20,000 hours prosecuting this litigation and bringing the matter to a successful resolution.  The result of this combination of skill and hard work directly benefitted the Settlement Class.   For example, Plaintiffs' Counsel successfully opposed NVIDIA's motion to strike class allegations.  Westerman Decl. ¶ 18.  In addition, several causes of action in Plaintiffs' Amended Consolidated Complaint were upheld against the first motion to dismiss.  *Id.*  Plaintiffs also amended claims under the Song-Beverly Act and Magnuson-Moss Warranty Act and defended them against a subsequent motion to dismiss -- a ruling on which was pending at the time of settlement.  *Id.*  Plaintiffs' Counsel also fully briefed, and argued, a class certification motion -- a ruling on which was also pending at the time of settlement.  *Id.* ¶¶ 24-27.   In addition, Plaintiffs' Counsel diligently served discovery on Defendants and key non-parties, and filed appropriate discovery motions to secure relevant documents, and reviewed over 200,000 documents.  *Id.* ¶¶ 28-33.  Plaintiffs' Counsel's in-house investigators and forensic accountants also expended considerable time interviewing witnesses and analyzing NVIDIA's financial disclosures relating to the claims.  *Id.* ¶ 34.

1    The extensive work put into this case and thorough understanding of the issues involved

2    in the action, both legal and factual, enabled Plaintiffs' Counsel to obtain an extremely favorable

3    result for the Settlement Class.

4                **b.      The Contingent Nature of the Representation**

5    Prosecution of this action has involved significant financial risk for Plaintiffs' Counsel,

6    who took this matter on a contingent basis, with no guarantee of recovery.  Once counsel

7    undertook this litigation on behalf of the Settlement Class, they committed significant time and

8    resources to pursue it to its conclusion.

9    The commencement and prosecution of class action litigation is an inherently high-risk

10   proposition due to: (1) the contingent nature of class counsel's representation; and (2) the great

11   barriers to achieving success on the merits posed by procedural issues unique to class action

12   litigation.  As a result, courts have recognized that the contingent nature of the attorneys' fee is

13   an important factor to be considered in determining the appropriateness of a requested fee.  *See*

14   *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 470 (2d Cir. 1974).

15   Class action litigation is intended to encourage the filing of claims to "vindicate[e] the

16   rights of individuals who otherwise might not consider it worth the candle to embark on

17   litigation in which the optimum result might be more than consumed by the cost."  *Deposit Guar.*

18   *Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).  Contingent-type fee arrangements play a vital

19   role by giving a financial incentive to skilled attorneys to serve as class counsel.  *Id.* at 338 n.9.

20   Plaintiffs respectfully submit that the requested fee of $12,594,751.29 -- exclusive of the

21   reimbursement of expenses -- is entirely reasonable and consistent with the fees typically

22   awarded in such cases.

23   Courts have long recognized that class action litigation "is notably difficult and

24   notoriously uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  Despite the

25   most vigorous and competent efforts of class counsel, success on the merits is never guaranteed.

26   When success is achieved, a substantial award is warranted.   As the court recognized in

27   *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967):

28

1
2
3

The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take into account the lawyer's risk of receiving nothing for his services.  Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*See also Meshel v. Nutri/System, Inc.*, 102 F.R.D. 135, 140 (E.D. Pa. 1984) ("The contingent nature of the fee must be taken into consideration by us in fixing the final fee.")

Plaintiffs' Counsel risked a great deal of time and money, foregoing other work, to represent Plaintiffs in this litigation, with no guarantee of success.  All of the hours expended on this case was time Plaintiffs' Counsel was unable to devote to other work.

          c.      **The Results Achieved on Behalf of the Class Members Are Outstanding**

The proposed class action settlement provides an outstanding recovery for the Class.  As detailed in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement, this Settlement provides for replacements of NVIDIA GPUs in certain Dell or Apple notebooks, replacement of certain HP notebooks, and a fund for cash reimbursements for amounts paid on repairs related to NVIDIA GPUs or MCPs.  The benefits to the proposed Settlement Class and extent of recovery afforded each Settlement Class member, given the complained of allegations, is exceptional.

This exceptional Settlement is the result of dedication and hard work by Plaintiffs' Counsel.  NVIDIA acknowledged and agreed that the filing, pendency and prosecution of the Litigation, including the demands made in connection therewith, provided valuable consideration to the Settlement Class by being a causative factor in NVIDIA taking certain actions after Plaintiffs filed the Litigation.  Such actions included: (1) assisting certain Original Equipment Manufacturers ("OEMs") in extending or enhancing warranties for the Class Computers; (2) assisting certain OEMs to repair Class Computers at no cost to consumers; and (3) causing NVIDIA to enter into the Settlement Agreement.  Thus, NVIDIA also agreed to continue to assist OEMs with their ongoing GPU, MCP, or motherboard replacement for Class Computers in accordance with the OEMs' usual and customary repair processes and procedures during the pendency of Final Approval and Final Judgment.  Westerman Decl. ¶ 45.

Based on the foregoing factors, a 1.24 multiplier is appropriate and supportable under California case authorities.  *See*, *e.g.*, *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984) (affirming a 12 multiplier of counsel's hourly rate and rejecting the argument that the requested fee was exorbitant); *Wershba*, 91 Cal. App. 4th at 255 ("Multipliers can range from 2 to 4 or even higher"); *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (remanding for a lodestar enhancement of "two, three, four or otherwise.").

