1   MILBERG LLP
    JEFF S. WESTERMAN (SBN 94559)
2   jwesterman@milberg.com
    SABRINA S. KIM (SBN 186242)
3   skim@milberg.com
    NICOLE M. DUCKETT (SBN 198168
4   nduckett@milberg.com
    One California Plaza
5   300 S. Grand Avenue, Suite 3900
    Los Angeles, CA  90071
6   Telephone: (213) 617-1200
    Facsimile:  (213) 617-1975
7
    MILBERG LLP
8   PETER SAFIRSTEIN
    psafirstein@milberg.com
9   JENNIFER S. CZEISLER
    jczeisler@milberg.com
10  ROLAND RIGGS
    rriggs@milberg.com
11  One Pennsylvania Plaza, 49th Floor
    New York, NY  10119
12  Telephone: (212) 594-5300
    Facsimile:  (212) 868-1229
13
    *Counsel for Plaintiff Todd Feinstein and*
14  *Interim Lead Class Counsel*

15  [Additional Counsel on Signature Page]

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18                       SAN JOSE DIVISION

19  THE NVIDIA GPU LITIGATION          )  Case No. C 08-4312 JW
                                       )
20                                     )  **CLASS ACTION**
                                       )
21  This Document Relates To:          )  REPLY MEMORANDUM IN SUPPORT
                                       )  OF MOTION FOR ATTORNEYS' FEES
22                                     )  AND EXPENSES AND TIME AND
         ALL ACTIONS.                  )  EXPENSE REIMBURSEMENT FOR
23                                     )  PLAINTIFFS
                                       )
24                                     )  DATE:      December 20, 2010
                                       )  TIME:      9:00 a.m.
25                                     )  CTRM:      8, 4th Floor
                                       )  JUDGE:     Hon. James Ware
26                                     )

27

28

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

I.   CALIFORNIA LAW GOVERNS THE ANALYSIS......................................................2

II.  THE FEE IS REASONABLE UNDER BOTH THE LODESTAR ANALYSIS
     AND THE PERCENTAGE OF THE BENEFIT METHOD................................................3

     A.   Under a Lodestar Analysis, Counsel's Fee Request is Reasonable .......................4

     B.   Under a Percentage of the Benefit Analysis, Counsel's Fee Request is
          Reasonable ...........................................................................................................7

III. THIS IS NOT A COUPON SETTLEMENT.................................................................10

IV.  THE CLASS REPRESENTATIVES' PROPOSED TIME AND EXPENSE
     REIMBURSEMENTS ARE REASONABLE...............................................................12

CONCLUSION.........................................................................................................................14

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | i | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**FEDERAL CASES**

4

5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...........................................................................................................7, 12

6

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)..................11

7

*Caudle v. Bristow Optical Co.*,
   224 F.3d 1014 (9th Cir. 2000) .................................................................................................5

8

9

*Cervantez v. Celestica Corp.*,
   No. EDCV 07-729-VAP (OPx), 2010 U.S. Dist. LEXIS 78342 (C.D. Cal. July 6,
   2010) ........................................................................................................................................2

10

11

*Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ...................................................................................................4

12

13

*Florin v. Nationsbank, N.A.*,
   34 F.3d 560 (7th Cir. 1994) .....................................................................................................3

14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1029 (9th Cir. 1998) ............................................................................. passim

15

16

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .......4, 5, 7, 12

17

18

*In re Cendant Corp. Prides Litig.*,
   243 F.3d 722 (3d Cir 2001)......................................................................................................2

19

*In re Cendant Corp.*,
   243 F. Supp. 2d 166 (D.N.J. 2003) ..........................................................................................2

20

21

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)......................................................................................................2

22

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010)..................................................................................3, 5

23

24

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) .....................................................................................................5

25

26

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...................................................................................................7

27

28

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | ii | Case No. C 08-4312 JW |
|---|---|---|

*Paulson v. City of San Diego,*
    No. 89-0820GT (LSP), 2007 U.S. Dist. LEXIS 43587 (S.D. Cal. June 13, 2007)...................6

*Quesada v. Thomason,*
    850 F.2d 537 (9th Cir. 1988) ....................................................................................5

*Rawlings v. Prudential-Bache Props.,*
    9 F.3d 513 (6th Cir. 1993) .......................................................................................5

