1  ROBERT P. VARIAN (STATE BAR NO. 107459)
   rvarian@orrick.com
2  JAMES N. KRAMER (STATE BAR NO. 154709)
   jkramer@orrick.com
3  JUSTIN M. LICHTERMAN (STATE BAR NO. 225734)
   jlichterman@orrick.com
4  JENNIFER N. NEJAD (STATE BAR NO. 267109)
   jnejad@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA  94105-2669
7  Telephone:    +1-415-773-5700
   Facsimile:    +1-415-773-5759
8
   Attorneys for Defendant
9  NVIDIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| The NVIDIA GPU Litigation<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No.  C 08-04312 JW<br><br>**DEFENDANT NVIDIA CORPORATION'S REPLY TO OBJECTIONS AND IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT** |
|---|---|

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................ 1

THE SETTLEMENT IS FAR SUPERIOR TO ANY LITIGATION ALTERNATIVE ................ 3

    A.    Plaintiffs Faced Significant Risk of Losing on the Merits ...................................... 3

    B.    Plaintiffs' Could Not Certify or Maintain a Class In Litigation ............................ 5

NONE OF THE OBJECTIONS UNDERMINES THE FAIRNESS OF THE SETTLEMENT TO THE CLASS AS A WHOLE ...................................................................... 7

    A.    The Notice and Settlement Administrator Help Consumers Ascertain If They Are in the Class ........................................................................................... 7

    B.    When Problems Arose, NVIDIA Adjusted the Notice To Ensure Appropriate Participation by Class Members ........................................................ 8

    C.    Consumers Who Are Not Class Members Lack Standing to Object ...................... 8

    D.    Objections That NVIDIA Should Provide Different Remedies Lack Merit ........... 9

    E.    The Existence of Other Litigation Against Other Entities Does Not Render This Settlement Unfair, Inadequate or Unreasonable ............................................ 10

    F.    Other Sundry Objections Lack Merit ................................................................... 15

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## **CASES**

*Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.*,
 677 F.2d 771 (9th Cir. 1982) .................................................................................................. 4

*Arabian v. Sony Elec. Inc.*,
 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ........................................................................... 6

*Atkinson v. Elk Corp.*,
 109 Cal. App. 4th 739 (2003) .................................................................................................. 3

*Browning v. Yahoo! Inc.*,
 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................................................ 9

*Careccio v. BMW of N. Am. LLC*,
 2010 WL 1752347 (D.N.J. Apr. 29, 2010) .............................................................................. 9

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 12

*Daugherty v. Am. Honda Motor Co., Inc.*,
 144 Cal. App. 4th 824 (2006) .................................................................................................. 4

*Ersler v. Toshiba Am., Inc.*,
 2009 WL 454354 (E.D.N.Y. Feb. 24, 2009) ......................................................................... 14

*Fleury v. Richemont N.A., Inc.*,
 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ........................................................................ 15

*Fulford v. Logitech, Inc.*,
 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. March 5, 2010) ..................................................... 1

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 8, 9, 15

*Hanni v. Am. Airlines, Inc.*,
 2010 WL 289297 (N.D. Cal. Jan . 15, 2010) .......................................................................... 5

*Hininger v. Case Corp.*,
 23 F.3d 124 (5th Cir. 1994) ..................................................................................................... 3

*In re American Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*,
 263 F.R.D. 226 (E.D. Pa. 2009) .............................................................................................. 7

*In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*
 *("General Motors I')* 966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623
 (8th Cir. 1999) ......................................................................................................................... 3

*In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*
 *("General Motors II")*, 174 F.R.D. 444 (E.D. Mo. 1997), *aff'd,* 172 F.3d 623
 (8th Cir. 1999) ......................................................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Sony Corp. SXRD Rear Projection T.V. Mktg., Sales Practices and Pdts. Liab. Litig.*,
  2010 WL 3422722 (S.D.N.Y., Aug. 24, 2010) .................................................................. 14

*In re Vaccine Cases*,
  134 Cal. App. 4th 438 (2005) ............................................................................................ 4

*Long v. Hewlett-Packard Co.*,
  316 F. App'x 585 (9th Cir. 2009) ...................................................................................... 4

*Lundell v. Dell, Inc.*,
  2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ......................................................... 11, 13, 14

*Moore v. Coachmen Indus., Inc.*,
  499 S.E. 2d 772 (N.C. Ct. App. 1998) ............................................................................... 4

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................... 3, 9, 10

*Reyn's Pasta Bella LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ............................................................................................ 13

*Turner v. G.E. Co.*,
  2006 WL 2620275 (M.D. Fla. Sep. 13, 2006) ............................................................. 14, 15

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. Sep. 28, 2007) ........................................................... 9, 10

## **STATUTES**

California Civil Code
  Section 1792 ..................................................................................................................... 3

1    Defendant NVIDIA Corporation ("NVIDIA") submits this reply memorandum in support
2  of the Court's final approval of the Stipulation and Agreement of Settlement and Release (the
3  "Settlement") reached in this action, and to address certain objections.