### 3.    The Percentage-of-the-Benefit Method Also Confirms the Requested Award is Reasonable and Appropriate

The Percentage-of-the-Benefit method further supports the reasonableness of the negotiated fee award.  The Percentage-of-the-Benefit method allows the Court to determine the plaintiffs' attorneys' fee based upon a percentage of the total recovery.  Under this method of calculating attorney's fees, the court simply awards counsel a percentage of the value of the common fund.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

According to the Ninth Circuit, the "benchmark" award is 25% of the recovery obtained, with 20% to 30% as the customary range.  *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  California state courts have also considered this 25% as a benchmark.  *Lealao*, 82 Cal. App. 4th at 24.[2]

There are several indicators of value for this Settlement.  Pursuant to any one of them, Plaintiffs' Counsel's requested fee award is far below the "benchmark" 25%.  First, as the Court noted at the hearing on preliminary approval, the reserves taken by NVIDIA are one indicator: "But you're valuing this board replacement and these computer replacements as somewhat in line with the reserve, in terms of the economic benefits to the class."  (H'rg Tr. 25:5-7, Aug. 30, 2010.)  NVIDIA's July 2, 2008 Form 8-K filed with the SEC revealed NVIDIA used weak die/packaging material in certain versions of its GPUs, leading to an initial charge of approximately $196 million against revenue to cover anticipated customer warranty, repair,

---

[2]  Fee awards of 30% or more are not uncommon.  *See*, *e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (finding that in most cases, benchmark is 30%).

return, replacement and other consequential costs and expenses. Westerman Decl. ¶ 72. NVIDIA subsequently increased the amount of its financial reserve to $315 million. *Id*. On the day this settlement was signed, August 12, 2010, NVIDIA subsequently announced a further charge of $193.9 million specifically for "additional remediation costs, as well as the estimated costs of a pending settlement of a class action lawsuit . . . related to this same matter [the weak die/packaging material set]." *Id*. As discussed above, NVIDIA acknowledged Plaintiffs' case was a "causative factor" in NVIDIA's decision to provide assistance to certain OEMs in their efforts to extend warranties or repair Class Computers, which are included as part of the reserved remediation and settlement costs. Settlement Agreement ¶ 2.14. Thus, in total, NVIDIA took $508.9 million in reserves for this problem. Even a fraction of that $508.9 million dwarfs the $13 million fees and expenses requested here. Indeed, if the Court were to consider any one of the three reserves taken by NVIDIA, the requested fees and expenses fall well below 25%. Accordingly, when looking to the reserves, the requested fee is significantly less than the 25-30% benchmark amount for common fund fee awards approved in other Ninth Circuit decisions. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt*, 886 F.2d 268.

Another indicator of value is the amount of money consumers would pay to receive these repairs (without ever considering the value of the HP replacement computers component of this settlement) were it not for the Settlement. Plaintiffs' Counsel received reports from consumers quoted and/or charged repair prices from $300 to $550 to fix the defective NVIDIA chip problem in their computer. Westerman Decl., Exhibits A-C. Indeed, Plaintiff Todd Feinstein himself paid $300 for the repair of his Apple computer. While Plaintiffs' Counsel has no way of knowing how many computers will exhibit qualifying symptoms, no one disputes that the potential number of repairs or replacements is in the millions. Notice was sent to 5,123,594 people, any of whom can potentially submit qualifying claims.[3] Horton Decl. ¶ 8. If even a

---

[3] Plaintiffs' Counsel is informed that some individuals who own Dell computers received direct notice that should not have because their computers do not contain NVIDIA chips. Plaintiffs'

1   fraction of these claimants receives a repair or replacement computer at a value of $300 or more,

2   the value of the settlement is astronomical in comparison to the requested $12,594,751.29 fee.

3   Importantly, the settlement covers *all* affected Class Members with adequate supporting

4   documentation, each of whom can have their Class Computers repaired or replaced, free of

5   charge.  Further, as this Court ordered, the Court will oversee the claims process by requiring a

6   report from the administrator explaining all denials of claims.  (Docket 250).

7         The requested $12,594,751.29 attorneys' fee award is well below 25% of any one of the

8   three reserves taken by NVIDIA, to say nothing of their cumulative $508.9 million.  It is also

9   well below 25% of the total cost to have the Class Computers repaired or replaced were it not for

10  the Settlement.  The benefits to Class Members here are concrete and undeniable -- anyone who

11  has a Class Computer can have it repaired or replaced, for free, and has recourse to this Court if

12  their claim is denied.  The Percentage-of-the-Benefit method further confirms that the fee award

13  requested by Plaintiffs' Counsel is reasonable and appropriate.

14        **C.    Plaintiffs' Counsel's Request for Reimbursement of Their Expenses is**
           **Reasonable and Proper**
15

16        As set forth in the declarations of counsel submitted herewith to the Court, Plaintiffs'

17  Counsel have incurred a total of $405,248.71 in unreimbursed expenses prosecuting this case on

18  behalf of the Plaintiffs.  As one commentator noted, "the prevailing view is that expenses are

19  awarded in addition to the fee percentage."  Alba Conte, *Attorney Fee Awards* § 2.08 at 107-113

20  (3d ed. 2004).  Courts routinely reimburse plaintiffs' counsel for the costs incurred in presenting

21  cases on a contingent basis.  *See In re Businessland Sec. Litig.*, No. 90-20476, 1991 U.S. Dist.

22  LEXIS 8962, at *6-7 (N.D. Cal. June 14, 1991) (and cases cited therein); *In re Warner*

23  *Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re*

24  *GNC S'holder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987).

25

26  _____

27  Counsel does not believe this number of people is large enough to materially impact an
    assessment of the value of the benefit conferred.

28

---

1   Over the past two years of litigation against a well financed defendant represented by

2   outstanding defense counsel, Plaintiffs' Counsel have incurred substantial costs consulting with

3   computer/chip related experts.  In particular, Plaintiffs' Counsel submitted detailed declarations

4   in support of class certification.  Plaintiffs' Counsel consulted with an expert specializing in chip

5   set materials NVIDIA used to construct the chips at issue in this litigation.  Plaintiffs' Counsel

6   also incurred significant expenses conducting witness investigations, dealing with discovery

7   documents and court filings, making photocopies, and traveling to attend hearings and

8   depositions.  In light of the expenses Plaintiffs' Counsel incurred to bring this case to its current

9   settlement posture, Plaintiffs' Counsel's request for reimbursement of costs is reasonable and

10  should be approved.

### D.   Awarding Attorneys' Fees and Expenses in Class Actions is an Important Means of Protecting the Rights of Consumers

Both the United States Supreme Court and the California Supreme Court have long recognized the need for class actions in consumer cases where recoveries are too small to warrant individual prosecution.

The reality is that appropriate awards of attorneys' fees are absolutely necessary in order to ensure that consumer rights are protected and vindicated.  As the United States Supreme Court explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Over a quarter of a century ago, the California Supreme Court explained:

> Modern society seems increasingly to expose men to . . . group injuries for which individually they are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive.  If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all.  This result is not only unfortunate in the particular case, but it will operate seriously to impair the deterrent effect of the sanctions which underlie much contemporary law.