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ...............................................................................7, 9

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .................................................................................3, 7

*Stuart v. RadioShack Corp.,*
    No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010).....................13

*True v. Am. Honda Motor Co.,*
    No. EDCV 07-0287-VAP (OPx), 2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26,
    2010) .................................................................................................................11

*United States v. $12,248 U.S. Currency,*
    957 F.2d 1513 (9th Cir. 1992) ..................................................................................5

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................2

*Williams v. MGM-Pathe Communc'ns Co.,*
    129 F.3d 1026 (9th Cir. 1997) ..............................................................................7, 12

**STATE CASES**

*Chavez v. Netflix, Inc.,*
    75 Cal. Rptr. 3d 413, 424 (Ct. App. 2008).................................................................11

**FEDERAL STATUTES**

28 U.S.C. § 1712......................................................................................................10

**OTHER AUTHORITIES**

Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action
    Litigation," 18 Geo. J. Legal Ethics 1395 (2005)........................................................10

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | iii | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

**INTRODUCTION**

Plaintiffs submit this Reply Memorandum ("Fee Reply") in support of their Motion for Attorneys' Fees and Expenses and Time and Expense Reimbursements for Plaintiffs and in conjunction with the concurrently filed Reply in Support of Final Approval of Settlement ("Final Approval Reply").  As shown in Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees and Expenses and Time and Expense Reimbursements for Plaintiffs ("Fee Brief"), the combined attorneys' fee and expense award of $13 million, inclusive of the total reimbursement to named Plaintiffs of $32,947.50, is fair and reasonable.  The Settlement is a significant result for Class Members under the circumstances of this case.  The Settlement  was achieved only after Class Counsel spent tens of thousands of hours and advanced hundreds of thousands of dollars in expenses – with no guarantee of compensation or reimbursement – litigating this case and dedicating many months to hard-fought, arm's length negotiations with Defendant.  The negotiation of the attorneys' fees and time and expense reimbursement for Plaintiffs was overseen by former United States District Court Judge Layn R. Phillips and occurred only  after the parties reached agreement in principle on the Settlement terms.

Objectors Barbara, Helfand, N. Johnson, Thompson and Mary and Dean Royas oppose the agreed  attorneys' fees and reimbursement to Plaintiffs.  Their objections can be broken down into four basic categories: (1) the fee should be analyzed under New Jersey law; (2) the fees are excessive compared to a Settlement worth a purported $2 million; (3) the fee should be based on a coupon settlement analysis; and (4) the reimbursement to class representatives is improper.  None of these objections are well taken.  California law, rather than New Jersey law, governs the fee and reimbursement analysis.  Under Ninth Circuit precedent, the Court may use either the "lodestar" or the "percentage of the benefit" analysis, and no objector even addresses the lodestar method.   Under either analysis, the requested fees are reasonable and the $2 million reimbursement fund is only one, small component of the overall Settlement.  This Settlement is not a "coupon settlement," and thus the Class Action Fairness Act's (CAFA) rules regarding

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 1 | Case No. C 08-4312 JW |

coupon settlements are inapplicable.   Finally, the proposed reimbursement to the Class Representatives is reasonable.

## I.   CALIFORNIA LAW GOVERNS THE ANALYSIS

California law governs Counsel's fee request.   Objector Frank Barbara contends the reasonableness of the requested fee should be analyzed under the law of all 50 states, even though the Court found California law applied to the claims in this case.   As the pleadings show, Plaintiffs asserted claims under California law.   *See* Third Am. Compl. Counts I-VI.   The application for attorney's fees must be governed by California law.   *See Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 U.S. Dist. LEXIS 78342 (C.D. Cal. July 6, 2010) (relying on California state and federal law); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law and federal law, the requested fees and expenses are reasonable.