## INTRODUCTION

5    The Settlement before the Court is the culmination of intensive efforts undertaken in
6  circumstances that are in many respects unprecedented. NVIDIA concurs in, and adopts,
7  Plaintiffs' detailed demonstration of the many reasons that the Settlement is fair, reasonable and
8  adequate. Rather than belaboring points made elsewhere, NVIDIA will focus on providing the
9  Court with information and analysis from a different perspective -- including its role in defending
10 the underlying claims and in orchestrating a settlement that could accommodate a myriad of
11 computer models, chips and time periods, and three major Original Equipment Manufacturers
12 ("OEMs") that were indispensible to any resolution.

13   Although there are an abundance of compelling reasons why the Settlement should be
14 approved, two overarching points are fundamental. First, the Settlement is <u>far</u> superior to any
15 litigation alternative. That is true both because it is highly unlikely that litigating the underlying
16 claims would have produced <u>any</u> benefits to <u>any</u> class, and because any benefits derived from the
17 litigation would be <u>years</u> away. Second, in sharp contrast to the normal settlement scenario, this
18 settlement is a delicately balanced integration of many complex parts, and necessarily depends on
19 the active cooperation of third parties.

20   As the Manual for Complex Litigation and applicable case law make clear, "[a] settlement
21 is fair, adequate and reasonable when 'the interests of the class as a whole are better served if the
22 litigation is resolved by the settlement rather than pursued.'" *Fulford v. Logitech, Inc.*, 2010 U.S.
23 Dist. LEXIS 29042, at *5 (N.D. Cal. March 5, 2010) (quoting *Manual for Compl. Litig.*, 4th,
24 § 30.42 (2004)). This case presents a paradigm example of that principle. That is particularly
25 evident when one considers the specific factors that the Ninth Circuit has identified as important
26 in the "fair-adequate-reasonable" analysis. Plaintiffs' briefing touches on these factors, but it
27 (understandably) does not do them justice.

OHS West:261048596.2 - 1 - NVIDIA'S REPLY TO OBJECTIONS AND IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT CASE NO. C 08-04312-JW

An examination of "the strength of plaintiff's case," and "the risk, expense complexity and likely duration of further litigation" reveals far more than the usual risks and uncertainties inherent in complex litigation. The claims asserted in this case have <u>never</u> been successfully pursued against a chip supplier or other upstream component part supplier. They are literally unprecedented, and would confront several major hurdles on the merits. <u>If</u> Plaintiffs were able to obtain a judgment in this Court (after long, complex and expensive litigation), it would be on novel theories that would be tested -- and vulnerable -- on a protracted appeal to the Ninth Circuit.

Apart from the unprecedented nature of Plaintiff's claims, "the risk of maintaining class action status throughout the trial" was extraordinarily high in this case. The information and procedures that NVIDIA, the OEMs and Plaintiffs worked for many months to develop and incorporate into the Settlement provide the <u>only</u> mechanism for identifying computers that <u>might</u> have experienced the bump crack problems that are the subject matter of Plaintiffs' claims.

Many of the problems that would confound certification and maintenance of a litigation class -- including the need to use Product Identification and Service Tag Numbers, in addition to model numbers and date ranges, to identify computers with NVIDIA chips and the potential for a bump crack malfunction -- came to light after the motion for class certification was argued. They were difficult to deal with in a settlement context, and could not possibly have been resolved within the confines of a manageable class action.

NVIDIA and the Settlement Administrator worked closely with Hewlett-Packard ("HP"), Dell and Apple to develop masses of detailed information, connect a multitude of dots that could not have been connected through an adversary process, and deliver immediate benefits to an identifiable settlement class. NVIDIA has conducted lengthy negotiations with each OEM to resolve layers of issues, establish the terms and conditions under which they would provide the assistance necessary to go forward with the Settlement, and enable NVIDIA to provide repair and replacement remedies that could not have been furnished by NVIDIA alone.

Given these facts, it is no surprise that the Settlement has received overwhelming support from members of the settlement class. The objections on file with the Court provide no basis for

OHS West:261048596.2     - 2 -     NVIDIA'S REPLY TO OBJECTIONS AND IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT
CASE NO. C 08-04312-JW

upsetting the negotiated resolution or denying the substantial and immediate benefits that they will receive under it.