1    *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 807 (1971) (quoting Kalven & Rosenfield, *Function of*

2    *Class Suit*, 8 U. Chi. L. Rev. 684, 686 (1941)); *see also*, *Linder v. Thrifty Oil Co.*, 23 Cal. 4th

3    429, 434-35 (2000) ("Courts long have acknowledged the importance of class actions as a means

4    to prevent a failure of justice in our judicial system.").  The concerns the Court expressed in

5    *Vasquez* apply precisely to this case.  Individual consumers could or would not have undertaken

6    the years of investigation and litigation necessary to prosecute individual claims against the

7    defendant herein.  A class action was necessary to vindicate the rights of the consumers.

8            Contingency fee litigation is always risky.  Despite this risk, Plaintiffs' Counsel secured

9    an excellent result in this litigation.  Plaintiffs' Counsel respectfully submits that the award of

10   their full request for attorneys' fees and costs is therefore appropriate.

11           **E.    Plaintiffs' Counsel Requests Time and Expense Reimbursements for**

12                  **Certain Named Plaintiffs**

13           Plaintiffs' Counsel respectfully requests that the following named Plaintiffs be awarded

14   time and expense reimbursements calculated as detailed in their accompanying declarations:

15   $7,800 for Todd Feinstein, $4,987.50 for Nathan DeBockler, $7,000 for Steven Nakash, $7,830

16   for Lance Waidzunas, and $5,330 for John Russo.  These amounts are based on time some or all

17   of them variously expended dealing with NVIDIA and the OEMs on these issues, gathering

18   documents, attending depositions, consulting for the mediation, providing declarations and

19   considering the settlement to ensure it was reasonable, devoting many hours to this action for the

20   benefit of the Settlement Class.  Westerman Decl., ¶ 70.  These individuals aided not only

21   Plaintiffs' Counsel, but the entire Settlement Class.  Courts have recognized that class

22   representatives should receive a service payment for undertaking the burdens of a class

23   representative.

24           Many recent decisions, including many in the Ninth Circuit, approve time and expense

25   reimbursements to named plaintiffs in recognition of their efforts in achieving the results

26   obtained.  Many cases note the obvious public policy reasons for encouraging individuals with

27   small personal stakes to serve as class plaintiffs in meritorious cases.  *Cook v. Niedert*, 142 F.3d

28

1004, 1016 (7th Cir. 1998); *In re Cendant Corp.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002); *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (listing factors). Decisions also note that such "awards" compensate named plaintiffs for their efforts and time expended in representing the class, such as time spent in deposition or helping respond to written discovery. In *In re LDK Solar Sec. Litig.*, No. 07-5182, 2010 U.S. Dist. LEXIS 87168, at *8-10 (N.D. Cal. July 29, 2010), the court approved a $10,000 award to compensate the named plaintiff for out-of-pocket expenses and significant time spent assisting counsel with the litigation. *See also Cicero v. DirecTV, Inc.*, No. 07-1182, 2010 U.S. Dist. LEXIS 86920, at *19-20 (C.D. Cal. July 27, 2010) (approving $7,500 and $5,000 time and expense awards "for their efforts on behalf of the class"); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 awards for two named plaintiffs "for their roles in prosecuting the Action on behalf of the Settlement Class"). These cases are based on the fundamental premise that named plaintiffs undertake obligations, provide input and take risks not shared equally by absent class members, thus justifying different treatment. The amounts awarded in reported cases vary widely from token payments to amounts in the tens or -- rarely -- even hundreds of thousands of dollars. *See Fears v. Wilhelmina Model Agency, Inc.*, 2005 U.S. Dist. LEXIS 7961, *9-10 (S.D.N.Y. 2005) (approving time and expense reimbursements of $25,000 and $15,000; noting cases approving awards as low as $336 and as high as $303,000 with most awards being in the $10,000 to $50,000 range); *Barel v. Bank of Am.*, 255 F.R.D. 393, 402-03 (E.D. Pa. 2009) (approving award of $10,000 to class representative for services performed for the benefit of the class as being within range of awards courts have determined to be reasonable).

The court in *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001), recognized that courts routinely approve service fee awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. The decision to award service fee payments to class representatives is within the trial court's discretion. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462-63 (9th Cir. 2000).

1    Not only did these named Plaintiffs devote a significant amount of their time to assisting

2    Plaintiffs' Counsel, which merits a time and expense reimbursement for the reasons explained in

3    the above-cited cases, but the awards will also be paid by NVIDIA from the $13 million and are

4    separate and apart from any benefits conferred to the Settlement Class.  That is, the service fees

5    are just like the attorneys' fees and costs award; the source of payment was separately negotiated

6    and agreed to by the parties after all the material terms of the settlement of the Settlement Class's

7    claims had been reached.  Should the Court not approve awarding service fees to these named

8    Plaintiffs, the money will not flow to the Settlement Class, it will simply remain with NVIDIA or

9    Plaintiffs' counsel.

10   **III.    CONCLUSION**

11          For all of the foregoing reasons, the Court should award Plaintiffs' Counsel's motion for

12   attorneys' fees and expenses in the amount of $13,000,000.  Additionally the Court should award

13   time and expense reimbursements totaling $32,947.50 to named Plaintiffs Todd Feinstein,

14   Nathan DeBockler, Steven Nakash, Lance Waidzunas and John Russo.  These requests are

15   reasonable and appropriate, and will in no way reduce the benefits provided to the Settlement

16   Class.

17   DATED: October 15, 2010              MILBERG LLP
                                          JEFF S. WESTERMAN
18                                        SABRINA S. KIM
                                          NICOLE M. DUCKETT
19

20                                               */s/ Jeff S. Westerman*
                                          _____
21                                               JEFF S. WESTERMAN

22                                        One California Plaza
                                          300 S. Grand Avenue, Suite 3900
23                                        Los Angeles, CA 90071
                                          Telephone: (213) 617-1200
24                                        Facsimile: (213) 617-1975
                                          E-mail: jwesterman@milberg.com
25                                            skim@milberg.com
                                              nduckett@milberg.com
26