Barbara also inconsistently urges the Court to apply New Jersey law to Plaintiffs' fee request, because no state purportedly "offers greater protection to the client in the areas of class action fee awards than New Jersey."   Barbara Br. 8, Dkt. 296.   As shown above, California law governs.   Even applying New Jersey law, the requested fees and expenses are reasonable. *See In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir 2001) (holding that a lodestar multiplier of three is reasonable and appropriate); *In re Cendant Corp.*, 243 F. Supp. 2d 166 (D.N.J. 2003) (awarding a multiple in the "mid-single digits" as later characterized by *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 (3d Cir. 2005)).   Plaintiffs' counsel seeks a multiplier that was less than two at the time the Fee Brief was filed, and continues to shrink due to the additional work required to implement the Settlement.   This multiplier falls well within the acceptable ranges established in New Jersey.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 2 | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

## II.   THE FEE IS REASONABLE UNDER BOTH THE LODESTAR ANALYSIS AND THE PERCENTAGE OF THE BENEFIT METHOD

Attorneys' fees and expenses were negotiated at arms' length, *after* the benefits to the Class were reached.[1]  Fee Brief 5, Dkt. 257-1.  Although numerous courts find these facts salient, *id.* at 3-4, Objector Steven Helfand argues they are irrelevant.  "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses," Helfand argues, "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."  Helfand Br. 5, Dkt. 298.[2]  Objector Helfand, in essence, urges the Court to treat *all* class action settlements as "common fund" settlements, and analyze all attorneys' fee requests under the "percentage of the benefit" method.

This is not a common fund settlement.  Class Counsel's fees do not decrease the benefit to the Class.  "[I]n a common fund case, 'the defendant typically pays a specific sum into the court, in exchange for a release of its liability.  The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class.'" *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) (quoting *Florin v. Nationsbank, N.A.*, 34 F.3d 560 (7th Cir. 1994)).

Even if this were a common fund settlement, the Court has authority to use either the lodestar or the percentage of benefit analysis.  The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys fees, depending on the case.  In 'common-fund'

---

[1] Objector Barbara argues, in direct contradiction to Ninth Circuit precedent, the Court cannot consider Judge Philips's declaration on this point.  Barbara Br. 10.  In *Hanlon v. Chrysler Corp.,* the Ninth Circuit declared: "Contrary to the objectors' contention, we do not believe the weight the district court gave to the mediation proceeding was an abrogation of its duty to determine independently whether the fee award was proper. Rather, the court relied on the mediator as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class, an inquiry the court was required to make."  150 F.3d 1011, 1029 (9th Cir. 1998).

[2] Although Objector Helfand provides no explanation for this statement, it appears to be based on the fallacy that any payment of fees to attorneys necessarily depletes funds available to the Class, regardless of whether the fee is negotiated separately.  This reasoning has been explicitly rejected elsewhere and should be rejected here.  *See generally Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (rejecting objector's argument that "there is no such thing as an attorneys' fee that is independent of the common fund").

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 3 | Case No. C 08-4312 JW |
| --- | --- | --- |

cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon*, 150 F.3d at 1029. The only requirement is attorneys' fees "be reasonable under the circumstances." *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *32 (N.D. Cal. Apr. 3, 2009).   "Accordingly, either the lodestar or the percentage-of-the-fund approach may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund." *Id.* (editing and quoting *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)).

### A.    Under a Lodestar Analysis, Counsel's Fee Request is Reasonable

Counsel's total lodestar as of the end of September exceeded $10 million, as well as over $400,000 in expenses, and counsel is, and will continue, performing additional work relating to the Settlement.  Fee Brief 7, Dkt. 257-1.  Plaintiffs previously set forth their analysis of the five factors courts consider when performing a lodestar calculation: the quality of  representation; the contingent nature of the matter; the extent to which the litigation precluded other employment of the attorneys; the amount involved and results obtained; and the continuing obligation of plaintiffs' counsel to devote time and effort to the litigation.  *Id.* at 7-15.

No objector questions the quality of Counsel's representation, the time spent on the matter, or the preclusion of other employment.  There is no debate this matter was litigated on a contingent basis, and Counsel continues to devote time and effort to the litigation since Settlement.  Various objectors focus solely on the results obtained, and do so exclusively in the context of a "percentage of the benefit" analysis.  Essentially, each objector contends that the Settlement value is insufficient in comparison with Counsel's requested fees.[3]  This comparative method of "analysis" simply restates the percentage of the benefit analysis, which is contrary to the policies undergirding the lodestar method.  As one court explained, "one very important