**THE SETTLEMENT IS FAR SUPERIOR TO ANY LITIGATION ALTERNATIVE**

A settlement must be measured against the universally applied standard of whether it is fundamentally fair, adequate and reasonable. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). That determination involves balancing the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial, among other things. *See id.* These factors all compel approval of the Settlement. In addition to the public policy favoring consensual resolution of disputes, the Settlement is plainly superior to any litigation alternative when compared to the risks Plaintiffs faced on the merits, and the near-certainty that no class could be certified or maintained through trial.

**A.  Plaintiffs Faced Significant Risk of Losing on the Merits.**

The handful of rulings that have addressed claims analogous to those asserted in this one strongly favor defendants.[1] Plaintiffs thus faced a real risk of receiving nothing in this case -- after years of complex, hard-fought litigation and appeals. A few examples illustrate the broader point.

NVIDIA did not sells its chips "at retail" to "ultimate consumers," as required to prove an implied warranty claim under the Song Beverly Act.[2] *See* Cal. Civ. Code 1792 (covering "every sale of consumer goods <u>at retail</u>") (emphasis added); *Atkinson v. Elk Corp.*, 109 Cal. App. 4th 739, 750 (2003) ("at retail" means the "sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing."). It supplied chips to OEMs in

---

[1] *See Hininger v. Case Corp.*, 23 F.3d 124, 128 (5th Cir. 1994) (holding that purchaser of a finished product cannot assert implied warranty claim against upstream component part supplier, even where substantive law does not require privity); *In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig. ("General Motors II")*, 174 F.R.D. 444, 447 (E.D. Mo. 1997), *aff'd,* 172 F.3d 623 (8th Cir. 1999) (noting a "dearth of legal authority to justify an extension of warranty liability to a remote manufacturer of a component part."); *In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig. ("General Motors I")*, 966 F. Supp. 1525, 1534 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623 (8th Cir. 1999) ("implied warranty liability does not extend to remote manufacturers of component parts.").

[2] NVIDIA's motion to dismiss this claim was pending when the parties reached the Settlement. Plaintiffs' Magnuson Moss Warranty Act claim collapses with their Song Beverly Act warranty claim. *See* Docket No. 159 at 12.

1 wholesale transactions.

2 Plaintiffs' statutory consumer protection claims faced additional hurdles because NVIDIA did not sell consumers anything, did not deal with consumers, made no statements or warranties to them, and had no special relationship that might create any duty to disclose information, as required under California's Consumer Legal Remedies Act ("CLRA"). *See, e.g.*, *Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586 (9th Cir. 2009) ("[Defendant] owed [plaintiffs] no independent duty to disclose information about the elevated failure rate of the laptops, absent a special relationship or affirmative misrepresentations."); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006).

3 The Unfair Competition Law ("UCL") claim was predicated on the defective CLRA claim, and NVIDIA's conduct was hardly "unfair" in any event. *See, e.g.*, *In re Vaccine Cases*, 134 Cal. App. 4th 438, 445 (2005) (UCL claim fails where plaintiffs cannot establish predicate statutory violation). NVIDIA's chips passed rigorous industry tests. *See* Docket Nos. 187 (Declaration of Keith Katcher), ¶¶ 14-16; 192 (Declaration of Jon Peddie), ¶ 23. After problems emerged NVIDIA spent many millions of dollars to support the OEMs in their repair and replacement of affected computers, helped the OEMs develop a prophylactic software solution that avoided future problems, and provided redesigned replacement chips to OEMs free of charge for their use in warranty repair programs. *See* Docket Nos. 187, ¶¶ 34, 36-37; 192, ¶¶ 51-52.

4 Although NVIDIA provided no warranties to the remote purchasers of computers that contained NVIDIA chips, the operative warranties -- i.e., those provided by the OEMs -- expressly cut off any tort claims.[3] NVIDIA was entitled to the benefit of the limitations and disclaimers. *See, e.g., Aeronaves de Mexico, S.A. v. McDonnell Douglas Corp.*, 677 F.2d 771, 773-74 (9th Cir. 1982) (barring warranty and other claims against component manufacturer where retail seller's warranty covered components); *Moore v. Coachmen Indus., Inc.*, 499 S.E. 2d 772, 780 (N.C. Ct. App. 1998) (same).

5 The bottom line is that, on an evaluation of the merits of the underlying claims alone, the litigation track would <u>at</u> <u>best</u> have provided a high-risk and highly uncertain path to a delayed and

---

[3] *See* Docket Nos. 188, Exs. A-G; 189, Exs. A-E; 190, Ex. A.

limited recovery. The Settlement, by contrast, provides consumers with certain, substantial and immediate relief at no cost to them.

### B. Plaintiffs' Could Not Certify or Maintain a Class In Litigation.

Plaintiffs also faced an insurmountable obstacle to certifying or maintaining a litigation class. In addition to the problems in determining which computers had NVIDIA chips with the material set at issue, the unique nature of the failure mechanism made it virtually impossible to ascertain through class-wide litigation whether computer malfunctions were caused by the "bump crack" problem alleged in the complaint.