27

28

1   MILBERG LLP
    PETER SAFIRSTEIN
2   JENNIFER S. CZEISLER
    ROLAND RIGGS
3   One Pennsylvania Plaza, 49th Floor
    New York, NY 10119
4   Telephone: (212) 594-5300
    Facsimile: (212) 868-1229
5   E-mail: psafirstein@milberg.com
        jczeisler@milberg.com
6        rriggs@milberg.com
7   *Counsel for Plaintiff Todd Feinstein and
    Interim Lead Plaintiffs' Counsel*

8   SHALOV STONE BONNER & ROCCO LLP
    RALPH M. STONE
9   THOMAS G. CIARLONE, JR.
    485 Seventh Avenue, Suite 1000
10  New York, New York 10018
    Telephone: (212) 239-4340
11  Facsimile: (212) 239-4310
    E-mail: rstone@lawssb.com
12      tciarlone@lawssb.com
13  *Counsel for Plaintiff Lance Waidzunas and
    Plaintiffs' Co-Counsel*

14  HORWITZ HORWITZ & PARADIS
    PAUL O. PARADIS
15  MICHAEL A. SCHWARTZ
    GINA M. TUFARO
16  405 Lexington Avenue, 61st Floor
    New York, NY 10174
17  Telephone: (212) 986-4500
    Facsimile: (212) 986-4501
18  E-mail: pparadis@hhplawny.com
        mschwartz@hhplawny.com
19      gtufaro@hhplawny.com
20  *Counsel for Plaintiff Nathan DeBockler and
    Plaintiffs' Co-Counsel*

21  DOYLE LOWTHER LLP
    WILLIAM J. DOYLE II
22  JOHN A. LOWTHER IV
    9466 Black Mountain Road, Suite 210
23  San Diego, CA 92126
    Telephone: (619) 573-1700
24  Facsimile: (619) 573-1701
    E-mail: bill@doylelowther.com
25      john@doylelowther.com
26  *Counsel for Plaintiff John Russo and Plaintiffs'
    Co-Counsel*

27

28

# EXHIBIT A

## HP Repair Comments

**When asked what they were told by HP customer service representatives, class members repeatedly noted that HP quoted their repair costs at or about $400.00**

### Examples:

"[I was told t]hat my model because I have a intell board is not in the extended warrenty, only the amd boards are. and they want me to pay 399 to fix the notebook[.]"

"[I was informed that] HP wants me to pay $400 to replace the motherboard, which will be an exact replica of the mobo I have with the SAME defective part."

"[I was notified that t]hey would charge $400 to put in another motherboard. I instead found a repair shop that fixed the nvidia card. It did fail due to overheating."

"[I was told that m]y problem doesn't fall under warranty. [I would have to p]ay $398 to have HP fix it."

"[I was told that my model was o]ut of warranty. [HP] Did offer a $400 mail-in repair."

"I had many discussions with tech support.   Referred to Customer Service.   It was 1 or 2 months out of warranty so I would have to pay HP $398 UP FRONT to have it fixed.   Although I had not described the problem to the person - she "guaranteed" me that [...]"

"[I was informed that] I need to pay for the repair[:] $400. They will change the motherboard."

"[I was notified that I was o]ut of [my] 1 year warranty[; HP] would fix [my computer] for 400 dollars[.]"

"They told me it would be $400.00 to fix the issue with the notebook. I spoke with the customer service 1-800 number."

"[I was told that s]ince I was (conveniently) out of warranty, I was not eligible for a free repair; I had to pay $400. I know HP has an extended warranty but my computer is not on the list. An HP support rep told me this was because the computers affected only had AMD chip[.]"

# EXHIBIT B

MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
skim@milberg.com
NICOLE M. DUCKETT (SBN 198168)
nduckett@milberg.com
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

MILBERG LLP
PETER SAFIRSTEIN
psafirstein@milberg.com
JENNIFER S. CZEISLER
jczeisler@milberg.com
ROLAND RIGGS
rriggs@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Interim Lead Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| THE NVIDIA GPU LITIGATION | ) CLASS ACTION |
| | ) |
| _____ | ) Case No. C 08-4312 JW |
| | ) |
| This Document Relates To: | ) PLAINTIFF TODD FEINSTEIN'S |
| | ) RESPONSES AND OBJECTIONS TO |
| ALL ACTIONS. | ) DEFENDANT NVIDIA'S FIRST SET OF |
| | ) INTERROGATORIES |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

PROPOUNDING PARTY:      Defendant NVIDIA CORPORATION

RESPONDING PARTY:       Plaintiff TODD FEINSTEIN

SET NUMBER:             ONE (1)

temperatures; had a screen which was fuzzy and displayed only grey or black at certain times; and periodically shut down entirely without warning.

On or about May 31, 2009, the notebook shut down and refused to boot up. The same day, Plaintiff Feinstein called Apple's technical support line -- they were unable to resolve the problem. On or about June 1, 2009, Plaintiff Feinstein took the notebook to the Apple store. After he had been there several hours, he attempted to demonstrate the problem to an Apple employee by pressing the power button -- the notebook then booted up.

On or about July 17, 2009, the notebook again shut down and refused to boot up. On or about September 24, 2009, Plaintiff Feinstein visited the Apple Store and explained the previous instance when the notebook had refused to start, surmising that the issue was a faulty internal power connection. The Apple employee stated that this was possible, and that it would cost $300 to repair the notebook. Plaintiff Feinstein paid this amount and left the computer at the store. On or about October 3, 2009, Plaintiff Feinstein returned to the Apple Store to retrieve the notebook. He then discovered, for the first time, that Apple had not repaired or replaced the internal power connection but had, instead, replaced his logic board. On or about October 8, 2009, counsel for Plaintiff Feinstein contacted several Apple repair centers in an effort to retrieve the logic board, but were ultimately unsuccessful.


INTERROGATORY NO. 2:

Describe, with as much detail as possible, all actions and efforts taken by YOU or on YOUR behalf in response to each and every PROBLEM with YOUR COMPUTER including, without limitation, any COMMUNICATIONS between YOU and APPLE, YOU and NVIDIA or YOU and any MERCHANT.

RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates herein the above General Objections and further objects to this interrogatory insofar as it seeks information protected by the attorney-client privilege, the work product doctrine and/or any other applicable privilege or immunity. Plaintiff further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, unreasonably

1    to ongoing discovery. Subject to and without waiving the foregoing objections, discovery is

2    ongoing and Plaintiff will supplement these responses in accordance with the Federal Rules of

3    Civil Procedure, the Local Rules of the Court or other applicable statutes or common law.

4

5    DATED:  February 8, 2010                    MILBERG LLP
                                                  JEFF S. WESTERMAN
                                                  SABRINA S. KIM
6                                                 NICOLE M. DUCKETT

7

8                                                      */s/ Jeff S. Westerman*
                                                  JEFF S. WESTERMAN
9
                                                  One California Plaza
10                                                300 S. Grand Avenue, Suite 3900
                                                  Los Angeles, CA  90071
11                                                Telephone: (213) 617-1200
                                                  Facsimile:  (213) 617-1975
12                                                E-mail:  jwesterman@milberg.com
                                                      skim@milberg.com
13                                                    nduckett@milberg.com

14                                                MILBERG LLP
                                                  PETER SAFIRSTEIN
15                                                JENNIFER S. CZEISLER
                                                  ROLAND RIGGS
16                                                One Pennsylvania Plaza, 49th Floor
                                                  New York, NY  10119
17                                                Telephone: (212) 594-5300
                                                  Facsimile:  (212) 868-1229
18                                                E-mail:  psafirstein@milberg.com
                                                      jczeisler@milberg.com
19                                                    rriggs@milberg.com

20                                                *Interim Lead Class Counsel*

21                                                SHALOV STONE BONNER & ROCCO LLP
                                                  RALPH M. STONE
22                                                THOMAS G. CIARLONE, JR.
                                                  485 Seventh Avenue
23                                                Suite 1000
                                                  New York, New York 10018
24                                                Telephone: (212) 239-4340
                                                  Facsimile:  (212) 239-4310
25                                                E-mail:  rstone@lawssb.com
                                                      tciarlone@lawssb.com
26
                                                  *Counsel for Plaintiffs Brian Robinson and Lance*
27                                                *Waidzunas and Plaintiffs' Co-Counsel*

28

| PLAINTIFF TODD FEINSTEIN'S RESPONSES AND OBJECTIONS TO NVIDIA'S FIRST SET OF INTERROGATORIES | - 8 - | CASE NO. No. C 08-4312 JW |
| --- | --- | --- |

1

HORWITZ HORWITZ & PARADIS
PAUL O. PARADIS
MICHAEL A. SCHWARTZ
2

GINA M. TUFARO
28 West 44th Street, 16th Floor
3

New York, NY 10036
Telephone: (212) 404-2200
4

Facsimile:  (212 404-2226
E-mail:  pparadis@hhplawny.com
5

   mschwartz@hhplawny.com
   gtufaro@hhplawny.com
6

7

*Counsel for Plaintiff Steven Nakash and Plaintiffs'
Co-Counsel*
8

DOYLE LOWTHER LLP
WILLIAM J. DOYLE, II
9

JOHN A. LOWTHER, IV
9466 Black Mountain Road, Suite 210
10

San Diego, CA 92126
Telephone: (619) 573-1700
11

Facsimile:  (619) 573-1701
E-mail:  bill@doylelowther.com
12

   john@doylelowther.com
13

*Counsel for Plaintiff Inicom Networks, Inc. and
Plaintiffs' Co-Counsel*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| PLAINTIFF TODD FEINSTEIN'S RESPONSES AND OBJECTIONS TO NVIDIA'S FIRST SET OF INTERROGATORIES | - 9 - | CASE NO. No. C 08-4312 JW |

# EXHIBIT C

Case5:08-cv-04312-JW    Document257-1    Filed10/15/10    Page34 of 44



# Laptop

Join the conversation about Dell laptop/notebook computers and mobile workstations.

# XPS M1210 dead nvidia GPU repair options?



Posted by **another-dead-xps-m1210** on 1 Feb 2010 7:08 AM

Hello all, my $2,000 dell xps m1210 became useless some days ago, showing **no video at all on the main lcd sceen, neither on an external display** when I try to power it on. **I can see all the leds in the chassis behaving normally** and **I can also feel and hear the hard drive operating normally**. This began a very long time ago, the screen would randomly freeze with some green vertical or horizantal lines followed by a blue screen of death, but would be fine after reboot for a week or a month before it happening again, it mostly happend whie viewing video content.

Now that theres no image at all (making the laptop useless), I searched online for similar problems and fixes, and I found many people were having the same issues, and discovered that there is in fact, a problem with defective nvidia graphics cards for which dell had given an extra year of warranty to fix this problem, however, **at no point did I receive a notoficacion from dell about the existence of an extended warranty, (they have my info on record)** which I would have used and appreciated as a loyal customer that I have been for dell computers. On a side note, my **Lexus dealer calls and E-mail me every time a recall affects or might affect me and thats the kind of service that keeps me coming back.**

I spent about three hours talking to the tech support to see If I could get any help which kept transferring me to other people and supervisors who required me to explain the situation over and over, and every single one of them started denying there was a problem with these computers, or gpu's to be more specific, then after telling them that the previous tech aknoleged the problem, they woul beging aknoledging it too, but then used the excuse that i was out of the extended warranty (for wich I was never notified).

Frustrated with tech support for not being able to help me with something that has nothing to do with normal tear and wear and which looks more like defective units sold to people, I decide to talk to the out-of-warranty repair techs just to see how much it would be and the tech estimated the repair at (about) $550.00 which is totally unacceptable for something that has to do with a defecticve product.

Not only have I been a loyal dell customer, but as a computer technician, I have recomended dell products many many times, well, **I gues we live in an unfair world where I give you business and you give me the finger, good thing I can always change my product brand preferences and recomendations.**

**Now that we know that dell is not going to help us, can anyone help me and all the other people that are going through the same situation, and share an inexpensive fix that we can do ourselfs even if it requires soldering (because the gpu is soldered to the motherboard)?**

Posted by **ejn63** replied on 1 Feb 2010 8:10 AM

You have two options:

Replace the mainboard with one with an Intel chip (you'll need a new  heatsink), or

Replace the mainboard with one that uses the nVidia chip you now have.