---

[3]  Objectors Helfand and Johnson go so far as to argue that because the settlement is difficult to value, the Court cannot award fees at all.  First, there are many ways to value the settlement, all of which militate in favor of granting Counsel's requested fees.  Second,  the lodestar method exists  to address cases in which the benefit is difficult to measure.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 4 | Case No. C 08-4312 JW |
|---|---|---|

aspect of the Court's supervisory role with respect to class action settlements [is to ensure] 'that counsel is fairly compensated for amount of work done *as well as* for results achieved.'" *Lonardo,* 706 F. Supp. 2d at 790 (emphasis added) (quoting *Rawlings v. Prudential-Bache Props.,* 9 F.3d 513, 516 (6th Cir. 1993); *see also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1029 (9th Cir. 2000) (stating it would be an abuse of discretion to lower the lodestar based solely on the "amount of recovery"). This is why "courts often use a lodestar calculation [where] there is no way to gauge the net value of the settlement or any percentage thereof." *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *30.

The objectors' insistence that this Court affix a "value" to the settlement and then use it as a tool for comparison against fees is inappropriate in the lodestar context. What is relevant in the lodestar analysis is the "degree of success" attained. *Caudle,* 224 F.3d at 1029 (explaining that a reduction of lodestar based solely on "the amount of recovery" is an abuse of discretion, but a reduction based on "the degree of success" is not). The question is whether Counsel's time spent on the matter is reasonable in light of the overall result, because "analysis of the results obtained in the case is . . . probative of the reasonableness of the number of hours spent and thus the reasonableness of the fee." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1992). Thus, "the relief obtained justifies a lower fee if plaintiffs fail to obtain relief on all claims, and if hours spent on unsuccessful claims were not needed to pursue successful claims." *Quesada v. Thomason*, 850 F.2d 537, 539-40 (9th Cir. 1988); *see also Morales v. City of San Rafael,* 96 F.3d 359, 364-365 (9th Cir. 1996) ("the amount of damages recovered . . . is not the sole indicator of the extent of . . . success.").

Here, the degree of success is undeniable under the circumstances of this case. No time was spent on "unsuccessful claims [that was] not needed to pursue successful claims." *Quesada* 850 F.2d at 539. Indeed, there are no "unsuccessful claims" at all. From the outset, the crux of this litigation has been that NVIDIA sold defective GPUs to OEMs, who in turn incorporated those GPUs into computers and sold them to the Class. As explained in Plaintiffs' motion for class certification, the defect was inherent in each GPU from its time of manufacture. Dkt. 181.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 5 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

While the defect caused various problems with the Class Computers, those problems were merely symptoms caused by the defect – they were never the focus of this litigation. Thus, the various objectors' complaints that they are not receiving compensation for damages arising from these symptoms (such as loss of use or other consequential damages) would have posed an extreme risk to class certification and are at best ancillary to the principal issues in this case.

Counsel's efforts and time focused on precisely what was achieved – a remedy for the defective GPUs. These efforts included pre-trial briefing and discovery, and settlement negotiations, all of which were geared towards determining the nature and scope of the underlying defect and what NVIDIA and the OEMs knew about the defect, and then achieving a remedy for the defect. No time was spent "unsuccessfully" litigating that did not contribute to the result. Instead of receiving partial monetary compensation, such as the discounted value of a GPU or some other artificially generated dollar amount, the Class here is receiving *exactly* what it originally bargained for – a fully functioning GPU, as well as some compensation for repair monies already spent. It is difficult to conceive of a greater degree of success. Counsel's time spent on this matter was reasonable in light of the result achieved.

Counsel's requested multiplier is also reasonable. Counsel is requesting a multiplier of 1.24 times its lodestar as of the end of September. Given the additional work Counsel is performing in connection with the Settlement, the multiplier is even lower. "The court may adjust the lodestar with a multiplier based on several factors, including: 1) the novelty and difficulty of the question involved, 2) the skill displayed in presenting them, 3) the extent that litigation precluded other employment, and 4) the contingent nature of the fee award." *Paulson v. City of San Diego*, No. 89-0820GT (LSP), 2007 U.S. Dist. LEXIS 43587, at *13 (S.D. Cal. June 13, 2007). Class Counsel has set forth its analysis on these topics previously. Dkt. 257-1. The legal and factual basis for this case was novel and difficult. Factually, the case centered on highly technical issues. Legally, the case presented difficulties because it involved holding NVIDIA liable for defects in a GPU that NVIDIA argued was merely a "component part" of a larger product, where NVIDIA was not in privity with the consumer. No objector has disputed