The chip problems were caused by cracks in a microscopic solder interconnect (known as a "bump") inside certain chips. *See* Docket No. 187, ¶ 22. Months of comprehensive testing revealed that the root cause of the bump cracks was a combination of three highly variable factors relating to the chips and the computers: (1) a particular material set combination in the chips; (2) the thermal management profile and thermal ramp design of certain notebook computers; and (3) patterns of customer use.[4] *Id.* at ¶¶ 25-26. The chips were thus one input in a complex equation that can produce bump cracks in certain computers under conditions that would vary throughout any alleged class. The confluence of events necessary to experience a bump crack malfunction, and other factors, created four fundamental, interrelated barriers that would have made it impossible to construct a manageable litigation class and maintain it through trial:

> ***First*, it is difficult to determine which computers experienced failures due to bump cracks.**

Class members could not be ascertained based on their computer model alone, absent extensive and individualized fact finding. *See Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. Jan . 15, 2010) (class not certifiable where fact finding required). NVIDIA's chips are incorporated into myriad Dell, Apple and HP computer models. Fewer than 1% of the chips with the relevant material set have failed, and NVIDIA's testing reveals that most of the failures that are going to occur have already done so. *See* Docket No. 187, ¶ 41. Conversely, failures due

---

[4] Even computers with the right chip and the right thermal environment will not fail within their useful life if they are not powered on and off on a very frequent basis. *See* Docket No. 187, ¶ 27.

1  to multiple <u>non</u>-chip causes that produce identical symptoms but are unrelated to Plaintiffs'
2  claims are rising because of the age of the notebook computers involved.  *See* Docket No. 192,
3  ¶ 48.  The bump cracks at issue in this case can only be identified by destructive testing of
4  individual computers, which involves removing the motherboard, cutting it to remove the chip,
5  cutting the chip, and using specialized equipment to photograph the microscopic bumps inside.
6  *See* Docket Nos. 187, ¶ 43; 192, ¶ 46.

### *Second*, it is difficult to ascertain whether particular computers within a model line contain an NVIDIA chip.

9  After the class certification hearing, NVIDIA learned that the OEMs often sold different
10 versions of the same computer models -- some of which contained an NVIDIA chip and others
11 did not.  *See* Declaration of Justin M. Lichterman ("JML Decl.") filed concurrently herewith,
12 ¶ 14.  These different versions were sold under the same name over the same time frame.  *Id.*  In a
13 litigation context, Plaintiffs could not realistically have hoped to parse the NVIDIA versions from
14 non-NVIDIA versions of multiple OEMs' myriad computers.

### *Third*, even in those computers that contain an NVIDIA chip, there is no way to determine whether the chip has the relevant material set.

17 Because NVIDIA changed the material set in its chips during the Class Period, millions of
18 consumers would have purchased computer models with chips manufactured with that new
19 material set.  To consumers, computers with the old chip are indistinguishable from the same
20 computers with the new material set chip.  The only way to know whether a computer has a chip
21 with the material set at issue in the litigation is to open it up and physically look at the
22 identification markings on the chip itself.

### *Fourth*, bump cracks cannot be identified or confirmed by the various symptoms they produce.

25 It is not possible to identify bump crack malfunctions, or consumers who suffered an
26 injury as alleged in the complaint, by failure symptoms.  *See* Docket No. 187, ¶ 43.  The
27 symptoms associated with bump cracks (and listed in the Settlement Agreement) have multiple
28 causes that have nothing to do with bump cracks or NVIDIA chips.  *See* Docket Nos. 187, ¶ 43;

192, ¶¶ 31-44, 46; *Arabian v. Sony Elec. Inc.*, 2007 WL 627977, at *12 (S.D. Cal. Feb. 22, 2007) ("failures had a variety of apparent causes" preventing class certification).

For these four reasons, and many others set forth in NVIDIA's brief in opposition to class certification (Docket No. 185), Plaintiffs could not maintain a litigation class through trial, even if one were certified in the first instance.

## NONE OF THE OBJECTIONS UNDERMINES THE FAIRNESS OF THE SETTLEMENT TO THE CLASS AS A WHOLE.

The objections filed in response to the Settlement avoid the dispositive issue on this motion: whether the Settlement is fair to the class as a whole. That question, in turn, must be evaluated against the backdrop of the practical problems inherent in determining whether a consumer has a computer that contains an NVIDIA chip that may have experienced a bump crack problem, as well as the extensive efforts to resolve those problems in the Settlement.