The video chip is a permanent part of the mainboard - it has hundreds of solder points. No human being could remove and replace it successfully (it is mounted by machine in an SMT device at the assembly line).

Posted by **another-dead-xps-m1210** replied on 1 Feb 2010 8:22 AM

Only responses from non dell employees please, thank you, you have done enough damage already.

Posted by **ejn63** replied on 1 Feb 2010 8:30 AM

Since I don't work for Dell, and never have, your blindness to the truth couldn't be more plain - you want the answer you want, regardless of the truth.  So, get out your soldering iron and your microscope and have at it.

Posted by **another-dead-xps-m1210** replied on 1 Feb 2010 9:17 AM

Im pretty sure someone at some point will come up with a better solution than spending in repair, what a decent new computer costs. **We are looking for positive and reasonable options.**

Posted by **DCX4EVER** replied on 1 Feb 2010 9:30 AM

Case5:08-cv-04312-JW Document257-1 Filed10/15/10 Page36 of 44

Although the previous poster offered what I thought was a reasonable response you still want to repair. The only nvidia repair short of an rma that I am familiar with is the oven baking method. Completely remove all accessories from the mb and place in an oven on a baking sheet. Support the mb at each cornor with balls of rolled up aluminum foil. Bake in oven at 350F for 15 to 20 minutes. The theory is that the orignal solder cracks from constant heat cyling over time. Please use at your own risk and google for complete instructions. Good Luck.....

---

 Posted by **another-dead-xps-m1210** replied on 2 Feb 2010 7:27 PM

To keep it simple, **it seems reasonable only if you dont know the price tag, which by dell's estimate is around $550.00**.

So, **$550 for a repair of adefective part that dell doesnt want to take responsability for, OR, you can buy a whole new computer with that money**.

**Last week I bought a laptop** for my fiancee; a HP Pavilion dv4-2045dx with 320gb 7200 rpm Sata hard drive, 2.2 ghz AMD Turion II dual core, digital media card reader, 4gb Ram, webcam ,microphone, Ati Radeon 4200HD 128mb graphics card. I loved my xps1210 but im suprised how this much cheaper computer beats it in many ways.

**What was the price tag for that computer? what a coincidence... $549.99** , you can look it up online. I will never give Dell any more money.

---

 Posted by **ejn63** replied on 2 Feb 2010 7:38 PM

Call HP and ask what they charge for a replacement board - and the chances that you'll need it are pretty good, too - much higher than with your Dell.

http://www.digitaltrends.com/computing/asus-toshiba-notebooks-top-squaretrades-reliability-figures/

---

 Posted by **another-dead-xps-m1210** replied on 2 Feb 2010 8:16 PM

Regardlees of the price, these particular cases are arrising from defective components on Dell computers wich Dell should fix, I am not here to discuss wich company has cheaper or more expensive parts, I was just making the point that we are required to spend about $550.00 dollars for a repair that should be taken care of by Dell, and with that money we can just go and buy a whole new computer that might

even have better specifications (today for that $550.00 price) than these xps m1210's.

**I would go with a new computer, definetly another brand, just because I was left in the cold by Dell, not because the parts are expensive.**

---

Posted by **ejn63** replied on **2 Feb 2010 8:19 PM**

You may think you bought another brand - but Dell and HP both use Quanta as their major supplier -- that is, your new system is likely just a Chevrolet replacing your problem Pontiac.

Here's how HP handles its common mainboard failures:

http://getsatisfaction.com/hp/topics/hp_pavilion_dv_6000_motherboard_failure

Before anyone reading this takes the recommendations of the aggrieved, by all means do some research.

---

Posted by **another-dead-xps-m1210** replied on **2 Feb 2010 8:27 PM**

You can put all the links you like and you still wont change my mind about not giving Dell any more businness by me or my peers.

**Again, regardless where the parts come from or how much they are, Dell was the company that left us in the cold when we needed their support that arrised from their mistakes, thats why I now buy from other companies not because they have better parts.**

**You behave just like any other dell employee, you defend Dell till the end but do not offer any REAL help.**

---

Posted by **ejn63** replied on **2 Feb 2010 8:37 PM**

I'm posting not for you - there's no point in changing your mind; it's made up based on fallacy. I'll continue speaking the truth to advise those who might end up mislead by your posts.

Posted by **WinStart** replied on 30 Mar 2010 5:27 AM

well I have 4 of this laptop... have been costumer for many year and spend over 50 000 $ to Dell.

But after this laptop error I am now switching supplier.

Main reason is the way Dell treat their old, good costumer.. (spending over 5 000 $ should class me as good?? maybe not for Dell).

Posted by **dmateoyu** replied on 13 Apr 2010 1:59 PM

Hi,

I actually just experienced this exact same problem but instead of looking for a fix I decided to just buy a new laptop.  My problem now stems from finding out whether or not my hard drive has a problem, basically can I still get access to my data in my Dell M1210's hard drive.

I know my PC boots up and I use an external monitor to see things loading (albeit with highly pixelated graphics due to my graphics card conking out), it shows the Windows XP loading screen but then after that my monitor goes dark.  When i try to start safe mode it doens't fully start as well.

Should i jsut buy an external HD case and then try to access the hard drive through that?

many thanks!

-Derek

Posted by **mcinturf** replied on 14 Apr 2010 11:44 AM

Well...I really dont have a solution to your problem, being essentially in the same boat, but I did notice your post was very similar to the one I have posted so I just thougt I'd let you know where I was with it. And to be honest it looks like you may be on your second but I dont think it will ever be really solved because I am having my 3rd (refurbished) chip soldered in by Out of Warranty Repair.  See below. Oh..and yeah.my GPU failure was the exact same symptoms...all three times.

I was hoping someone could advise me on my options here. My laptop was repaired back in April of last year. It was out of warranty being purchase in 2007 so I paid 200 to have the GPU replaced. This apparently is a very common problem with these laptops. Surprisingly (or not),, the GPU failed again in August of 2009, just 4 months or so later. They replace it again (this time for free on their behalf) and It seemed to be fine. The funny thing is that I NEVER move this laptop from my desk. Its never used for gaming, mostly used for email and internet, and frankly spends 90% of its life in standby. Both fans are functioniing fine and it never has any viruses. So just the other day I open the lid to wake it from standby and the screen is black. Upon reboot I get the very familiar colored lines across the screen and am now forced to run with the nvidia disabled to even use the thing. So I guess I have two questions:

1) How do I ACTUALLY reach someone from out of warranty repair to get the laptop serviced again (3 times a charm?)