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 6 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

this, and certain objectors themselves acknowledge the point.  *See* HP Objectors Br. 9, Dkt. 295 (stating Plaintiffs have not explained "how NVIDIA breached a duty *vis-à-vis* the plaintiffs in *Nygren* or *Perron*" and further arguing that Plaintiffs' case is "weak").  The case was made even more legally and factually complicated by the joint defense agreements between NVIDIA and the OEMs, as well as the litigation between NVIDIA and its insurers.  No objector has seriously argued otherwise.  The HP Objectors imply the Settlement "appears to be the product of collusion."  This contention is meritless – rather, the parties engaged in months of hard-fought negotiations supervised by a former federal judge and United States Attorney.  Decl. of Hon. Layn. R. Phillips (Ret.), Dkt 256-2.  Thus, Class Counsel's lodestar and its requested multiplier are reasonable and should be approved.

> ### B.     Under a Percentage of the Benefit Analysis, Counsel's Fee Request is Reasonable

The requested fees and expenses are reasonable under a "percentage of the benefit" analysis as well.  Under that analysis, Class Counsel's compensation is determined as a percentage of the recovery made available to the Class, with 25% being the usual "benchmark" in California.  *See generally Staton*, 327 F.3d at 968; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  It is the amount made available, not the amount actually claimed, that is relevant to the analysis. *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *32 ("[t]he appropriate measure of the fee amount is against the potential amount available to the class, not a lesser amount reflecting the amount actually claimed by the members") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 477-82 (1980) and *Williams v. MGM-Pathe Communc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).  *See also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members").

Objectors N. Johnson, Helfand, and Thompson argue that the Court has insufficient information to determine the value of the settlement and then conclude, in one form or another, that the appropriate course of action is to disregard the value of the repair or replacement remedy

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 7 | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

in calculating attorneys' fees, or simply not to award fees at all. *See* Helfand Br. 6 ("The Court should consider applying a negative multiplier given that . . . the value of the 'repair or replace' programs is unclear"); Thompson Br. ¶ 5a, Dkt. 287 ("There is no value set for the settlement and without a value the Court cannot determine if the settlement is adequate nor can the Court under the law approve any attorneys' fees"); N. Johnson Br. 4, Dkt. 293 ("There is a complete lack of admissible evidence that the value of the chip and computer replacement is any where near $50 million dollars"). Similarly, the Royas object that the Attorneys' fees are too large in comparison to the reimbursement fund, simply asserting without explanation that the repair or replacement remedy is "*de minimis*." *See* Roya Br. ¶¶ 4-6, Dkt. 297. In *Hanlon v. Chrysler Corp.,* the district court awarded attorneys' fees (based on the lodestar method but cross-checked on a percentage of the benefit analysis) to Class Counsel who achieved a Settlement obligating Chrysler to replace defective latches on minivans. 150 F.3d at 1011. This case is similar. The repair or replacement remedy is a tangible remedy, and provides real value to Class Members. That the quantification of the value may be difficult does not render it *de minimis*. The Royas argue both that the remedy is *de minimis* and also that the "scope of the problem" is large. Roya Br. ¶ 6. This is inconsistent on its face. Additionally, the Royas' speculation that "all consumers affected may have not been give [sic] adequate notice" is wholly unfounded and should be disregarded. Notice was extensive, and over 540,000 people have visited the Settlement Website, and over 84,000 have registered to receive email notification of Final Approval. Final Approval Reply at 1.

In any event, there are several methods for the Court to value the Settlement, all of which lead to the same conclusion: Class Counsel's fees are reasonable. Although the district court in *Hanlon* "rejected the idea of a straight percentage recovery because of its uncertainty as to the valuation of the settlement," the Ninth Circuit did engage in a "crosscheck" under the percentage of benefit method, using the amount Chrysler had charged against earnings as a proxy for the total benefit:

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 8 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

Although no class member is entitled to a cash recovery – making valuation of the settlement agreement more difficult – Chrysler and class counsel valued the settlement at $115 million. This is the amount Chrysler charged against its earnings in order to account for its voluntary service action and the production and installation of the replacement latches. The fee award of $ 5.2 million represents roughly 4.5% of this "common fund", significantly less than the 25% commonly used under *Six Mexican Workers*.