### A. The Notice and Settlement Administrator Help Consumers Ascertain If They Are in the Class.

Some objectors complain that the notice is unclear or that it is difficult to determine whether a computer is included in the class. The Class Notice is modeled on the Judicial Council Form and was approved by the Court. Although it is in some respects complex, the details are necessary to permit resolution of convoluted lawsuit on a class-wide basis. *See, e.g., In re American Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, 263 F.R.D. 226, 237 (E.D. Pa. 2009) (approving class action settlement notice where it was "no more complicated than necessary for the class members to understand a complex settlement[.]")

The computer model names and numbers, Product Identification Numbers, purchase date ranges, and identified symptoms address the four core impediments to certifying a litigation class and facilitate a settlement. In addition to the precise and detailed information furnished in the Settlement and the Class Notice, the settlement website provides consumers with step-by-step instructions and pictures to help them determine if their computers are included the Settlement. *See* JML Decl., Exs. H-J. NVIDIA also is paying for toll-free automated and limited live telephone support. *See* Docket No. 259, ¶¶ 3, 12.

Only three objections to the notice were filed.[5] That is a tiny number when compared to the more than 80,000 potential claimants who have registered on the settlement website. Plainly, the notice was clear to most recipients. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (approving settlement where vast majority of class agreed to be bound by its terms).

### B. When Problems Arose, NVIDIA Adjusted the Notice To Ensure Appropriate Participation by Class Members.

NVIDIA, the OEMs, Plaintiffs and the Settlement Administrator worked hard after the Settlement Agreement was executed -- and after preliminary approval and individualized notice -- to resolve glitches and facilitate participation in the Settlement. Those additional efforts underscore the Parties' commitment to a fair and workable settlement structure in the face of daunting logistical challenges

After preliminary approval and notice of the Settlement, NVIDIA learned of additional Product Identification Numbers that should have been included in the Settlement. NVIDIA promptly advised Class Counsel and the Court, mailed supplemental notice at significant expense, and extended the opt-out and objection deadlines. *See* Docket No. 283. Similarly, when NVIDIA received additional consumer contact information from the OEMs after notice had gone out, it again provided supplemental notice and extended the relevant deadlines. *See* Docket Nos. 267, 283. These difficulties typify the class certification and management issues that could only be managed via settlement.

### C. Consumers Who Are Not Class Members Lack Standing to Object.

In a further endorsement of the Settlement, several consumers object that they too would like to be included in the settlement class.[6] The objections should be overruled because the individuals making them have no legally protected interest in the Settlement and are not providing a release of claims. The Settlement does not affect their rights, and they have no standing to object. *See, e.g., Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. Sep. 28, 2007) (overruling objections by those not members of proposed class).

---

[5] *See* Docket Nos. 287 (Thompson), 295 (Ram and Olson).

[6] *See, e.g.,* Docket Nos. 263 (Meehan), 254 (Sharma), 253 (Stoyanov), 264 (Duncan), 265 (Yusko), 269 (Claggett), 271 (Diehl), 278 (Groetken), 276 (Velasquez and Strong), 285 (Bates).

1   Although the lack of standing ends the analysis as a matter of law, it is worth noting that
2   the Settlement is designed to reach those who most likely suffered a bump crack injury. There is
3   no practical way (short of destructive testing) to determine whether an individual computer
4   experienced a bump crack problem. The definition of Class Computers set forth in the Settlement
5   Agreement attempts to resolve that impediment. It is based on extensive efforts to identify the
6   right computer models sold with the right chips during the right time frames, with appropriately
7   skeptical oversight, input and hard bargaining by Plaintiffs and input from the OEMs, who had
8   every incentive to provide expansive relief to their customers (especially since it is being funded
9   by NVIDIA). The Settlement clearly delineates which models correlating with which Product
10  Identification Numbers are included. Owners of <u>other</u> computer systems are in no way prejudiced
11  by the Settlement. *See Careccio v. BMW of N. Am. LLC*, 2010 WL 1752347, at *6 (D.N.J.
12  Apr. 29, 2010) (noting that in "[f]ashioning relief this way, lines inevitably are drawn.").

**D.      Objections That NVIDIA Should Provide Different Remedies Lack Merit.**

14  Some consumers object that they would prefer more or different relief from a settlement.[7]
15  Whatever an individual's preference may be, the Settlement provides valuable relief to the class
16  as a whole, and it does so immediately. Moreover, the question whether a settlement is fair,
17  reasonable and adequate must be viewed in the context of a <u>compromise</u> of disputed claims -- not
18  a wish list of every type of relief that might have been included. Balanced against the risk that
19  litigation would leave consumers with nothing, "complaining that the settlement should be
20  'better'…is not a valid objection." *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *5 (N.D. Cal.
21  Nov. 16, 2007); *see also Hanlon*, 150 F.3d at 1027 (The inquiry "is not whether the final product
22  could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.");
23  *Officers for Justice*, 688 F.2d at 625 ("[t]he proposed settlement is not to be judged against a
24  hypothetical or speculative measure of what might have been achieved by the negotiators.").[8]

---

[7] *See, e.g.,* Docket Nos. 262 (Widdoss) (onsite replacement of chips); 255 (Eckman) (requesting monetary relief); 286 (Kontomaris) (monetary reimbursement for purchase price of class computer); 268 (Weidler) (cash reimbursement for consumers who received a free in-warranty repair and for purchase of computer cooling device); 272 (Randon) (reimbursement until 6-10 years after purchase date of computer); 281 (Soper) and 284 (Vanover) (infinite right to new computers in lieu of repair); 298 (Helfand) (settlement does nor compensate for loss of use).