2)Do you think this will be covered considering I had paid for the repair and this is the 3rd time in 1 yr that it has failed. I suspect they use reburshished chips in these repairs. Anyone know? I guess thats 3 questions.

 Just thought I would share and hope somebody has some suggestions. Im sure there are others who have been in this boat.

Ok...update. I have a service request in now but of course I have to pay for it again. They really have you by the balls here. They will only put refurbished chips that they know will fail and will only warranty the repair for 90 days. This means with almost certainty that the customer will be forced to pay out 200 dollars as often as 4 times a year if they want to use their $2500 laptop. Anyone have any suggestions on how I can keep this laptop working for longer than 8 months (most recent failure)? I only check email and internet on it really. No gaming. What are my options here? Any help would be appreciated.

| 1 | 2 | Next |

XPS M1330 faulty GPU options?? Cost? Please help!
Case5:08-cv-04312-JW   Document257-1   Filed10/15/10   Page41 of 44
Page 1 of 4


Notebook Review™


Visit drsarmor.com
to schedule a demo.


ARMOR
RUGGED MOBILE SOLUTIONS

About Us    Contact Us    Register    Login

HOME    REVIEWS    NEWS    SHOP & COMPARE    COUPONS    DEALS    DISCUSSIONS    ADD ONS    VIDEO    Search Site    🔍

Laptop Forums and Notebook Computer Discussion > Notebook Manufacturers > Dell > Dell XPS and Studio XPS
XPS M1330 faulty GPU options?? Cost? Please help!

User Name | User Name | ☐ Remember Me?
Password | _____ | Log in

Register    FAQ    Members List    Unanswered Threads

**Dell XPS and Studio XPS** Post questions and comments on the Dell XPS and Studio XPS line of notebooks in here. **Click Here to see the latest Dell XPS Deals.**

Welcome to notebookreview.com! Have a PDA or SmartPhone related question?

Register and ask it here in the forums


MicroReplay

Spilled Liquid on
Your Laptop?

POST REPLY

Page 1 of 2 **1** 2 ≥ »

LinkBack ▾    Thread Tools ▾

☐ 01-28-2010, 01:07 AM    #1 (permalink)

**sowatup**
Notebook Geek

Join Date: Aug 2007
Posts: 76
Rep Power: 8 ▮

⚙ **XPS M1330 faulty GPU options?? Cost? Please help!**

I have the XPS m1330 with the nVidia 8400 GPU. Got it back in September of 2007 with just one year warranty. I just started getting the rainbow colored vertical lines on the screen today, did research, and found out it is due to faulty GPU design. Called up **Dell**, and they said even my one year extended warranty due to this common GPU error was over in September of 2008. They also said I am out of luck, unless I want to go through their out of warranty repair department.

I didn't use the laptop on regular basis till just 8 months ago when my old one finally gave out of me after 6 years. So m1330 has been only used for 8 months, and now I am stuck with bunch of verticals lines, and no hope.

Has anyone tried the out of warranty repair department for this problem? How much should it cost to, I am assuming, replace the motherboard?

And also, does replacing the motherboard really fix the GPU/vertical lines on screen problem?

Any other options I have with that? Should I put it in a freezer and try it? (just kidding about that one, just frustrated with this). 😣

Umang

(503) 888-8231

QUOTE

☐ 01-28-2010, 01:38 AM    #2 (permalink)

**callanish**
Notebook Consultant



Join Date: Sep 2007

☝ **Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Well, if by fixing, you mean with another Nvidia motherboard, then the answer would be no. It might buy you another year or two, but eventually it'll just fail again. I resorted to buying a service for $250.00 on Ebay, which included return shipping, for an installation of the Intel version motherboard rather than the one with the Nvidia one and so far I couldn't be happier. I wasn't doing anything GPU extreme with the old one, so from my perspective I can't tell a whole lot of difference in speed between the Nvidia and the Intel motherboards. It does run cooler, I can tell you that. So, as far as options, you can install the Nvidia motherboard again and role the dice or you could either install the Intel motherboard yourself or get an outside service to do it.

XPS M1330 faulty GPU options?? Cost? Please help!
Case5.08-cv-04312-JW Document257-1 Filed10/15/10 Page42 of 44
Page 2 of 4



**Dell Links**
**Dell Laptop Coupons**
Dell Laptop Reviews

MOST SHARED

Lenovo ThinkPad X201
LENOVO $1,099.00

Lenovo G550
LENOVO $549.00

Lenovo ThinkPad T410
LENOVO $1,199.00

Lenovo ThinkPad T60

Dell Studio XPS 16
Dell Home Syste
$1,489.99

Asus G73JH
ABT $1,618.00

Alienware m11x
Dell Home Syste
$1,419.00

Dell Latitude D620

HP EliteBook 8540w

Asus Eee PC 1215N

TITANIUM
INTERNET SECURITY

Powerful
security
that won't
slow you
down.

FREE TRIAL

TREND
MICRO

Posts: 162
Rep Power: 8

---

01-28-2010, 02:58 AM                                    #3 (permalink)

**sowatup**
Notebook Geek

Join Date: Aug 2007
Posts: 76
Rep Power: 8

**Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Callanish, thank you so much for your reply! Yeah, by fixing it, I am thinking to just get it replaced with another nVidia GPU through **Dell**'s out-of-warranty repair dept. Even if I can get another year out of it, it would be great. Graphics is pretty important to me, as I do lots of modeling (i.e. CATIA and SolidWorks). If even by replacing with a newer motherboard w/ the same nVidia GPU will get me an year, I am saving up (~ $2,500) to buy a decent multitouch convertible with i5/i7 CPU (i.e. Fujitsu T900, HP TM2t, or something similar).

I just need it to start working and last me even 7-8 months till I am done with school, and wanting to make sure it just won't give out on me in like a month or so, and also wanting to know what the cost would be going through out-of-warranty dept, if anyone as done that.

Thank you once again for your reply!