*Hanlon,* 150 F.3d at 1029.

Here, NVIDIA has taken over $500 million in reserves relating to the defect, including a charge of $193.9 million on the day this Settlement was signed, for "additional remediation costs, as well as the estimated costs of a pending settlement of a class action lawsuit . . . related to this same matter [the weak die/packaging material set]."  This alone  belies  Objector N. Johnson's claim of "a complete lack of admissible evidence that the value of the chip and computer replacement is any where near $50 million dollars."  N. Johnson Br. 4.  Even if only 10% of NVIDIA's reserves are attributable to the remedy provided, the Settlement is worth the $50 million Objector N. Johnson claims is necessary to justify Counsel's requested fee under the 25% "benchmark" used in the Ninth Circuit.

The HP Replacement Computers also indicate the value of this Settlement.  HP Class Members will receive new notebook or tablet computers valued at an amount equal or similar to their original computer.  Based on HP's list of potential Class Members, the administrator sent Notice to 1,688,587 HP Consumers.  Decl. of Katie Horton Re: Notice Procedures, ¶ 8, Dkt. 259. The expense to repair consumers' computers is an additional indication of the overall Settlement value.  The evidence shows consumers were charged between $300 and  $580 by OEMs to repair the GPU defect.  Fee Brief Exs. A-C, Dkt. 257-1.  The Settlement here provides for an unlimited number of repairs or replacements to over 5 million people who have received notice.  If only 166,666 people qualify for repairs – a mere .033% of those receiving notice – and if each of those people would have paid the lowest amount known to Counsel for repair ($300), then this single component of the Settlement is alone worth approximately $50 million (166,666 x 300 = $49,999,800).  In reality, Counsel expects that an exponentially larger number of people qualify for (and will claim) the repair or replacement remedy.  To date over 520,000 potential Class

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 9 | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

Members visited the Settlement website.

There is no question the Settlement offers a significant benefit to the Class, and even a conservative estimate of the benefits made available to Class Members is high.  The Objectors' arguments to the contrary are not well taken.

### III.      THIS IS NOT A COUPON SETTLEMENT

Under either a lodestar or a percentage-of-the-benefit analysis, Counsel's fee request is reasonable.  In an attempt to avoid that conclusion, Objectors Helfand and Barbara attempt to denigrate the Settlement by contending  the repair or replacement remedy is a "coupon" settlement.   Helfand Br. 7; Barbara Br. 9.   Proceeding from that flawed premise, Objector Helfand then argues  the CAFA's special provisions regarding attorneys' fees in coupon settlements should apply, and Objector Barbara argues that a *cy pres* fund must be established which would consist of the difference between the reserves taken by NVIDIA and the cost of repairs.[4]  These contentions are meritless, because the Settlement bears none of the hallmarks (or problems) associated with a coupon settlement.

CAFA requires in coupon settlement, in contrast to the substantial Settlement in this case, that attorneys' fees be analyzed with respect to the value of the coupons actually redeemed.  28 U.S.C. § 1712.  CAFA was enacted to remedy the problem of class action attorneys settling for coupons provided by defendants.  The problem with such settlements was widely perceived to be threefold.   First, because the coupons typically were of low value, many were never used; second, the use of a coupon requires the claimant to do further business with (*i.e.*, buy something else from) the very defendant that was the subject of the lawsuit, in some cases allowing the defendant to profit further; and third, coupons do not cause defendants to disgorge their ill-gotten gains, and therefore lack deterrent value. *See generally* Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action Litigation," 18 Geo. J. Legal Ethics 1395 (2005);

---

[4] Objector Barbara also claims the "amount reserved" by NVIDIA is $5 million.  Barbara Br. 10. As stated above, this is inaccurate.  NVIDIA reserved over 100 times that in relation to the defect, including $193.9 million the day the Settlement Agreement was executed.  Fee Brief at 14, Dkt. 257-1.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 10 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

*True v. Am. Honda Motor Co.*, No. EDCV 07-0287-VAP (OPx), 2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26, 2010).