[8] *See also Vaugh.*, 627 F. Supp. 2d at 748 (*citing TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 463-464 (2d Cir. 1982)) (claim that a class should have gotten "more" is "easy to make" but test of settlement's fairness is

Nor is there any legitimate basis for claiming that the two million dollar reimbursement fund is inadequate.[9] The fund -- which is only one aspect of a much larger comprehensive settlement that offers replacements, repairs and new computers -- reimburses those Class Members who paid to repair an NVIDIA chip problem. Many Class Members have not experienced a problem, or received free repairs through NVIDIA-funded enhanced warranties. At least one OEM has itself offered reimbursements to its customers for the repair costs.[10]

Even in a worst case scenario, only a tiny fraction of the Class will have paid out-of-pocket to repair a computer with a bump crack chip problem. The statement by *Nygren/Perron* counsel that the fund returns $1 to each Class Member is thus another irresponsible assertion that elevates counsel's interests above the obvious benefits of the Settlement to the Class, as discussed in detail below.

### E. The Existence of Other Litigation Against Other Entities Does Not Render This Settlement Unfair, Inadequate or Unreasonable.

The objections submitted by the attorneys who filed the *Nygren* and *Perron* cases against HP are based on erroneous assertions that exude concern for the interests of the lawyers -- not the Settlement Class. This Court granted summary judgment for HP and dismissed *Nygren v. Hewlett Packard Co.*, Case No. 07-05793 JW on June 24, 2010. *See* JML Decl., Ex. C. *Perron v. Hewlett Packard Co.*, Case No. 10-0695, asserts the same essential claims based on the same alleged facts. *See* JML Decl., Ex. E at ¶ 10. It is assigned to Judge Koh, and, in light of this Court's order enjoining any actions related to this case, was stayed by stipulation until 30 days after final approval of this Settlement. *See* JML Decl., Ex. F.

The complaints in *Nygren* and *Perron* allege a wireless connectivity problem, which is attributed primarily to NVIDIA C51 chips that were used in the manufacture of certain HP notebook computers. *See* JML Decl., Exs. C at ¶ 1; E at ¶ 10. *Nygren* has been dismissed and *Perron's* attempt to restate the same claims has no prospect of providing any form of relief to anyone for years (if ever). The lawyers in those cases nevertheless seek to derail the Settlement

---

whether it reflects a reasonable compromise claims).
[9] *See* Docket Nos. 295 (HP Objectors); 289 (Curtis), objecting that the two million fund is insufficient.
[10] *See, e.g.,* JML Decl., Ex. A (Apple's agreement to reimburse consumers for the costs of repair).

1 in order to preserve their ability to pursue claims "on behalf of" clients who indisputably are
2 entitled to will receive substantial and immediate benefits under it.

3     With no basis in fact, counsel repeatedly proclaim that the Settlement would provide
4 "little or no consideration," "little or no value" and "inadequate or no relief," and that the
5 plaintiffs in *Nygren* and *Perron* (whom they style the "HP Consumer Objectors") "will receive no
6 benefit under the Settlement." *See* Docket No. 295 (Ram & Olson Objection) at 1, 3, 10, 13 &
7 14. Those pronouncements would be true, except for the fact that the Settlement provides each of
8 the plaintiffs in *Nygren* and *Perron* with a <u>brand new computer</u>.

9     Rather than acknowledging that indisputable fact, counsel strain to claim that, because
10 three of the named plaintiffs (Nygren, Shifflette and Fromkin) have allegedly "abandoned <u>using</u>
11 their HP notebooks," "they get nothing under the Settlement." *Id.* at 13 (emphasis added). That
12 assertion is incorrect. If plaintiffs in *Nygren* and *Perron* have a Class Computer that has
13 experienced a wireless problem, they get a new computer, irrespective of whether they are using
14 the old one.