---

01-28-2010, 03:00 AM                                    #4 (permalink)

**sowatup**
Notebook Geek

Join Date: Aug 2007
Posts: 76
Rep Power: 8

**Re: XPS M1330 faulty GPU options?? Cost? Please help!**

I also do a fair bit of video editing using Sony Vegas and Premiere, and so far 8400 has met my needs. I don't know if Intel X4500HD would meet those needs or not. Can't find any good comparison reports between the two.

---

01-28-2010, 04:08 AM                                    #5 (permalink)

**moral hazard**
Notebook Prophet

Join Date: Jun 2009
Location: Australia
Posts: 5,713
Rep Power: 27

**Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Free fix:
width="480"

height="295">

MSI GT627/1651 ID2:
SP9400 3.5ghz | 2gb 800mhz ram (OC to 984mhz 6-8-8-24) |160gb 7200 RPM HDD (7K320) | FX 3700m Using GTX 280m driver | 1280x800 | Dual boot XP and win7 | 12875 3dmark06 (1280x800, 571/944, CPU 3.06ghz), Vantage P6012 (1280x1024, GPU stock, CPU 3.06ghz) |Internal SLC SSD through esata mod might be comming soon☺

---

01-28-2010, 08:58 PM                                    #6 (permalink)

**sowatup**
Notebook Geek

Join Date: Aug 2007
Posts: 76
Rep Power: 8

**Re: XPS M1330 faulty GPU options?? Cost? Please help!**

So I called **Dell**'s out-of-warranty repair department, and they quoted me $580 plus tax to fix the motherboard. Not only that, but I will have to ship it, and it will take them 15-20 business days to fix it and ship it back to me.

Almost $600!?! Kidding me?!

---

01-28-2010, 09:46 PM                                    #7 (permalink)

**LordRasta**
Notebook Consultant

**Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Did you review the video from above?

XPS M1330 faulty GPU options?? Cost? Please help!

Page 3 of 4

Case5.08-cv-04312-JW   Document257-1   Filed10/15/10   Page43 of 44



Join Date: May 2007
Posts: 115
Rep Power: 9 ▪

**QUOTE**

---

☐ 01-28-2010, 11:52 PM                                                    #8 (permalink)

**sowatup**
Notebook Geek

Join Date: Aug 2007
Posts: 76
Rep Power: 8 ▪

🗟 **Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Yeah, I did! But I don't know what tool he is using! 😊 I can open it up and everything, only if someone could tell me what that is. Looks like an air blower?

**QUOTE**

---

☐ 01-29-2010, 12:04 AM                                                    #9 (permalink)

**yejun**
Notebook Deity

Join Date: Dec 2007
Posts: 1,155
Rep Power: 11 ▪

🗟 **Re: XPS M1330 faulty GPU options?? Cost? Please help!**

Hot air soldering iron. You can click the video and see the author's explanation.

**QUOTE**

---

☐ 01-29-2010, 01:08 AM                                                    #10 (permalink)

**moral hazard**
Notebook Prophet

Join Date: Jun 2009
Location: Australia
Posts: 5,713
Rep Power: 27 ▪▪▪▪▪▪▪▪▪▪

🗟 **Re: XPS M1330 faulty GPU options?? Cost? Please help!**

You can use a heat gun, or try the "oven trick" (google it).

Works best in an oven for some strange reason, or so they say.

If you use a heatgun, don't bring it too close to the chip, you might burn it (I did this to one of mine).

300C is about as hot as you would want with a heatgun. It's different when using an oven. There are many guides on the net, be sure to read some to get a good idea of how it's done.

Here is the best guide I have seen:
how to repair your dead graphics card in your alienware!!!!!

Also I'd say it's better to give it not enough heat then to over do it.

Other people just put their notebook on their bed, block the vents and leave it on for a while, probably use furmark to make the GPU really heat up.

I think the oven is most succesful.

Anyway, just make sure your board is lead-free.

MSI GT627/1651 ID2:
SP9400 3.5ghz | 2gb 800mhz ram (OC to 984mhz 6-8-8-24) |160gb 7200 RPM HDD (7K320) | **FX 3700m** Using GTX 280m driver | 1280x800 | Dual boot XP and win7 | 12875 3dmark06 (1280x800, 571/944, CPU 3.06ghz), Vantage P6012 (1280x1024, GPU stock, CPU 3.06ghz) |Internal SLC SSD through esata mod might be comming soon😊

**QUOTE**

---

▶ **POST REPLY**                                                    Page 1 of 2 **1** 2 > ▾

« Previous Thread | Next Thread »

---

**Ads by Google**

Dell.com - Official Site
Act Now for Special Offers on our New Notebooks w/ 2010 Intel Core
www.Dell.com

New York Coupons
1 ridiculously huge coupon a day. Get 50-90% off New York's best!
www.Groupon.com/New-York

New Alienware Gaming PCs
Check Out Alienware's New Elite Gaming Laptops w/ 2010 Intel Core!
www.Alienware.com

Sager Gaming Notebooks
Powered by new Intel® Core™ i7 with GF GTX 480M & HD 5870 Graphics

XPS M1330 faulty GPU options?? Cost? Please help!    Page 4 of 4

Case5:08-cv-04312-JW    Document257-1    Filed10/15/10    Page44 of 44

www.sagernotebook.com/gaming_laptop

**Posting Rules**

You **may not** post new threads
You **may not** post replies
You **may not** post attachments
You **may not** edit your posts

vB code is **On**
Smilies are **On**
[IMG] code is **On**
HTML code is **On**
Trackbacks are **Off**
Pingbacks are **Off**
Refbacks are **Off**

All times are GMT -5. The time now is 03:58 PM.

Contact Us - - Top

-- NEW NBR STYLE

Powered by vBulletin® Version 3.6.4
Copyright ©2000 - 2010, Jelsoft Enterprises Ltd.
SEO by vBSEO 3.3.2

TechTarget provides enterprise IT professionals with the information they need to perform their jobs - from developing strategy, to making cost-effective IT purchase decisions and managing their organizations' IT projects - with its network of technology-specific Web sites, events and magazines.

TechTarget Corporate Web Site | About Us | Advertising | Site Map | Contact Us | Submit Review | RSS Feeds | Jobs



All Rights Reserved, Copyright 2000 - 2010, TechTarget | Read our Privacy Statement