None of these concerns are present here. The relief in this case does not require claimants to do "further business" with NVIDIA. The repair or replacement is free of charge, including shipping and processing, and does not require the purchase of any further products from NVIDIA or anyone else. NVIDIA will not recognize any profit from the remedy, and Class Members will not be forced into the position of having to do business with the very entity that harmed them in order to be compensated.[5] *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *16 (N.D. Cal. Nov. 16, 2007) ("the in-kind relief offered in this case is not a 'coupon settlement' because it does not require class members to spend money in order to realize the settlement benefit."); s*ee also Chavez v. Netflix, Inc.*:

> In a pure coupon settlement, the class members would receive a coupon, voucher, or discount that would *partly* defray the cost of making a *new* purchase of goods or services from the defendant. In many cases, the coupon might induce the member to make a purchase he or she would not otherwise have made, which may actually produce a net benefit for the defendant. That is not the case here. The Netflix class members are not being offered a discount that requires them to make new purchases. They are being offered an opportunity to obtain a limited number of rentals *at no charge*. . . . [T]he potential for Netflix to actually benefit financially from the settlement is much reduced compared to a pure coupon discount program.

*Id.*, 75 Cal. Rptr. 3d 413, 424 (Ct. App. 2008) (emphasis in original).

The value of a new computer or new GPU cannot be said to be of "low value" on either a relative or absolute basis. The response of Class Members thus far indicates an overwhelming interest in the Settlement and a desire to make claims. Final Approval Reply at 1. While Class Counsel cannot predict the ultimate number of claimants, the reserves NVIDIA took in relation

---

[5] Objector Barbara even speculates that few claimants will come forth because the remedy is made "burdensome by the shipping and packing process." To be clear, when a claim is approved, the claimant will receive pre-paid packing materials in the mail. They will place their laptop into these materials, seal them, and mail them to the administrator. Virtually every computer manufacturer today uses precisely this process to repair laptops. The objection that a service that ordinarily costs consumers hundreds of dollars is somehow "burdensome" when provided for free is outlandish.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 11 | Case No. C 08-4312 JW |
|---|---|---|

to the defect represent hundreds of millions of dollars.  Such numbers speak for themselves.  *See Hanlon*, *infra*.  The remedy is also valuable in relation to the problem complained of, because it is a complete replacement of the defective chip through repair or replacement.  The remedy here has a substantial deterrent effect for Defendant.  NVIDIA reserved hundreds of millions of dollars, at least some portion of which is targeted for paying for the Settlement or repair of defective computers. And NVIDIA explicitly acknowledged that Class Counsel's efforts in this case were a "causative factor" in NVIDIA's decision to provide assistance to certain OEMs in their efforts to extend warranties or repair Class Computers, which are included as part of the reserved remediation and Settlement costs.  Settlement Agreement ¶ 2.14.  Resolution of this case has proved extremely expensive for NVIDIA, and it is unlikely to repeat this behavior in the near future.

Because this is not a coupon settlement, CAFA's proscriptions do not apply.  Therefore, the Court should decline Objector Helfand's suggestion to "consider waiting and seeing how many class members receive replacements or repairs . . . before awarding attorneys' fees."  Helfand Br. 6.  As explained above, in a non-coupon settlement, "[t]he appropriate measure of the fee amount is against the potential amount available to the class, not a lesser amount reflecting the amount actually claimed by the members." *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *32 (citing *Boeing Co.*, 444 U.S. at 477-82 and *Williams*, 129 F.3d at 1027.

## IV.   THE CLASS REPRESENTATIVES' PROPOSED TIME AND EXPENSE REIMBURSEMENTS ARE REASONABLE

Objector Thompson complains that "[t]he amount to be paid to class representatives in the amount of up to $50,000 per class member is exorbitant and in and of itself is due to be denied and thereby terminate the subject settlement" and further asserts that "said payment amount is obvious evidence that the class representatives, along with the class attorneys, are sacrificing the interests of the class for their own personal welfare."  Thompson Br. 3-4.  Objector Thompson has misread the record.  No class representative is seeking $50,000, that figure was the maximum *aggregate* amount to be sought.  As Plaintiffs' initial brief makes clear,

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 12 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

Plaintiffs seek compensation for the class representatives in amounts ranging from $4,987.50 to $7,830, and in an aggregate of $32,947.50.  These are minimal reimbursements based on the time these representatives reasonably spent on this litigation, and do not warrant the level of suspicion Objector Thompson seeks to create.  *See generally Stuart v. RadioShack Corp.,* No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, at *21 (N.D. Cal. Aug. 9, 2010) (finding that a $5,000 award per representative was "modest" even though "the class representatives did not enter this litigation until late in the proceedings" and noting that "due consideration must be given to the fact that [the class representatives] were willing and ready to go to trial").