15     By any measure, that remedy is fair, adequate and reasonable to the class as a whole,
16 including anyone who might theoretically be included in a class that might be certified in the
17 already-dismissed *Nygren* action or the reincarnation attempted in *Perron*. The substantial and
18 immediate relief provided in the Settlement far outweighs any remote possibility of obtaining
19 relief in other lawsuits years from now. *See, e.g., Lundell v. Dell, Inc.*, 2006 WL 3507938, at *4
20 (N.D. Cal. Dec. 5, 2006) (Ware, J.) ("[g]iven the age and expected lifespan of the computers at
21 issue, it is particularly important that the Settlement provides relief now rather than after years of
22 additional litigation.").

23     Counsels' claims that none of the named plaintiffs or class representatives in this case
24 owns a computer that experienced a wireless problem (*id.* at 6, 9), and that "the Settlement
25 Agreement only refers to *video* failures" (*id.* at 9), are equally unfounded. The wireless problem
26 was confined to certain HP computers with certain types of NVIDIA chips. Accordingly, class
27 representatives who purchased computers from Dell and Apple <u>necessarily</u> would not have
28 experienced a wireless malfunction. More important, one of the HP purchasers, John Russo, is a

1  named plaintiff and class representative in this case, and he repeatedly alleged (in a declaration,
2  interrogatory answers and his deposition) that his HP Class Computer experienced wireless
3  problems due to bump cracks in an NVIDIA chip. *See* Declaration of Robert P. Varian ("RPV
4  Decl.") filed concurrently herewith, Exs. A-C.

5  The related claim that the Settlement Agreement only refers to "video" failures is also
6  incorrect, as a review of the Agreement quickly discloses. Because some HP consumers
7  experienced wireless malfunctions as a result of bump cracks in NVIDIA chips, the Settlement
8  Agreement lists "failure to detect the wireless adapter" as one of the five "Identified Symptoms"
9  set forth in Exhibit 1, and identifies the specific HP models that had chips that could cause such
10 problems.

11 Contrary to counsels' attempt to portray wireless connectivity problems as wholly
12 unrelated to this case, the Settlement Agreement includes them because the testing performed by
13 NVIDIA and HP indicated that wireless malfunctions were in some instances caused by bump
14 cracks in the C51 chips incorporated into the HP models covered by the Settlement. *See* Docket
15 No. 187, ¶ 20; JML Decl., Ex. D at ¶¶ 29, 45, 49.

16 Nor is it necessary that a particular allegation or claim be specifically stated in the
17 complaint in order to be included in a settlement agreement or release. *See, e.g., Class Plaintiffs*
18 *v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) ("[A] federal court may release not only
19 those claims alleged in the complaint, but also a claim 'based on identical factual predicate as that
20 underlying the claims in the settled class action even though the claim was not presented *and*
21 *might not have been presentable in the class action*.'") (emphasis in original).

22 Counsel's self-interested accusations of "collusion" -- including that the provision of
23 benefits in connection with HP Class Computers that experienced wireless malfunctions was
24 "simply to protect NVIDIA and HP from further litigation" (p.3) -- are particularly egregious.
25 First, they are based primarily on the false premises that the plaintiffs in *Nygren* and *Perron* will
26 get nothing in the Settlement, that wireless malfunctions in HP computers are unrelated to the
27 bump crack problem in this case, and that there is no lead plaintiff or class representative before
28

1   the Court who experienced such a wireless malfunction in an HP computer.  As noted above,
2   those claims are baseless.

3   Beyond the fact that there is no basis for the assertions on which it is posited, the collusion
4   claim ignores that the Settlement was negotiated in three formal mediations conducted by former
5   United States District Judge Layn Phillips, who was also intimately involved in the discussions
6   that occurred outside the mediations.  *See* Docket No. 256, ¶¶ 3-5.  Based on his extensive
7   involvement in the process that led up to the Settlement, Judge Phillips confirmed that the
8   settlement "was reached by the parties acting at arm's-length, carefully and in good faith."  *Id.* at
9   ¶ 6.  Those personal observations of a highly respected mediator and federal judge further
10  eviscerate counsels' contrary allegations of bad faith and collusion.  *See, e.g., Lundell*, 2006
11  WL 3507938, at *3 (no collusion where settlement discussions lasted several months with active
12  participation of "accomplished independent mediators").

13  Counsels' attempt to cast aspersions on the Settlement because it provides a release to HP
14  (along with the other OEMs) adds nothing to the analysis.  The wireless problems experienced by
15  HP consumers who purchased Class Computers are plainly an appropriate subject of a release in
16  this case, including as to HP, irrespective of the fact that plaintiffs elected to drop HP as a named
17  defendant.  *See, e.g., Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)
18  ("A class settlement may also release factually related claims against parties not named as
19  defendants").