Similarly, Objector Helfand's assertion that the Class Representatives "should" provide detailed records of their time "in light of the disparity between the proposed incentive awards and the class benefit as a whole" is unsupported by any authority and should similarly be disregarded.  The Fee Brief makes clear that this time was spent gathering documents, attending depositions, consulting with counsel, reviewing filings, and reviewing the Settlement.  It is also abundantly clear that each representative spent numerous hours engaged in these activities, and each has submitted a declaration to the Court to that effect.  The Class Representatives are not attorneys, and should not be expected to provide details of their time in six minute increments. As Objector Helfand himself points out, the salient factors are the benefits to the class, the risks involved in commencing suit, the time spent on the litigation, and the other difficulties the litigation created for the representative.  Helfand Br. 8.  Here, each class representative spent a significant amount of time devoted to this litigation (assuming, as did Class Counsel, the risk of not being paid at all), created a substantial benefit to the Class in instituting and overseeing this litigation, and endured the personal difficulties that are inherent in such an expenditure of time. Mr. Feinstein, for example, was a law student and studying for finals at the time he prepared for his deposition, and (as Objector Helfand notes) flew round trip from Tokyo to San Francisco to be deposed.  In the context of litigation over a small consumer claim, this is a significant effort on behalf of the Class.

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 13 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2

**CONCLUSION**

Because the various objections are without merit, Plaintiffs respectfully request that they be overruled, and that the Court grant Plaintiffs' Motion For Attorneys' Fees and Expenses, and for Time and Expense Reimbursements for Plaintiffs.

DATED:  December 6, 2010

MILBERG LLP
JEFF S. WESTERMAN
SABRINA S. KIM
NICOLE M. DUCKETT


          */s/ Jeff S. Westerman*
          JEFF S. WESTERMAN

One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
E-mail:  jwesterman@milberg.com
   skim@milberg.com
   nduckett@milberg.com

MILBERG LLP
PETER SAFIRSTEIN
JENNIFER S. CZEISLER
ROLAND RIGGS
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  psafirstein@milberg.com
   jczeisler@milberg.com
   rriggs@milberg.com

*Counsel for Plaintiff Todd Feinstein and
Interim Lead Class Counsel*

SHALOV STONE BONNER & ROCCO LLP
RALPH M. STONE
THOMAS G. CIARLONE, JR.
485 Seventh Avenue
Suite 1000
New York, New York 10018
Telephone: (212) 239-4340
Facsimile:  (212) 239-4310
E-mail:  rstone@lawssb.com
   tciarlone@lawssb.com

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 14 | Case No. C 08-4312 JW |
| --- | --- | --- |

DOCS\539528v2

1

2

*Counsel for Plaintiff Lance Waidzunas and*
*Plaintiffs' Co-Counsel*

3

HORWITZ HORWITZ & PARADIS
PAUL O. PARADIS
MICHAEL A. SCHWARTZ
GINA M. TUFARO

4

405 Lexington Avenue, 61st Floor

5

New York, NY  10174
Telephone: (212) 986-4500

6

Facsimile:  (212) 986-4501
E-mail:  pparadis@hhplawny.com

7

    mschwartz@hhplawny.com
    gtufaro@hhplawny.com

8

*Counsel for Plaintiff Nathan DeBockler and*

9

*Plaintiffs' Co-Counsel*

10

DOYLE LOWTHER LLP
WILLIAM J. DOYLE, II

11

JOHN A. LOWTHER, IV
9466 Black Mountain Road, Suite 210

12

San Diego, CA 92126
Telephone: (619) 573-1700

13

Facsimile:  (619) 573-1701
E-mail:  bill@doylelowther.com

14

    john@doylelowther.com

15

*Counsel for Plaintiff John Russo and*
*Plaintiffs' Co-Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28

| REPLY MEM. IN SUPP. OF MOT. FOR ATTORNEYS' FEES & EXPENSES & TIME & EXPENSE REIMBURSEMENT FOR PLS. | 15 | Case No. C 08-4312 JW |
|---|---|---|

DOCS\539528v2