20  As explained in Plaintiffs' Motion for Final Approval (at 14), and in the supporting
21  Declaration of Jeff S. Westerman (at ¶ 78), Plaintiffs concluded that they could avoid a litigation
22  quagmire and maximize recovery for the class by obtaining tolling agreements from the OEMs
23  and proceeding against NVIDIA alone.  They were correct on both counts.  Moreover, HP and the
24  other OEMs played an indispensible role in effecting notice.  Furthermore, because NVIDIA does
25  not sell computers, has no consumer records, and lacks the capability to repair computers without
26  voiding OEM warranties, it could not have provided such remedies without OEM involvement
27  and consent.
28

1    Although none of the *Nygren* or *Perron* plaintiffs is in a position to advance the argument,
2 the lawyers purporting to act on their behalf raise an objection that HP consumers who have
3 "abandoned" their Class Computers may not be able to obtain a repair. *See* Docket No. 295, at
4 13. Notably, none of the plaintiffs who asserted claims in the *Nygren* case dismissed by this
5 Court, or the *Perron* case that attempts to resurrect such claims, is alleged to have abandoned his
6 or her computer. Again, their counsel assert that four of the plaintiffs have "abandoned using
7 their HP notebooks because of the wireless defect." *Id.* (emphasis added). Because they can
8 obtain a new computer and have not opted out, the plaintiffs in *Nygren/Perron* are among the
9 biggest beneficiaries of the Settlement. They provide no foundation for this lawyer-driven
10 objection.

11    In any event, courts routinely approve class action settlements offering repairs or warranty
12 extensions, notwithstanding the fact that some class members might not benefit from the remedy.
13 *See, e.g.*, *Lundell*, 2006 WL 3507938, at *4 (approving settlement where extended warranty
14 remedy was not available to those who no longer owned class computer, and purchasers who had
15 spent money on repairs were entitled to reimbursement); *Turner v. G.E. Co.*, 2006 WL 2620275
16 (M.D. Fla. Sep. 13, 2006) (approving settlement providing for warranty extension for defective
17 refrigerators); *In re Sony Corp. SXRD Rear Projection T.V. Mktg., Sales Practices and Pdts. Liab.*
18 *Litig.*, 2010 WL 3422722 (S.D.N.Y., Aug. 24, 2010) (approving settlement providing for
19 extended warranty on TV or reimbursement of repair costs); *Ersler v. Toshiba Am., Inc.*, 2009
20 WL 454354 (E.D.N.Y. Feb. 24, 2009).

21    That a few people may no longer have their computers does not render a settlement unfair
22 to the class as a whole. At most, it reflects those individuals' intention to abandon the product
23 and product-related relief. To the extent any such individual nevertheless wanted to attempt to
24 pursue such relief, he or she could have opted out of the class. Nevertheless, out of an abundance
25 of caution, the parties have amended the Settlement Agreement to provide that Class Members
26 who might qualify as members of a class that might eventually be certified in *Nygren* or *Perron*,
27 but did not participate in this Settlement because they no longer had a computer and did not pay
28 for a repair, may assert that they should be included in such a class. *See* RPV Decl., Ex. D.

**F.   Other Sundry Objections Lack Merit.**

The hodge-podge of other objections are similarly unfounded. They can be dismissed seriatum, without extensive discussion.

This plainly is not a coupon settlement.[11] The relief here is a repair, replacement, or reimbursement, not a discount on another NVIDIA product or service. *See Fleury v. Richemont N.A., Inc.*, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (Coupon settlement is one where relief constitutes a "discount on another product or service offered by the defendant in the lawsuit.").

Nor is the settlement release overbroad.[12] It is tailored to claims arising out of or relating to the material set in the chips incorporated into Class Computers, which is the subject matter of the lawsuit. *See* Settlement Agreement, § 1.24; *Hanlon*, 150 F.3d 1025 (approving release of claims "arising out of or related to the Minivan rear liftgate latches, that were or could have been asserted by Settlement Class members").

Finally, the proof of purchase provision is a standard settlement requirement and is defined to include a broad array of documentation. *See, e.g., Turner*, 2006 WL 2620275, at *7 (proof of purchase requirement is a "reasonable administrative procedure which does not impose an undue burden on any Settlement Class Member."). More important, in the circumstances of this case it is <u>necessary</u> to identify individuals who might have experienced the problem that is the subject of the litigation.

**CONCLUSION**

For the foregoing reasons, the Court should approve the Settlement, certify a Settlement Class, and afford Class Members the opportunity to obtain its benefits now.

Respectfully submitted,

Dated: December 6, 2010           ORRICK, HERRINGTON & SUTCLIFFE LLP

By:           */s/ Robert P. Varian*
              ROBERT P. VARIAN
              Attorneys for Defendant
              NVIDIA CORPORATION

---

[11] *See, e.g.*, Docket No. 296 at p. 9 (Barbara); 298 at p. 7 (Helfand).
[12] *See, e.g.*, Docket Nos. 287 (Thompson), 297 (Royas), 298 (Helfland).